**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| JAMES DOE, | ) | |
| | ) | |
| *Plaintiff,* | ) | Civil Action No.: 2:13-cv-3446-RMG |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL ARPAIO, THE CITADEL, | ) | **PLAINTIFF'S        CONSOLIDATED** |
| COLONEL JOHN G. LACKEY, III, | ) | **RESPONSE    MEMORANDUM    IN** |
| MAJOR    WILLIAM    BATES,    III, | ) | **OPPOSITION        TO        THE        TWO** |
| JENNIFER GARROTT, AND ROBERT J. | ) | **SEPARATE    MOTIONS    TO    DISMISS** |
| LYON, | ) | **FILED    BY    DEFENDANTS    JENNIFER** |
| | ) | **GARROTT AND ROBERT J. LYON** |
| *Defendants.* | ) | |

_____

PLAINTIFF JAMES DOE, by and through his undersigned counsel, respectfully submits

the following Consolidated Response Memorandum in Opposition to the Two Separate Motions

to Dismiss Filed by Defendants Jennifer Garrott and Robert J. Lyon, (Docket Entries No. 43-1

and 44-1, respectively).

## INTRODUCTION

On February 13, 2014, Plaintiff James Plaintiff filed an Amended Complaint (Docket

Entry No. 13) asserting various federal and state causes of action against The Citadel and five

current or former officers or employees of The Citadel, specifically including claims for damages

under 42 U.S.C. §1983 against Defendants Garrott and Lyon. They now have moved this Court

to dismiss all of Plaintiff's claims against them, contending those claims are: (I) time-barred; and

(II) not cognizable under §1983, and that (III) Garrott and Lyon are entitled to qualified

immunity on Plaintiff's §1983 claims.

For the reasons set forth below, Plaintiff respectfully urges this Court to deny Garrott's

and Lyon's motions.

The gravamen of Plaintiff's claims is as follows.

The Plaintiff, James Doe is a 25-year old U.S. citizen. He was nine (9) years old when, in 1998, he attended a three-week long overnight session of "The Citadel Summer Camp," which was organized and supervised by The Citadel, and its employees and agents, including all five of the individual Defendants in this case. He attended similar sessions in 1999 and 2000.

At all relevant times, Plaintiff was a "minor" under the terms of S.C. Code Ann. §15-3-555 (2012). Amended Complaint ("Am. Compl.").

The Citadel is a military college funded by the State of South Carolina. The Citadel has agents, employees, offices, and properties located in the County of Charleston, South Carolina. At all relevant times, The Citadel was acting through its agents, volunteers, servants, employees, and/or officers. At all relevant times, Plaintiff was in The Citadel's care and custody.

While Plaintiff was attending the Citadel Summer Camp, and while he was in the Citadel's care and custody, Plaintiff was raped, sodomized, and the victim of criminal sexual assault abuse, molestation, and assaults on twenty-one (21) separate and distinct occasions by Defendant Michael Arpaio ("Arpaio"). At all relevant times, Arpaio was acting individually and/or within his official duties as a Summer Camp counselor, agent, servant, volunteer and/or employee of The Citadel. Defendant Arpaio is being sued in his individual capacity.

As a direct and foreseeable result of the actions or inactions of The Citadel, Garrott, Lyon, John G. Lackey III, and Major William Bates, III, (all of whom were employed by The Citadel and who were charged with supervising Arpaio and preventing injury to Plaintiff), Plaintiff endured physical injury, physical pain and suffering, mental pain and suffering, and permanent psychological distress/damages. Defendants' actions and omissions also caused Plaintiff to suffer constitutional injuries, specifically including violation of his Due Process right

to bodily integrity and his right to be free from physical and sexual assault, molestation, and abuse.

Pursuant to §1983, Garrott and Lyon are directly liable for Plaintiff's physical, mental, psychological, and constitutional injuries, under the theory of supervisory liability and other grounds, because: (1) they were deliberately or negligent indifferent to Arpaio's actions in that they intentionally, recklessly, wantonly, or negligently failed to develop, follow, or enforce adequate policies, practices, and procedures (including ones regarding the hiring, retention, evaluation, training, and supervision of The Citadel employees and agents like Arpaio) to protect minor Summer Campers (like Plaintiff) from sexual and physical abuse, molestation, and assault; (2) Garrott and Lyon otherwise failed and neglected to exercise reasonable care to safeguard and protect minor Summer Campers like Plaintiff; and (3) there is an affirmative causal link between Plaintiff's personal and constitutional injuries and Garrott's and Lyon's deliberately indifferent or otherwise wrongful actions and omissions.

## ARGUMENT

**I.    THIS COURT SHOULD DENY GARROTT'S AND LYON'S MOTIONS TO DISMISS PLAINTIFF'S §1983 CLAIMS AGAINST THEM BECAUSE HIS CLAIMS WERE TIMELY FILED PURSUANT TO BOTH THE APPLICABLE SOUTH CAROLINA STATUTE OF LIMITATIONS AND THE "MOST APPROPRIATE" SOUTH CAROLINA TOLLING PROVISION**

Defendants assert Plaintiff's §1983 claims against them are time-barred because those claims accrued in 2000 and he did not sue until 2013, ten years after the applicable three-year statute of limitations had expired.

Defendants' arithmetic is correct but their calculus is flawed. As explained in detail below, the South Carolina three-year statute of limitations, S.C. Code Ann. §15-5-530(5), is tolled,  until a minor sexual abuse victim like the Plaintiff is 26 years old by South Carolina's childhood sexual abuse tolling statute, S.C. Code Ann. §15-3-555.

This Court recently explained—and the parties agree—that:

> The length of the statute of limitations in a Section 1983 claim is borrowed from state law. E.g., *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Thus, the statute of limitations for a Section 1983 claim in South Carolina is three years. See, e.g., *Williams v. City of Sumter Police Dep't*, 2011 U.S. Dist. LEXIS 17914, 2011 WL 723148 at *3 (D.S.C. Feb. 23, 2011)(citing cases). Any state rules regarding the tolling of the statute of limitations also apply. *Hardin v. Straub*, 490 U.S. 536, 539 (1989); see also *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604, 616, 187 L. Ed. 2d 529 (2013).

*Abdullah v. Reynolds*, 2014 U.S. Dist. LEXIS 27104, *8 (D.S.C. Mar. 3, 2014)(Gergel, J.)(parallel citations and footnote omitted)(Ex. 1 hereto)

Defendants acknowledge that this Court not only must borrow South Carolina's three-year statute of limitations for personal injuries but also must apply the "relevant South Carolina tolling statute." Lyon Br. at 8. Thus, Defendants argue:

> Because the Plaintiff was a minor at the time of his alleged injury, S.C. Code §15-3-40, **the relevant South Carolina tolling statute**, extended the limitations period until one year after he reached the age of majority. Plaintiff was born on December 16, 1987, and reached the age of majority on December 16, 2005. Applying the tolling provision under S.C. Code §15-3-40, Plaintiff had until December 16, 2006—the date he turned 19 years of age—to file his claim against Lyon. Plaintiff did not file this action until December 10, 2013—nearly seven years after his claim expired in December of 2006. Accordingly, Plaintiff's claim against Lyon is time barred and should be dismissed.

Lyon Br. at 8-9 (emphasis added; footnote omitted).

The critical question on Defendants' statute of limitations defense is whether §15-3-555 is a tolling statute—and therefore the tolling statute that is most relevant and "most appropriate" to the case, *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462 (1975)—or whether §15-3-555 is a just specialized statute of limitation and thus not applicable at all in a §1983 action.

There are several ways to determine whether §15-3-555 is a statute of limitation or a tolling statute but Defendants suggest, and Plaintiff agrees, the easiest method is simply to

compare §15-3-555 to other enactments that courts have categorized as statutes of limitation. Thus, Defendants note that in "*Owens v. Okure*, 488 U.S. 235, 250 (1989)," the Supreme Court "listed several state child sex abuse statutes of limitations among the 'multiple statutes of limitations governing intentional torts' that courts should disregard," in favor of the forum state's general, personal injury statute of limitation. Lyon Br. at 10 n.55.

Indeed, as Defendants correctly note, *Owens* "listed" five "state child sex abuse statutes of limitations," id.:

> Cal. Civ. Proc. Code Ann. … §340.1 [(West Supp. 1988)(three years for actions based on incestuous relationship with a minor); … Me. Rev. Stat. Ann., Tit. 14, §752-C (Supp. 1988)(six years for actions based on sexual act with a minor); … Wash. Rev. Code §4.16.340 (Supp. 1988)(three years for intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse); … Wis. Stat. … §893.585 [(Supp. 1988)](three years for sexual exploitation by a therapist); Wis. Stat. §893.587 (Supp. 1988)(three years for incest-related torts).

*Owens,* 488 U.S. at 244 n.8.

### A.    SECTION 15-3-555 IS DISSIMILAR TO THE STATUTES THE SUPREME COURT HAS CHARACTERIZED AS STATUTES OF LIMITATION

Although Defendants do not analyze these statutes, reprise them, or even quote from them at any length, a simple comparison between §15-3-555 and those five statutes of limitation demonstrates §15-3-555 does not fit among them and is not comparable to any of them. In alphabetical order of the States, these statutes of limitation were (in the form they existed at the time *Owens* was decided and published):

> **Cal. Code Civ. Proc. Ann. §340.1** (West Supp. 1988), provided, in pertinent part, "(a) In any civil action for injury or illness based upon lewd or lascivious acts with a child under the age of 14 years, fornication, sodomy, oral copulation, or penetration of genital or anal openings of another with a foreign object, in which this conduct is alleged to have occurred between a household or family member and a child where the act upon which the action is based occurred before Plaintiff attained the age of 18 years, **the time for commencement of the action shall be three years.**" (emphasis added). See *DeRose v. Carswell*, 196 Cal. App. 3d 1011, 1020; 242 Cal. Rptr. 368, 373 (Cal. App. 1987); Calif. Stats. 1986 ch. 914 §1;

5

**Me. Rev. Stat. Ann., Tit. 14, §752-C (Supp. 1988)**, provided, in full: "Actions based upon sexual intercourse or a sexual act, as defined in Title 17-A, chapter 11, with a person under the age of majority **shall be commenced within 6 years after the cause of action accrues.**" (emphasis added). See *Boyden v. Michaud*, 2008 Me. Super. LEXIS 88, *3 (Me. Super. Ct. May 14, 2008)(Ex. 2 hereto)(quoting the statute in force in 1988 and noting that "[i]n 1985, the … legislature enacted 14 M.R.S.A. §752-C, effective Sept. 19, 1985.");

**Wash. Rev. Code §4.16.340 (Supp. 1988)**, provided, in full: "All claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse **shall be commenced within three years of the act** alleged to have caused the injury or condition, or three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by said act, whichever period expires later." (emphasis added). See *St. Michelle v. Robinson*, 759 P.2d 467, 470 n.1 (Wash. Ct. App. 1988)(quoting the "recently enacted statute"); Chapter 144, §1, Wash. Laws of 1988;

**Wis. Stat. §893.585 (Supp. 1988)**, provided, in full: "Sexual exploitation by a therapist. (1) Notwithstanding §§893.54, 893.55 and 893.57, an action under §895.70 for damages **shall be commenced within 3 years after the cause of action accrues** or be barred. (2) If a person entitled to bring action under s. 895.70 is unable to bring the action due to the effects of the sexual contact or due to any threats, instructions or statements from the therapist, the period of inability is not part of the time limited for the commencement of the action, except that this subsection shall not extend the time limitation by more than 15 years." (emphasis added). See *Pritzlaff v. Archdiocese of Milwaukee*, 533 N.W.2d 780, 789 (Wis. 1995)(quoting the statute); 1985 Wis. Act 275; 1985 Wis. Laws 275;

**Wis. Stat. §893.587 (Supp. 1988)**, provided, in full: "An action to recover damages for injury caused by incest **shall be commenced within 2 years after Plaintiff discovers the fact and the probable cause,** or with the exercise of reasonable diligence should have discovered the fact and the probable cause, of the injury, whichever occurs first." See 1987 Wis. Act 332; 1987 Wis. Laws 332.

These five statutes of limitation share a common feature, a feature noticeably missing from §15-3-555: each one fits the classic definition of "[a] statute of limitations [a]s a 'law that bars claims after a specified period … **based on the date when the claim accrued** (as when the injury occurred or was discovered).'" *Waldburger v. CTS Corp*., 723 F.3d 434, 441 (4th Cir. 2013)(emphasis added; ellipses in the original), cert. granted on other grounds, __ U.S. __, 134 S.Ct. 896 (2014)(quoting Black's Law Dictionary 1546 (9th ed. 2009)). See *In re Exxon Mobil Corp. Sec. Litig*., 500 F.3d 189, 194 n.6 (3d Cir. 2007)(same); *Anderson v. United States*,

46 A.3d 426, 437 (Md. 2012). In other words, "[s]tatutes of limitations typically begin to run either on the date of Plaintiff's injury, or on the date the injury is first discovered or should have been discovered with reasonable diligence." *Waldburger,* 723 F.3d at 441 (citations omitted). This principle is hardly novel. See *Brown v. Hiatts*, 82 U.S. 177, 183 (1873)(Field, J.); *Marsteller v. M'Clean*, 11 U.S. [7 Cranch] 156, 158 (1812)(Story, J.).

## B.     SECTION 15-3-555 ALSO IS DISSIMILAR TO THE STATUTES DEFENDANTS CHARACTERIZE AS STATUTES OF LIMITATION

Section 15-3-555 also is materially dissimilar to the statutes at issue in the three more recent cases Defendants cite as useful comparisons. Defendants say "Federal courts analyzing the timeliness of sex-abuse claims under §1983 ignore specific sexual abuse statute of limitations and apply the general residual personal injury statute," Lyon Br. at 10-11, and cite three cases as exemplifying this trend. Id. at 11 n.56. These cases do not.

For example, Lyon describes the first case he cites, "*Getchey v. Cnty. of Northumberland*, 120 Fed.Appx. 895 (3rd Cir. 2005)," (Ex. 3 hereto), as "**holding** Pennsylvania's general statute of limitations to personal injury claims, rather than the state's limitations period for claims arising out childhood sexual abuse, applied to Plaintiff's §1983 claims alleging negligence for failing to prevent his sexual abuse and vicarious liability of the County's agents who's actions directly and proximately caused Plaintiff's injuries." Lyon Br. at 11, n.56 (emphasis added).

But Defendants completely distort *Getchey's* purported "holding." Contrary to Defendants' contention, the Third Circuit did not "hold[]" the Pennsylvania statute at issue was a special—and forbidden—statute of "limitations period for claims arising out childhood sexual abuse," id., or anything like that, just that Pennsylvania's sexual abuse "**tolling provision**," *Getchey*, 120 Fed.Appx at 898 n.1 (emphasis added), was inapplicable in that particular case. Thus, what the Third Circuit truly said in *Getchey* was:

Appellant and appellee cite 42 Pa. C.S.A. §5533 in addition to §5524. Section 5533 provides that, "if an individual entitled to bring a civil action arising from childhood sexual abuse is under 18 years of age at the time the cause of action accrues, the individual shall have a period of 12 years after attaining 18 years of age in which to commence an action for damages …." **This section is inapplicable for two reasons**. First, as appellees note, **this tolling provision** did not become effective until 1984; it "cannot revive a cause of action which accrued and expired [twenty-eight years] prior its effective date," when Getchey's injuries occurred. Second, even if the **minority [tolling] provision** were in effect at the time of Getchey's assaults, it would still fail to excuse his delay since his thirtieth birthday—the deadline that section 5533 stipulates—has long since passed.

*Getchey*, 120 Fed.Appx at 898 n.1 (emphasis added; ellipses in the original; citations omitted).[1]

---

[1] The ostensible "holding[s]" in the two other cases Lyon relies on are similarly off the mark. To be sure, in *Woods v. Ill. Dep't of Children & Family Servs.*, 710 F.3d 762 (7th Cir. 2013)—cited in Lyon Br. at 11, n.56—the Seventh Circuit determined that Plaintiff's cause of action was time-barred by the general personal injury statute of limitations and not saved by Illinois' Childhood Sexual Abuse Act ("CSAA"). Yet Lyon ignores the fact the CSAA not merely a statute of limitations or tolling provision that affected a previously cognizable cause of action against sexual "abusers." Instead, the Seventh Circuit agreed with "Illinois courts [which] have interpreted the Illinois Childhood Sexual Abuse Act to give rise to a cause of action against nonabusers based on their failure to protect." 710 F.3d at 766 n.3. It was that new statute, which "g[a]ve rise to a cause of action against nonabusers," and which accompanyingly "g[a]ve rise" to a wholly new statute of limitations, that the Seventh Circuit said must had to yield to the general personal injury statute of limitations. Most important, unlike this case, Plaintiff in *Woods* never suggested the general statute of limitations had been tolled by anything, even when Plaintiff was invited to do so. Thus, **"[a]lthough the district court provided him an opportunity to do so, Woods has not attempted to seek refuge under any relevant Illinois tolling provisions**. Thus, the two-year limitations period expired in 2006, rendering Woods's 2011 complaint five years too late." 610 F.3d at 766 (emphasis omitted; citation omitted).

Finally, the "holding" in *Anderson v. Bd. of Educ. of Fayette Cnty.*, 616 F.Supp.2d 662 (D. Ky. 2009) )—also cited in Lyon Br. at 11, n.56—had nothing to do with which state statute of limitations was "the appropriate" one to use in "§1983 claims raising allegations of sexual abuse [by] school officials," as Lyon contends, Lyon Br. at 11. Rather, the only issue in dispute was whether Ken. Rev. Stat. §413.140(1), "the general or residual statute [of limitations] for personal injury actions," 616 F.Supp.2d at 668, had been tolled by Plaintiffs' infancy and allegedly "unsound mind," as well as by the school officials/defendants' alleged "fraudulent concealment" of their tortious and unconstitutional actions. The District Court determined that: (1) "Plaintiffs correctly assert[ed] that the statute of limitation was tolled due to their infancy," id. at 669; (2) "Plaintiffs' speculative allegation that the statute of limitations has been tolled because *some of* Plaintiffs *may* be of unsound mind, does not save the claims from being time-barred, " id. at 670 (emphasis in the original; footnote omitted); and (3) Plaintiffs' fraudulent concealment argument failed because "Plaintiffs have not alleged that there were any records of the abuse which could have been destroyed by the Board in an effort to conceal the alleged abuse." Id. at 671.

In this light, it is the words that never were included in §15-3-555 that are most telling, just as in the famous Sherlock Holmes tale about the dog that suspiciously "did not bark" in "the night-time."[2] Thus, §15-3-555 does not mention, involve, or depend on "when the claim accrued," or "on date of Plaintiff's injury, [even] or on the date the injury is first discovered or should have been discovered," *Waldburger,* 723 F.3d at 441, and §15-3-555 has nothing in common with either the five state enactments denominated as "statutes of limitation" by the Supreme Court in *Owens* or the three supposed "statutes of limitation" referenced in three cases, *Getchey, Anderson,* and *Wood,* that Lyon cites in his brief.

In sum, the issues raised, the statutes discussed, and facts alleged in both *Anderson* and *Woods* were far different than the ones asserted here.

### C.    SECTION 15-3-555 IS MATERIALLY INDISTINGUISHABLE FROM STATUTES THE SUPREME COURT HAS CHARACTERIZED AS "TOLLING STATUTES"

A year before *Owens v. Okure* characterized five statutes as statutes of limitation, the Supreme Court characterized three other statutes as "tolling statutes." Significantly, §15-3-555 has much in common in with these three "tolling statutes." Thus, in 1988, the Court observed:

> [r]ecently, the Pennsylvania Legislature enacted a statute that tolls most other civil actions during a child's minority. 42 Pa. Cons. Stat. §5533(b)(Supp. 1987). In *Pickett* [*v. Brown*, 462 U.S. 1 (1983)] and *Mills* [*v. Habluetzel*, 456 U.S. 91 (1982),] similar **tolling statutes** cast doubt on the State's purported interest in avoiding the litigation of stale or fraudulent claims. [*Pickett,*] 462 U.S. at 15-16; [*Mills,*] 456 U.S. at 104-105 (O'Connor, J., concurring); [*Mills*, 456 U.S.] at 106 (Powell, J., concurring in judgment). Pennsylvania's **tolling statute** has the same implications here.

---

[2] *See Chisom v. Roemer*, 501 U.S. 380, 396 n.23 (1991)(citing Arthur Conan Doyle, *The Silver Blaze*, in THE COMPLETE SHERLOCK HOLMES 335 (1927))(Question: "'Is there any point to which you would wish to draw my attention?' [Answer by Sherlock Holmes:] 'To the curious incident of the dog in the night-time.' 'The dog did nothing in the night-time.' 'That was the curious incident,' remarked Sherlock Holmes.").

*Clark v. Jeter*, 486 U.S. 456, 464 (1988). At the time when the *Clark v. Jeter* Court characterized

42 Pa. Cons. Stat. §5533(b)(Supp. 1987) as "a statute that tolls most other civil actions during a

child's minority," 486 U.S. at 464, "[t]h[at] statute provide[d]":

> "If an individual entitled to bring a civil action is an unemancipated minor at the
> time the cause of action accrues, the period of minority shall not be deemed a
> portion of the time period within which the action must be commenced. Such
> person shall have the same time for commencing an action after attaining majority
> as is allowed to others by the provisions of this subchapter. As used in this
> subsection, the term 'minor' shall mean any individual who has not yet attained
> the age of 18."

*Urland v. Merrell-Dow Pharmaceuticals, Inc.*, 822 F.2d 1268, 1276 (3d Cir. Pa. 1987)(quoting

42 Pa. Cons. Stat. §5533(b)(Supp. 1987)).[3]

The two cases cited above in *Clark v. Jeter*—and the minority/disability tolling statutes

that were the focus of discussion in those two cases—make it even clearer that the Supreme

Court understands and appreciates the difference between statutes of limitation, on the one hand,

and tolling statutes, on the other. First, in *Pickett v. Brown*, 462 U.S. 1 (1983), Justice Brennan,

writing for a unanimous Court, noted, "Tennessee tolls most actions during a child's minority."

462 U.S. at 15 (citing "Tenn.CodeAnn. §28-1-106 (1980)."). The relevant portion of the

Tennessee Code at issue in *Pickett*, T.C.A. §28-1-106 (1980), established, then (as now) that:

> If the person entitled to commence an action is, at the time the cause of action
> accrued, either under eighteen (18) years of age, or adjudicated incompetent, such
> person, or such person's representatives and privies, as the case may be, may

---

[3] Although the Pennsylvania legislature has subsequently amended 42 Pa. Cons. Stat. §5533 to expand the roster of disabilities that toll the operative Pennsylvania statute of limitation to include "childhood sexual abuse," "insanity," and "imprisonment," see 42 Pa.C.S. §5533 (2014), federal and state courts never have felt the need to alter their characterization of it as a "tolling statute." See, e.g., *William A. Graham Co. v. Haughey*, 646 F.3d 138, 147 (3d Cir. Pa. 2011); *Getchey v. County of Northumberland*, 120 Fed.Appx 895, 898 n.1 (3d Cir. Pa. 2005); *Seneway v. Canon McMillan Sch. Dist.*, 969 F. Supp. 325, 329-330 (W.D. Pa. 1997); *Messina v. Bonner*, 813 F. Supp. 346, 347-48 & n.2 (E.D. Pa. 1993); *Delaney v. Archdiocese of Philadelphia*, 924 A.2d 659, 662 n.1 (Pa. Super. Ct. 2007); *Vojtasek v. Diocese of Allentown*, 916 A.2d 637, 641 (Pa. Super. Ct. 2006); *Pearce v. Salvation Army*, 674 A.2d 1123, 1125-26 (Pa. Super. Ct. 1996).

commence the action, after legal rights are restored, within the time of limitation for the particular cause of action, unless it exceeds three (3) years, and in that case within three (3) years from restoration of legal rights.

Second, in *Mills v. Habluetzel*, 456 U.S. 91 (1982)(O'Connor, J., joined by Burger, C.J., and Brennan, Blackmun, and Powell, JJ., concurring), noted that:

Most statutes of limitation in Texas are governed by Tex. Rev. Civ. Stat. Ann., Art. 5535 (Vernon 1982), which provides:

If a person entitled to bring any action mentioned in this subdivision of this title be at the time the cause of action accrues either a minor, a married person under twenty-one years of age, a person imprisoned or a person of unsound mind, **the time of such disability shall not be deemed a portion of the time limited for the commencement of the action** and such person shall have the same time after the removal of his disability that is allowed to others by the provisions of this title.

456 U.S. at 104 n.3 (emphasis added; also citing "*Simpson v. City of Abilene*, 388 S. W. 2d 760 (Tex. Civ. App. 1965)(holding the 2-year statute of limitation for bringing a negligence action [was] tolled during Plaintiff's minority.)").[4]

---

[4] In *Hardin v. Straub*, 490 U.S. 536, 540 (U.S. 1989), the Court explained that Michigan's general tolling statute provided another paradigmatic example of such enactments. That statute read: "'[I]f the person first entitled to make an entry or bring an action is under 18 years of age, insane, or imprisoned at the time the claim accrues, the person or those claiming under the person shall have 1 year after the disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run.'" Id (quoting Mich. Comp. Laws Ann. §600.5851(1)(1987)). See also *Chardon v. Fumero Soto*, 462 U.S. 650, 654 (1983)(discussing P. R. Laws Ann., Tit. 31, §5303 (1968)). Cf. *Wall v. Kholi*, 131 S. Ct. 1278, 1280 (2011)(construing the tolling provision of the federal Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.A. §2244(d)(2)(West 1996), which favors plaintiffs' habeas corpus petitioners by providing "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."); *Wright v. Oliver*, 1996 U.S. App. LEXIS 20449, *3-4 (4th Cir. S.C. Aug. 15, 1996)(Ex. 4 hereto)(discussing S.C. Code Ann. §15-3-40 (1995), since repealed, pursuant to which a person imprisoned on a criminal or civil charge at the time the cause of action accrued was entitled to have the statute of limitations tolled until five years beyond the applicable limitations period or such time as he or she is released from prison); *Meyer v. Paschal*, 498 S.E.2d 635, 637-339 (S.C. 1998)(discussing S.C. Code Ann. §15-3-30, which tolls a cause a cause of action against a defendant who is absent from South Carolina until he returns to the State).

Notably, nearly every other State has enacted statutes the bear close resemblance both to §15-3-555 and to the three statutes *Clark v. Jeter* described as "tolling statutes." These State statutes, and cases holding they are tolling statutes, are collectively attached hereto as Ex. 5.

**D.    SECTION 15-3-555 IS CONSISTENT WITH THE PLAINTIFF-FRIENDLY PURPOSE OF TOLLING STATUTES, BUT INCONSISTENT WITH THE "PROTECT THE DEFENDANTS" PURPOSE OF LIMITATIONS STATUTES**

The language of each of the five childhood sexual abuse statutes listed in *Owens v. Okure* comports with the longstanding defendant-friendly nature of statutes of limitation. As the Supreme Court stressed nearly fifty years ago, and has reiterated several times since, statutes of limitation are "**designed to protect defendants**," nothing more and nothing less. *Burnett v. New York Central R. Co*., 380 U.S. 424, 428 (1965)(emphasis added). See *Johnson v. Railway Express Agency, Inc*., 421 U.S. 454, 473 (1975)("[s]tatutes of limitations are **designed to insure fairness to defendants** by preventing the revival of stale claims in which the defense is hampered by lost evidence, faded memories, and disappearing witnesses, and to avoid unfair surprise.")(emphasis added); *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008)(statutes of limitation "seek primarily to **protect defendants** against stale or unduly delayed claims.")(emphasis added).[5]

---

[5] This description is hardly new or controversial.

> Statutes of limitations, which "are found and approved in all systems of enlightened jurisprudence," *Wood v. Carpenter*, 101 U.S. 135, 139 (1879), represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that "the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349 (1944). These enactments are statutes of repose; and although affording Plaintiffs what the legislature deems a reasonable time to present their claims, **they protect defendants** and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise. *United States v. Marion*, 404 U.S. 307, 322, n. 14 (1971); *Burnett v.*

The same view has been long and steadily embraced by the South Carolina Supreme Court.

> Statutes of limitations embody important public policy considerations in that they stimulate activity, punish negligence, and promote repose by giving security and stability to human affairs. One purpose of a statute of limitations is to relieve the courts of the burden of trying stale claims when a plaintiff has slept on his rights. Another purpose . . . is **to protect potential defendants** from protracted fear of litigation.

*State ex rel. Condon v. City of Columbia*, 528 S.E.2d 408, 414 (S.C. 2000)(emphasis added; citations omitted).[6]

The Fourth Circuit recently summarized the purposes of and rationale behind statutes of limitation in *Waldburger*.

> Today, we understand **a statute of limitations**, on the one hand, to be "a procedural device that **operates as a defense** to limit the remedy available from an existing cause of action." *First United Methodist Church of Hyattsville v. U.S. Gypsum Co*., 882 F.2d 862, 865 (4th Cir. 1989); see also BLACK'S LAW DICTIONARY 1546 (9th ed. 2009)(defining statute of limitations as "A law that **bars claims after a specified period**; specif., a statute **establishing a time limit for suing in a civil case, based on the date when the claim accrued** (as when the injury occurred or was discovered)."). In other words, a statute of limitations

---

*New York Central R. Co.*, 380 U.S. 424, 428 (1965); *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314 (1945); *Mo, K. & T. R. Co. v. Harriman*, 227 U.S. 657, 672 (1913); *Bell v. Morrison*, [26 U.S.] 1 Pet. 351, 360 (1828)[(Story, J.)].

*United States v. Kubrick*, 444 U.S. 111, 117 (1979). See *Lozano v. Montoya Alvarez*, 134 S. Ct. 1224, 1234 (2014)("As a general matter, '[s]tatutes of limitations establish the period of time within which a claimant must bring an action.' *Heimeshoff v. Hartford Life & Accident Ins. Co*., 571 U.S. ___, ___, 134 S. Ct. 604, 610, 187 L. Ed. 2d 529, 536 (2013). They characteristically embody a 'policy of repose, designed to **protect defendant**s.' *Burnett v. New York Central R. Co*., 380 U.S. 424, 428 (1965)(emphasis added). And they foster the 'elimination of stale claims, and certainty about a Plaintiff's opportunity for recovery and a **defendant**'s potential liabilities.' *Rotella v. Wood*, 528 U.S. 549, 555 (1999)").

[6] See *Mauldin v. Dyna-Color/Jack Rabbit*, 416 S.E.2d 639, 640 (S.C. 1992)("'One policy behind the statute of limitations is the **protection of a defendant** from false or fraudulent claims that might be difficult to disprove if not brought until after relevant evidence has been lost or destroyed and witnesses become unavailable . . . It affords defendants an opportunity to gather evidence while facts are still fresh.'")(emphasis added; citations omitted). See also *Bolt v. Sullivan*, 174 S.E. 491, 494 (S.C. 1934); *Cosgrove v. Butler*, 1 S.C. 241, 243-44, 1869 S.C. LEXIS 31 *6 (1869)(Ex. 6 hereto).

"**extinguishes the right to prosecute an accrued cause of action after a period of time**." *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co*., 419 F.3d 355, 363 (5th Cir. 2005)(internal quotation marks omitted). **Statutes of limitations typically begin to run either on the date of Plaintiff's injury, or on the date the injury is first discovered or should have been discovered** with reasonable diligence. See id. . . . The motivations behind statutes of limitations and statutes of repose are different as well. For example, **"[s]tatutes of limitations are motivated by considerations of fairness to defendants** and are intended to encourage prompt resolution of disputes by providing a simple procedural mechanism to dispose of stale claims." *First United Methodist*, 882 F.2d at 866.

*Waldburger v. CTS Corp*., 723 F.3d 434, 447-448 (4th Cir. 2013), cert. granted on other grounds,

134 S. Ct. 896 (2014)(emphasis added).

The language of, and the policies behind the kind of "tolling statutes" discussed in *Clark v. Jeter* are quite different than those of statutes of limitation. Defendants correctly quote the Supreme Court's decision in *Board of Regents of Univ. of State of NY v. Tomanio*, 446 U.S. 478 (1980), for the propositions that "'[s]tatutes of limitations are not simply technicalities. On the contrary, they have long been respected as fundamental to a well-ordered judicial system,'" because "'there comes a point at which the delay of a Plaintiff in asserting a claim is sufficiently likely either to impair the accuracy of the factfinding process or to upset settled expectations that a substantive claim will be barred without respect to whether it is meritorious.'" Lyon Br. at 2 (quoting *Tomanio*, 446 U.S. at 487).

Tellingly, however, Defendants omit the very next sentence in *Tomanio*, which emphasized that "most … legislatures" have enacted tolling statutes to temper the often harsh or inequitable effects of bright-line statutes of limitation. 446 U.S. at 487. As *Tomanio* explained

> **By the same token**, most courts and legislatures have recognized that **there are factual circumstances which justify an exception** to these strong policies of repose. … **These exceptions to the statute of limitations are generally referred to as "tolling"** and, as more fully discussed in *Johnson v. Railway Express Agency, Inc*., 421 U.S. 454 (1975), are an integral part of a complete limitations policy.

446 U.S. at 487-88 (emphasis added).

Thus, "**th[e] policy of repose"** that is embodied in statutes of limitation and which is "designed to protect defendants, **is frequently outweighed, however, where the interests of justice require vindication of Plaintiff's rights."** *Burnett v. New York C. R. Co*., 380 U.S. 424, 428 (1965)(emphasis added).

Defendants' interests in certainty and repose are counterbalanced by tolling statutes, i.e., statutes which vindicate "Plaintiffs' rights," id., by delaying, postponing, or "tolling the onset of limitations periods for prisoners and others suffering from legal disabilities" like insanity or immaturity. *Hardin v. Straub*, 490 U.S. 536, 540 (1989). Thus, legislation "'tolling the statute of limitations **protects … Plaintiffs** and **facilitates their lawsuits against such defendants**.'" *G. D. Searle & Co. v. Cohn*, 455 U.S. 404, 408 (1982)(emphasis added; citation omitted). See *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001); *Clinton v. Jones*, 520 U.S. 681, 709-10 (1997). South Carolina courts "agree" completely. *Hooper v. Ebenezer Senior Servs. & Rehab. Ctr.*, 687 S.E.2d 29, 32 (S.C. 2009). See *Hopkins v. Floyd's Wholesale*, 382 S.E.2d 907, 909 (S.C. 1989).

Nor are tolling statutes regarded as less legitimate or less worthy enactments, as beggars at the civil litigation banquet. To the contrary,

> **Any period of limitation … is understood fully only in the context of the various circumstances that suspend it from running against a particular cause of action.** Although any statute of limitations is necessarily arbitrary, the length of the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones. **In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling**, revival, and questions of application. In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim."

*Tomanio*, 446 U.S. at 485-86 (emphasis added; quoting *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463-64 (1975)).

Section 15-3-555's last three words—"whichever occurs later"—are most telling, as they clearly are plaintiff-friendly because they give the option of delaying suit "within three years of from the time of discovery," or until they are 27 years old, whichever serves their interests best.

For these reasons—the fact that §15-3-555's words and purposes mirror those of other tolling statutes, while §15-3-555's words and purposes do not come close to those of statutes of limitation—this Court should conclude that §15-3-555 is exactly what it appears to be: a statute that tolls South Carolina's statute of limitation for childhood sexual assault victims like Plaintiff.

**E.    DEFENDANTS' COUNTER-ARGUMENTS ARE UNAVAILING**

Defendants assert five arguments why §15-3-555 is a statute of limitation and not a tolling provision. None withstand scrutiny.

**1.    Contrary to Defendants' assertion, "the plain language" of §15-3-555 does not "create[] a separate statute of limitations for actions arising out of sexual abuse or incest."**

Defendants contend "[t]he language of [§15-3-555] shows that it operates as a statute of limitations." Lyon Br. at 12, and its "plain language … creates a separate statute of limitations for actions arising out of sexual abuse or incest." Id. Defendants raise three arguments in support of their "plain language" theory. All three are wrong.

***First***, Defendants say §15-3-555 is just like a statute of limitation because "[t]he statute **explicitly defines** the time in which a Plaintiff may file suit for the specific actions at issue in the statute." Lyon Br. at 12. This is unsupported and insupportable. To be sure, §15-3-555 "explicitly" uses the term "years," i.e., "within six years after" the victim of sexual abuse or incest "becomes twenty-one," to define when an abuse victim may file suit. Nevertheless, the notion that §15-3-555's use of the word "years" renders it a statute of limitation proves far too

16

much, as every enactment that courts recognize as a tolling statute, provision, mechanism, or device uses the term "years" or "time."

For example, the Court of Appeals, this Court, and the South Carolina Supreme Court all agree that "S.C. Code Ann. §15-3-40" is a tolling statute, notwithstanding the fact it uses the word "years."[7] Thus, the Fourth Circuit has stated "[p]ursuant to … §15-3-40 …, a person imprisoned on a criminal or civil charge at the time the cause of action accrues is entitled to have the statute of limitations **tolled until five years beyond** the applicable limitations period or such time as he or she is released from prison." *Wright v. Oliver*, 1996 U.S. App. LEXIS 20449, *3-4 (4th Cir. Aug. 15, 1996)(Ex. 4 hereto). This Court endorses the same principle. See *Wellin v. Wellin*, 2014 U.S. Dist. LEXIS 7686, *12 n.2 (D.S.C. Jan. 22, 2014)(Ex. 7 hereto)("Section 15-3-40 **tolls** any statute of limitations for up to **five years** if a Plaintiff is insane at the time the cause of action accrued.")(emphasis added). So does the South Carolina Supreme Court. See *Moriarty v. Garden Sanctuary Church of God*, 534 S.E.2d 672, 675 (S.C. 2000)("Section 15-3-535 does not contain any express 'tolling' provisions, unlike S.C. Code Ann. §15-3-40, which we have described as a 'tolling statute.'")(citations omitted), overruled in part on other grounds by *South Carolina v. Cherry*, 606 S.E.2d 475, 479-80 (S.C. 2004).

***Second***, Defendants posit that "Section 15-3-555" is not and cannot be a tolling statute—and thus must be a statute of limitation—because "it does not address the 'extension of' or 'extending' the statute of limitations in another statutory section." Lyon Br. at 12. Defendants do

---

[7] S.C. Code Ann. §15-3-40 (2013) provides, in full: "If a person entitled to bring an action mentioned in Article 5 of this chapter or an action under Chapter 78 of this title, except for a penalty or forfeiture or against a sheriff or other officer for an escape, is at the time the cause of action accrued either: (1) within the age of **eighteen years**; or (2) insane; the time of the disability is not a part of the time limited for the commencement of the action, except that the period within which the action must be brought cannot be extended: (a) more than **five years** by any such disability, except infancy; nor (b) in any case longer than **one year** after the disability ceases." (Emphasis added).

not cite a statute, case, treatise, or other authority for the proposition that a tolling statute must use the magic words "'extension of' or 'extending'" In any event, §15-3-555 "extends" the operative statute of limitation just as much as S.C. Code Ann. §15-3-545(D), even though that indisputable "tolling provision" for medical malpractice claims does not use the supposedly indispensable words "'extension of' or 'extending.'"[8]

**Third and finally**, Defendants insist "Section 15-3-555" is not and cannot be a tolling statute—and thus must be a statute of limitation—because §15-3-555 "does not suspend or stop another limitations period which has already begun." Lyon Br. at 12-13. Thus, Defendants say "'Tolling' of a statute of limitations means something that 'suspend[s], stop[s],' or 'interrupts the running of a statute of limitations in certain situations.'" Id. at 13 n.3 (quoting BLACK'S LAW DICTIONARY 1625 (9th ed. 2009)). BLACK'S definition, however, while accurate as far it goes, is not the one used by the South Carolina Supreme Court. Instead, that Court says:

> "Tolling" refers to suspending or stopping the running of a statute of limitations; it is analogous to a clock stopping, then restarting.' 51 AM. JUR. 2D, *Limitation of Actions* §169 (2000). **'Tolling may either temporarily suspend** the running of the limitations period **or delay the start of the limitations period**.' Id."

*Hooper v. Ebenezer Senior Servs. & Rehab. Ctr.*, 687 S.E.2d 29, 32 (S.C. 2009).

Numerous courts, including this one, agree a statute that "'**delay[s] the start of the limitations period**,'" id., qualifies as a tolling statute just as much as a statute that simply "'suspend[s] or stop[s] the running of a statute of limitations ....'" Id. Thus, this Court has noted

---

[8] Section 15-3-545(D) states, in full: "Notwithstanding the provisions of Section 15-3-40, if a person entitled to bring an action against a licensed health care provider acting within the scope of his profession is under the age of majority at the date of the treatment, omission, or operation giving rise to the cause of action, the time period or periods limiting filing of the action are not tolled for a period of more than seven years on account of minority, and in any case more than one year after the disability ceases. Such time limitation is tolled for minors for any period during which parent or guardian and defendant's insurer or health care provider have committed fraud or collusion in the failure to bring an action on behalf of the injured minor."

> The relevant South Carolina tolling statute states: "When the commencement of an action shall be stayed by … statutory prohibition the time of the… prohibition shall not be part of the time limited for the commencement of the action." S.C. Code Ann. §15-3-100. Thus, federal courts applying this provision to §1983 actions should toll the statute of limitations when a **statutory bar delays Plaintiff from commencing the suit**.

*Saucillo v. Samuels*, 2013 U.S. Dist. LEXIS 12247, *3-4 (D.S.C. Jan. 30, 2013)(Ex. 8 hereto)(emphasis added; ellipses in the original). Scores of state and federal appellate courts that agree with *Hooper* and *Saucillo*.[9]

   **2. Contrary to Defendants' belief, the meaning of a statute is not controlled by its "title."**

   Defendants assert "[t]he [South Carolina] legislature titled §15-3-555 as a 'statute of limitations,'" which means "the legislature intended §15-3-555 to operate as a specific statute of limitations for certain causes of action—not as a tolling statute that extends other limitation periods." Lyon Br. at 11, 12. Thus, "[i]t defies logic to suggest the legislature intended the statute as a 'tolling' provision rather than a statute of limitations for certain causes of action." Id. at 12.

---

   [9] See *Aresty Int'l Law Firm, P.C. v. Citibank, N.A.*, 677 F.3d 54, 58 (1st Cir. 2012)("**A limitations period** 'normally begins to run at the point of accrual of Plaintiff's claim' and '**may be** interrupted and **postponed by** such phenomena as estoppel or **tolling**' ….")(emphasis added; quoting 4 Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE §1056, at 239, 240 (3d ed. 2002)); *Morrison v. Goff*, 91 P.3d 1050, 1053 (Colo. 2004)("The **tolling** of a statute of limitations will either '**delay the start of the limitations period**' or suspend the running of the limitations period if the accrual date has passed.")(emphasis added; citations omitted). See also *Stimpson v. Ford Motor Co.*, 988 So.2d 1119, 1120-21 (Fla. App. 2008); *Ortega v. Pajaro Valley Unified School Dist.*, 75 Cal. Rptr. 2d 777, 791-92 (Cal. App. 1998); *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 65-66 (Tex. 2011); *Caves v. Yarbrough*, 991 So. 2d 142, 155 (Miss. 2008); *Pike v. Chuck's Willoughby Pub*, 904 A.2d 1133, 1137-1139 (Vt. 2006); *Sopko v. Dowell Schlumberger*, 21 P.3d 1265, 1270 (Alaska 2001); *Centre Concrete Co. v. AGI, Inc.*, 559 A.2d 516, 519 (Pa. 1989); *Duke v. Boyd*, 942 P.2d 351, 356 (Wash. 1997); *Thomas v. Gray Lumber Co.*, 486 S.E.2d 142, 150 (W.Va. 1997); *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 633 N.E.2d 627, 630-31 (Ill. 1994); *Wagher v. Guy's Foods*, 885 P.2d 1197, 1205 (Kan. 1994); *Patyrak v. Apgar*, 511 Fed.Appx 193, 196 (3d Cir. 2013); *Barnes v. Koppers Inc.*, 534 F.3d 357, 362 (5th Cir. 2008); *Shoshone Indian Tribe v. United States*, 364 F.3d 1339, 1346-1347 (Fed. Cir. 2004), cert. denied, 544 U.S. 973 (2005); *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003); *Roberts v. Dillon*, 15 F.3d 113, 115 (8th Cir. 1994).

Significantly, while Defendants cite several cases for the precept that "[a]lthough the title and headings of a statute may not be construed to limit the plain language of a statute, they may be used to shed light on an **ambiguous word or phrase**," *McInnis v. Estate of McInnis*, 560 S.E.2d 632, 636 (S.C. App. 2002)(citing *Garner v. Houck*, 435 S.E.2d 847, 849 (1993)), Defendants ignore *Garner*'s central teaching: "**the title** of a statute and heading of a section are **of use <u>only</u> when they shed light on some ambiguous word or phrase** and as tools available for resolution of doubt, but they **<u>cannot</u> undo or limit what the text makes plain**." *Garner*, 312 S.C. at 486 (emphasis added). See *Broadhurst v. City of Myrtle Beach Election Comm'n*, 537 S.E.2d 543, 546-47 (S.C. 2000)(quoting *Garner*).

This rule is neither new nor unique to South Carolina. To the contrary, as Chief Justice John Marshall explained more than two centuries ago for a unanimous Supreme Court, although "the title of an act ... may assist in removing ambiguities" in a statute's words, nothing in a statute's title can contradict or "controul [sic] plain words in the body of the statute ...." *United States v. Fisher*, 6 U.S. [2 Cranch] 358, 386 (1805)(Marshall, C.J.). Another great 19th century lawyer put it a bit more prosaically.

> Abraham Lincoln … had an incisive way of illustrating a point about the meaning of language as used in the law. He would ask, "If you call a dog's tail a leg, how many legs does a dog have?" He would then reject the usual answer "five" with the statement that calling a tail a leg doesn't make it a leg, "the answer is still four."

*Arteaga v. Mukasey*, 511 F.3d 940, 942 (9th Cir. 2007). Lincoln's observation seems particularly apt here: labeling a tolling statute a "statute of limitations" doesn't make it so.

More recently, the Supreme Court has stressed "**"[t]he title of a statute** ... cannot limit the plain meaning of the text. For interpretive purposes, [it **is] of use only when [it] sheds light on some ambiguous word or phrase.**'" *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S.

206, 212 (1998)(emphasis added; brackets in the original; quoting *Trainmen v. Baltimore &*

*Ohio R. Co.*, 331 U.S. 519, 528-29 (1947)).[10] The South Carolina Supreme Court agrees.[11]

Defendants also ignore the fact that, in this context, "[t]he principles of statutory

construction that we must follow are well settled. According to the Supreme Court:"

> our first step in interpreting a statute is to determine whether the language at issue
> has a plain and unambiguous meaning with regard to the particular dispute in the
> case. Our inquiry must cease if the statutory language is unambiguous and "the
> statutory scheme is coherent and consistent." The plainness or **ambiguity of
> statutory language is determined by reference to the language itself**, the
> specific context in which that language is used, and the broader context of the
> statute as a whole.

*AEL Asia Express (H.K.), Ltd. v. American Bankers Ins. Co.*, 5 Fed.Appx 106, 108 (4th Cir. Md.

2001)(emphasis added; quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340-41 (1997)(internal

citations omitted)).

As a result, in South Carolina and the Fourth Circuit, as elsewhere, "**defendants have …**

**the[] burden of showing the statute is unconstitutionally vague or ambiguous**." *Johnson v.*

*Collins Entm't Co.*, 564 S.E.2d 653, 661 (S.C. 2002)(emphasis added). See *Wag More Dogs,*

*LLC v. Cozart*, 680 F.3d 359, 372 (4th Cir. 2012); *Green v. City of Raleigh*, 523 F.3d 293, 306

(4th Cir. 2008); *N.C. Right to Life, Inc. v. Leake*, 525 F.3d 274, 312 (4th Cir. 2008).[12]

---

[10] See *United States v. Clawson*, 650 F.3d 530, 536 (4th Cir. 2011); *United States v. Hatcher*,
560 F.3d 222, 226 (4th Cir. 2009). See also Norman Singer & J.D. Singer, 1A Sutherland
Statutes & Statutory Construction §18:7, n.11 (7th ed. 2007).

[11] See *Broadhurst v. City of Myrtle Beach Election Comm'n*, 537 S.E.2d 543, 546-47 (S.C.
2000)("'the title of a statute and heading of a section are of use only when they shed light on
some ambiguous word or phrase …, but they cannot undo or limit what the text makes plain.'"
(quoting *Garner v. Houck*, 435 S.E.2d 847, 849 (1993)).

[12] See also *Int'l Union United Auto., Aerospace & Agric. Implement Workers of Am. v.
Skinner Engine Co.*, 188 F.3d 130, 145 (3d Cir. 1999)("'The party claiming that a [document] is
ambiguous must first convince the judge this is the case ….'")(internal citation omitted); *United
States v. Posters 'N' Things, Ltd.*, 969 F.2d 652, 660 (8th Cir. 1992); *Baldwin v. Univ. of
Pittsburgh Med. Ctr.*, 636 F.3d 69, 76 (3d Cir. 2011); *Murphy v. Keystone Steel & Wire Co.*, 61
F.3d 560, 565 (7th Cir. 1995); *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249-

In this case, Defendants have not acknowledged, let alone satisfied "their burden **of showing the statute is … ambiguous, "** *Johnson,* 564 S.E.2d at 661. Nor have they borne their burden of demonstrating the alleged "ambiguity of statutory language" in §15-3-555 "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil*, 519 U.S. at 341. Instead, all they have said is that the legislature "titled" §15-3-555 a "statute of limitation." That title would not "controul [sic] plain words in the body of the statute," in John Marshall's day, *Fisher*, 6 U.S. at 386, and "'[t]he title of a statute ... cannot limit the plain meaning of the text" of a statute, today, either. *Yeskey*, 524 U.S. at 212.

Finally, as discussed in detail above, while §15-3-555 does not comes close to the classic definition of a statute of limitation as a "'law that bars claims after a specified period ... **based on the date when the claim accrued**.'" *Waldburger,* 723 F.3d at 441 (emphasis added), §15-3-555 does fit the hornbook definition of a tolling statute, i.e., a statute that "'either temporarily **suspend[s]** the running of the limitations period *or* **delay[s]** the start of the limitations period.'" *Hooper,* 687 S.E.2d at 32 (quoting 51 AM. JUR. 2D, *Limitation of Actions* §169 (2000)).

In sum, there is nothing vague, confusing, or ambiguous about the words of §15-3-555. At minimum, Defendants have not shown there is anything intrinsically ambiguous about its words. For these reasons, this Court should reject Defendants' "title" of the statute argument.

### 3. Contrary to Defendants' contention, it is not "illogical," contrary to Supreme Court precedent, or inimical to the federal interest in uniformity for South Carolina to have multiple tolling statutes

---

50 (Fed. Cir. 2008); *United States v. Avant*, 907 F.2d 623, 625 (6th Cir. 1990); *Peick v. Pension Ben. Guaranty Corp*., 724 F.2d 1247, 1276 (7th Cir. 1983).

Defendants argue because §15-3-555 is putatively nothing but another statute of limitation, a decision by this Court to hold otherwise and to "apply[] a specific statute of limitations as a 'tolling' statute would fly in the face of the Supreme Court's desire for a bright line rule to promote uniformity and certainty." Lyon Br. at 13-14.

There are two things wrong with Defendants' theory. *First,* Defendants beg the question by assuming §15-3-555 is just "another" statute of limitation, rather than a tolling statute. Defendants' reasoning is sound but their premise is a fantasy, akin to saying "if my aunt were a man, she would be my uncle." *Florida v. Royer*, 460 U.S. 491, 528 (1983)(Rehnquist, J., joined by Burger, C.J., and O'Connor, J., dissenting). If §15-3-555 was a statute of limitation, Plaintiff could not take advantage of it in this Court. But §15-3-555 is a tolling statute, not a statute of limitation.

*Second*, although the Supreme Court has repeatedly held that in order to advance the federal interest in uniformity all §1983 actions in a particular State must be governed by that a single statute of limitation, i.e., by that State's general, residual statute of limitations for personal injuries, the Court has repeatedly and consistently held that uniformity does not limit plaintiffs to a single tolling statute in §1983 actions, whether a federal one or a State one. Thus, in *Chardon v. Fumero Soto*, 462 U.S. 650 (1983), the Court was expressly requested to adopt a uniform tolling statute in §1983/class action cases. The Court explicitly "reject[ed] … a uniform federal tolling rule," despite the fact that, as the dissenting Justices pointed out, in that case "'there is no discernible state rule' to be applied," while "[i]n other situations, more than one state [tolling] rule may seem applicable." 462 U.S. 650, 667 (U.S. 1983)(Rehnquist, White, & Powell, JJ., dissenting).

The dissenters lamented:

> It is scarcely a desirable state of affairs for federal courts to spend their time deciding how state courts might decide state tolling rules operate. These concerns are particularly acute owing to the fact that the question at issue is what statute of limitations ought to be applied. Few areas of the law stand in greater need of firmly defined, easily applied rules than does the subject of periods of limitations. **A single, uniform federal rule of tolling would provide desirable certainty to both plaintiffs and defendants in §1983 class actions**.

Id. (emphasis added).

The *Chardon* majority was not persuaded. Citing four of its own seminal §1983 precedents (*Board of Regents v. Tomanio*, 446 U.S. 478 (1980), *Robertson v. Wegmann,* 436 U.S. 584 (1978); *Johnson v. Railway Express Agency*, *Inc*., 421 U.S. 454 (1975); and *Monroe v. Pape*, 365 U.S. 167 (1961)), the Court:

> concluded that no federal policy—deterrence, compensation, uniformity, or federalism—was offended by the application of state tolling rules. In light of Congress' willingness to rely on state statutes of limitations in civil rights actions, [the Court] **specifically rejected the argument that the federal interest in uniformity justified displacement of state tolling rules**.

462 U.S. at 657 (emphasis added).

Although the Court subsequently held that the federal interest in uniformity requires a **single limitations statute** in §1983 cases, see *Wilson v. Garcia*, 471 U.S. 261, 276 (1985), the Court never retreated from *Chardon*'s unanimous "conclu[sion]" that the federal interest in uniformity does **not** require a **single tolling statute** in §1983 cases, despite the fact that the Court has had numerous opportunities to reassess that conclusion since *Chardon* was decided 34 years ago. See *Hardin v. Straub*, 490 U.S. 536, 544 & n.14 (1989)(unanimously noting and rejecting argument for "uniformity.") See also id., 490 U.S. at 540 n.8 (noting that Michigan and at least 17 "[o]ther States currently allowing some tolling of the limitations period for prisoners' lawsuits," often in the form of separate and distinct tolling statutes).

In the final analysis, while Defendants insist it "defies logic" for the Nation or, at minimum, for each State not to have a single, uniform tolling statute, Lyon Br. at 12, it would be

impertinent for this Court to defy precedent and to so hold. In reality, Defendants are in the wrong forum to make that argument, as it is best made (and, in fact, can only be made) to Congress or the Supreme Court.

For these reasons, this Court should spurn Defendants' "logical," "uniformity" argument.

**4.     Contrary to Defendants' contention, §15-3-555 applies to any and all actions for damages "arising out of an act of sexual abuse or incest," and not just to the direct perpetrators of such abuse.**

Defendants argue that even if §15-3-555 is a tolling statute, it cannot possibly apply to anyone but the human being who directly perpetrated the abuse (such as Arpaio) and certainly never can apply to a person (like Garrott or Lyon) or an institution (like The Citadel) that did not directly perpetrate the abuse but were merely "deliberate indifferen[t]" to the perpetrator's abuse. Lyon Br. at 14 n.68. Thus, Defendants say that when the South Carolina Legislature enacted §15-3-555 it intended the statutory phrase "arising out of" to be construed as narrowly as possible.

Section 15-3-555, as the Legislature wrote it, states, in pertinent part:

> (A)     An action to recover damages for injury to a person **arising out of** an act of sexual abuse or incest must be commenced within six years after the person becomes twenty-one years of age or within three years from the time of discovery by the person of the injury and the causal relationship between the injury and the sexual abuse or incest, whichever occurs later.

(Emphasis added). Defendants contend that what this language really means—and what the Legislature really must have intended—is as follows:

> (A)     An action to recover damages for injury to a person arising out of an act of sexual abuse or incest must be commenced **against the immediate, direct perpetrator of the sexual abuse or incest—but no other person or entity**—within six years after the person becomes twenty-one years of age or within three years from the time of discovery by the person of the injury and the causal relationship between the injury and the sexual abuse or incest, whichever occurs later.

There are three things wrong with this argument: ***First,*** although the legislatures of several States have enacted statutes along these very narrow, "perpetrator"-only lines[13]—and although the courts of those States accordingly have held liability lies solely against direct perpetrators[14]—the South Carolina Legislature plainly did not write §15-3-555 the way Defendants think it should have been written, with sixteen (16) additional words.

***Second,*** Defendants' proposed revision would violate

> [t]he cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature. When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning. In interpreting a statute, [w]ords must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation.

*Centex Int'l, Inc. v. S.C. Dep't of Revenue*, 750 S.E.2d 65, 69 (S.C. 2013)(quotation marks and citations omitted). This "cardinal rule" is not new. Thus, nearly a century ago, South Carolina's high court said: "The purpose of construction is to **ascertain the legislative intent from the words used**; and, if they are susceptible to any sensible meaning, **the Court cannot add to them other words which would give them a different meaning** without making, instead of construing, the statute." *Banks v. C.R.G.&E. Co.*, 101 S.E. 285, 286 (S.C. 1919)(emphasis added). Nor is this rule against "add[ing] … words" unique to South Carolina. See *Rosmer v.*

---

[13] See, e.g., Idaho Code §6-1701 (2014) provides, in pertinent part: (1) An action may be brought by or on behalf of any child **against any person who** has: … (b) Sexually abused any child … ." (emphasis added); Utah Code Ann. §78B-2-308 (2013) provides, in pertinent part: "(5) A civil action may be brought **only against a living person who intentionally perpetrated the sexual abuse or negligently permitted the sexual abuse to occur**." (Emphasis added). See also Alaska Stat. §09.10.060(c)(1990), which at one time provided: "A person who was the victim of sexual abuse may not maintain an action for recovery of damages **against the perpetrator of the act** or acts of sexual abuse based on the perpetrator's intentional conduct for an injury or condition suffered as a result of the sexual abuse unless an action is commenced within three years." (Emphasis added).

[14] See, e.g., *Osborn v. Salinas*, 958 P.2d 1142, 1144 (Idaho 1998)("the statute applies to the perpetrators of sexual abuse and does not govern claims against third parties.").

*Pfizer, Inc.*, 263 F.3d 110, 116 (4th Cir. 2001)(" Such a reading of the statute adds an exception that the language and the structure of the Act cannot bear."). See also *Markovski v. Gonzales*, 486 F.3d 108, 110 (4th Cir. 2007).

*Third,* Lyon's proposed reading runs afoul of authoritative interpretations of the same phrase in multiple contexts. Thus, the phrase "'**arising out of' … is among the broadest in the law**. '[I]n workmen's compensation statutes,' for instance, '[t]he arising-out-of test is a familiar one **used … to denote any causal connection between the term of employment and the injury**.'" *Suhail Al Shimari v. CACI Int'l, Inc.*, 679 F.3d 205, 236 (4th Cir. 2012)(emphasis added; citations omitted). See *Town of Duncan v. State Budget & Control Bd.*, 482 S.E.2d 768, 772 (S.C. 1997); *Pierre v. Seaside Farms, Inc.*, 689 S.E.2d 615, 618-19 (S.C. 2010).

For these reasons, this Court should reject Defendants' argument that §15-3-555 applies solely to perpetrators like Arpaio and does not allow child abuse victims like Plaintiff to sue persons like the Defendants, who were, in Defendants' words, merely "deliberate indifferent" to the crimes and constitutional violations of a perpetrator like Arpaio.

**5.    Contrary to Defendants' assertion, the South Carolina Supreme Court has *not* "held that §15-3-555 is a statute of limitations."**

According to Defendants, the "most important[]" proof that §15-3-555 is a statute of limitation lies in the South Carolina Supreme Court's decision in *Doe v. Crooks*, 613 S.E.2d 536 (S.C. 2005), in which that court purportedly "**held** that §15-3-555 is a statute of limitations." Lyon Br. at 13. Defendants' "most important[]" proof is no proof at all because *Doe* made no such "h[o]ld[ing.]" (In their Reply Briefs, Defendants might also argue, as Lackey and Bates have done, that the South Carolina Supreme Court supposedly announced the same "holding" in *Doe v. Bishop of Charleston*, 754 S.E.2d 494 (S.C. 2014)).

27

The pertinent portion of *Crooks*—which Lyon's Brief heavily redacts—says in full (albeit with a footnote and internal citations deleted):

> Ordinarily, a new statute of limitations applies retroactively. However, it cannot operate to revive an action for which the limitations period has already expired. Such a result would violate the defendant's rights under the Due Process Clause of the South Carolina Constitution.
>
> The circuit court held that when section 15-3-555 became the statute of limitations governing sexual-abuse cases, Doe's cause of action had already lapsed under sections 15-3-530(5) and 15-3-535. We agree. Consequently, whether the action is barred under **section 15-3-555 is irrelevant**.

*Crooks,* 613 S.E.2d at 538 (emphasis added; footnote and internal citations deleted). *Bishop of Charleston* stated: "Section 15-3-555, providing a six-year statute of limitations for actions arising out of sexual abuse or incest, became effective in 2001, long after the acts of sexual abuse that gave rise to appellants' claims occurred." *Bishop of Charleston*, 754 S.E.2d at 500, n.4.

At slight glance, *Crooks* and *Bishop of Charleston* would appear to be dispositive. Yet even casual analysis reveals that neither is controlling because the *Crooks'* and *Bishop of Charleston's* statements regarding §15-3-555 as a statute of limitation are pure irrelevant dicta, as opposed to binding holdings or even non-controlling but persuasive, "well-considered" dicta.

There are three reasons why. ***First***, the parties in neither case never raised or briefed the issue that now is squarely before this Court, i.e., whether §15-3-555 is a statute of limitations or whether it is a tolling provision. This is shown by the briefs submitted by the parties and amici in both cases, which are collectively incorporated herein by reference. *See* (ECF. No. 37.14, 37.15)(ECF No. 39.14, 39.15). ***Second***, the Supreme Court never raised or considered that question on its own authority in either case, either, and thus never used the word tolling in connection with §15-3-555 in either opinion. ***Finally***, the reason why neither the parties nor the Supreme Court ever considered whether §15-3-555 is a tolling provision rather than a statute of

limitations (as it is titled in the S.C. Code) is readily apparent: whether §15-3-555 is one or the other would not have affected the outcome in either case, in any way whatsoever.

As *Crooks* explained, the "action [in that case] was commenced in 2002, when [Plaintiff, John] Doe was thirty-four years old. He asserts that in 1983, when he was fourteen or fifteen years old, [the defendant] molested him." *Crooks*, 613 S.E.2d at 538. The *Crooks* Court held his claim was barred under the long-standing (and still viable) "limitations period … provided by [S.C. Code Sections] 15-3-530(5) and 15-3-535," even with the benefit of the general minority tolling provision set out in S.C. Code §15-3-40(1). Id. As the Court explained, "[u]nder section 15-3-40(1), the limitations period was tolled until Doe reached the age of majority, eighteen. Under section 15-3-535, Doe then had six years to file his action. In other words, Doe needed to file by the time he turned twenty-four. Because he failed to do so, his cause of action lapsed in 1992," ten years before he filed suit at age thirty-four. Id., 613 S.E.2d at 538.

Realizing that his claim was clearly barred by all of the limitations statutes and the tolling statutes in force when his claim accrued in 1983 (and, indeed, in force in 1992 when he turned twenty-four), Doe argued that his claim was governed by §15-3-555, which had been enacted in 2001, "nine years" after "his cause of action lapsed in 1992." Id., 613 S.E.2d at 538. As noted above, the *Crooks* Court recognized that, "[o]rdinarily, a new statute of limitations applies retroactively. However, it cannot operate to revive an action for which the limitations period has already expired." Id. For exactly that reason, the Court said "[w]e therefore **need not address** whether the action would be barred under §15-3-555." Id. (emphasis added). Thus, as *Crooks* made perfectly clear, "when §15-3-555 became the statute of limitations governing sexual-abuse cases [in 2001], Doe's cause of action had already lapsed under §15-3-530(5) and 15-3-535"

rendering the question of "whether the action is barred under §15-3-555 is **irrelevant**." Id. (emphasis added).

Because the Court had no "need [to] address" the <u>**scope**</u> of an "irrelevant" statute, the Court also had no "need [to] address" the <u>**character**</u> of the statute, i.e., as a tolling provision or as a statute of limitation, especially because the parties never thought to raise it. Id., 613 S.E.2d at 538. And the obvious reason why the parties did not address that question is because the character of §15-3-555 (as a limitations provision or tolling one) was "irrelevant," too. Id. Whether §15-3-555 is one or the other, and even if it had been enacted before Plaintiff's claim accrued in 1983 when he "fourteen or fifteen," §15-3-555's terms still would have required him to file suit by the time he turned 27 years old in 1996. Because he did not sue until 2002, even §15-3-555 would not have saved him, regardless of whether §15-3-555 is a limitations provision or a tolling statute.

In either event, *Crooks* deemed §15-3-555 to be "irrelevant." Id., 613 S.E.2d at 538. And because the question of whether §15-3-555 is a limitations provision or a tolling statute was utterly "irrelevant"—as well as being a question that never was raised and briefed by the parties and a question that never was discussed and answered by the Supreme Court—*Crooks* is equally "irrelevant" to the question before this Court. For this reason, this Court should regard *Crooks'* statement that §15-3-555 is a "statute of limitations," id., as "constitute[ing] *dicta* as it was in reference to an unpreserved appellate issue that did not serve as a basis for the Court's decision." *Beach First Nat'l Bank v. Gurnham*, 2014 S.C. LEXIS 55, *19-20 n.8 (S.C. Feb. 26, 2014)(Ex. 9

hereto).[15] *Crooks'* statement, such as it was, accordingly cannot "serve as a basis for th[is] Court's decision," either. Id.

Defendants would have even less "basis" for reliance on *Bishop of Charleston*. The *Crooks* Court at least discussed §15-3-555, even though the Court ultimately found it to be completely "irrelevant" to the Court's decision and even though the Court thought there was no "need [to] address" the character of that statute in any fashion. In *Bishop of Charleston*, by contrast, the Court referenced §15-3-555 only once, and then only to say, in a lonely footnote, "Section 15-3-555, providing a six-year statute of limitations for actions arising out of sexual abuse or incest, became effective in 2001, long after the acts of sexual abuse that gave rise to

---

[15] See *K&A Acquisition Group, LLC v. Island Pointe, LLC*, 682 S.E.2d 252, 259 n.4 (S.C. 2009)("this Court's statement regarding the two terms constituted *dicta* given th[at] … it was unnecessary for this Court to define or analyze these two terms."); *Berberich v. Jack*, 709 S.E.2d 607, 613 (S.C. 2011)(appellate court comments on unpreserved issue must be viewed as dicta); *Hampton v. Richland County Council*, 370 S.E.2d 714, 714 (S.C. 1988)(concluding that discussion of a legal principle in an opinion was *dicta* because it was "clearly unnecessary to a resolution of the issue before the court"); *Overcash v. S.C. Elec. & Gas Co.*, 614 S.E.2d 619, 622 (S.C. 2005)(lower court erroneously relied on *dicta*); *Welborn v. Dixon*, 49 S.E. 232, 237 (1904)(*dicta* never can be regarded as binding precedent).

Federal courts follow the same philosophy. See *Central Virginia Comm. College v. Katz*, 546 U.S. 356, 363 (2006)(federal courts "are not bound to follow our *dicta* in a prior case in which the point now at issue was not fully debated."); *Alexander v. Sandoval*, 532 U.S. 275, 282 (2001)(courts are "bound by holdings, not language" in *dicta*); *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379 (1994)("It is to the holdings of our cases, rather than their *dicta*, that we must attend …."); *United States v. Dixon*, 509 U.S. 688, 706 (1993)(quoting *United States Nat. Bank of Oregon v. Independent Ins. Agents of Am., Inc*., 508 U.S. 439, 463, n.11 (1993), on "'the need to distinguish an opinion's holding from its *dicta*'"). Cf. BLACK'S LAW DICTIONARY 465 (7th ed. 1999); 21 C.J.S. *Courts* §227 (2006).

On the one hand, a federal court sitting in diversity is free to take "well considered *dicta*" into account, *Wells v. Liddy*, 186 F.3d 505, 528 (4th Cir. 1999)(citing *Liberty Mut. Ins. Co. v. Triangle Indus*., 957 F.2d 1153, 1156 (4th Cir. 1992)), only statements constituting "'a clear exposition of the [state's] law' by a state's highest court" can be regarded as even "[c]onsidered *dicta*," *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 254 (4th Cir. 2012)(citing *Sherby v. Weather Bros. Transfer Co*., 421 F.2d 1243, 1244 (4th Cir. 1970) and *Hawks v. Hamill*, 288 U.S. 52, 58-59 (1933)), let alone credible and convincing "well considered *dicta."* *Wells*, 186 F.3d at 528. On the other hand, "**pure and simple *dicta* … cannot serve as a source of binding authority** in American jurisprudence." *United States v. Pasquantino*, 336 F.3d 321, 329 (4th Cir. 2003)(en banc)(emphasis added).

appellants' claims occurred." 407 S.C. 128, 754 S.E.2d 494, 500 at n. 4 (2014). In this light, any reliance Defendants might place on *Bishop* would be completely misbegotten. (As noted above, in *Bishop*, just as in *Crooks*, none of the parties raised or discussed the question of whether §15-3-555 is a tolling provision or a statute of limitations).

For these reasons, §15-3-555's status as a tolling statute or a statute of limitations cannot be determined on the basis of *Crooks'* and *Bishop of Charleston's* irrelevant *dicta.*

And for all the reasons set forth above, Plaintiff's §1983 claims were timely filed.

## II.    THIS COURT SHOULD DENY DEFENDANT LYON'S MOTION TO DISMISS BECAUSE THE AMENDED COMPLAINT ALLEGES A FACIALLY PLAUSIBLE CLAIM FOR LIABILITY AGAINST HIM UNDER §1983

Lyon makes three arguments in support of his contention that the "Amended Complaint fails to allege facts to plausibly support a substantive due process claim against Defendant Lyon under §1983." Lyon Br. at 14. None have merit. Defendant Garrott does not adopt Lyon's argument, or make an argument of her own, on this point. Nonetheless, the factual allegations related to Defendant Garrott are referenced in the footnotes below.

### A.    A CLAIM FOR SUPERVISORY LIABILITY IS STILL ACTIONABLE UNDER §1983 AS THE SUPREME COURT HAS NOT "EFFECTIVELY ELIMINATED" OR "ENTIRELY ABROGATED" SUPERVISORY LIABILITY

Lyon, echoing the motions to dismiss filed by Defendants Lackey, Bates, and The Citadel, argues that "after [*Ashcroft v.*] *Iqbal,* [556 U.S. 662 (2009)], a claim based on a theory of 'supervisory liability' is no longer actionable under §1983" because the *Iqbal* majority "eliminate[ed] *Bivens* [and §1983] supervisory liability entirely." Lyon Br. at 15 & n.75 (citations omitted). There are two things amiss with Lyon's argument.

#### 1.    The *Iqbal* majority did not agree with the dissent's characterization of its decision and, in the final analysis, the majority opinion is the most authoritative guide to the Court's holding. This is significant because, as the *Iqbal* majority explained, while "Government

officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*" or "vicarious liability," supervisors still may be held liable so long as Plaintiffs "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. As discussed the next section, (B), that is exactly what Doe has alleged here, that Lyon is liable under §1983 not because he was Arpaio's supervisor but because he violated the Constitution by his own acts and omissions.

> **2.     The Court of Appeals does not subscribe to Justice Souter's dissent, either.** The Court of Appeals certainly is aware of Justice Souter's dissent, see *Evans v. Chalmers*, 703 F.3d 636, 660-62 (4th Cir. 2012)(Wilkinson, J., concurring), cert. denied sub nom., *Evans v. City of Durham*, 134 S.Ct. 98 (2013), but still maintains that Plaintiffs may plead supervisory liability and win damages if they can prove their allegations. As the Fourth Circuit explained last year:

> > "**[S]upervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates.**" To succeed on a supervisory liability claim under §1983, a Plaintiff must establish: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like Plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by Plaintiff.

*Gandy v. Robey*, 520 Fed.Appx. 134, 142-143 (4th Cir. 2013)(Ex. 10 hereto)(emphasis added; quoting *Shaw v. Stroud*, 13 F.3d 791, 798-99 (4th Cir. 1994)). Nor does *Gandy* stand alone, either in this Circuit or among every one the twelve other Circuits that have considered the question. To the contrary, the Court of Appeals has reiterated *Shaw's* three-part test for

supervisory liability, citing either *Shaw* (or one of *Shaw's* progeny or precursors)[16] at least seven

times since *Iqbal* was decided.[17]

### B.    THE AMENDED COMPLAINT ADEQUATELY ALLEGES PLAUSIBLE CLAIMS AGAINST LYON FOR SUPERVISORY LIABILITY UNDER THE *GANDY/SHAW* THREE-PART TEST

Lyon maintains this Court must dismiss Plaintiff's action because Plaintiff putatively

"has not alleged any action by Lyon that violated [Plaintiff's] substantive due process rights."

Lyon Br. at 14. (Garrott does not make this argument at all). As shown below, the sixteen (16)

---

[16] See *Randall v. Prince George's County, Md.*, 302 F.3d 188, 206 (4th Cir. 2002); *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001); *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990); *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).

[17] See *Green v. Beck*, 539 Fed.Appx. 78, 80 (4th Cir. 2013)(per curiam)(Ex. 11 hereto); *Coleman v. Poff*, 497 Fed.Appx. 337, 339 (4th Cir. 2012)(Ex. 12 hereto); *Littleton v. Swonger*, 502 Fed.Appx. 271, 277-78 (4th Cir. 2012)(Ex. 13 hereto); *Cook v. Howard*, 484 Fed.Appx. 805, 811 (4th Cir. 2012)(Ex. 14 hereto); *Cilman v. Reeves*, 452 Fed.Appx. 263, 269-70 (4th Cir. 2011)(Ex. 15 hereto); *Smith v. Ray*, 409 Fed.Appx. 641, 650 (4th Cir. 2011)(Ex. 16 hereto). See also *Evans*, 703 F.3d at 660-62 (Wilkinson, J., concurring).

Nor is the Fourth Circuit unique. Since *Iqbal* was decided in 2009, all twelve Circuits (i.e., all but the Federal Circuit) that have considered the issue have confirmed, directly or indirectly, that supervisory liability remains viable under §1983. Indeed, as the Ninth Circuit explained, after extensive analysis of both *Iqbal* and post-*Iqbal* cases on supervisory liability:

> **We see nothing in *Iqbal* indicating that the Supreme Court intended to overturn longstanding case law on deliberate indifference claims against supervisors** in conditions of confinement cases. We also note that, to the extent that **our sister circuits** have confronted this question, they **have agreed with our interpretation of *Iqbal***. … We therefore conclude that Plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by … subordinates.

*Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)(emphasis added). *Starr* cited *Sandra T.E. v. Grindle*, 599 F.3d 583, 591 (7th Cir. 2010)(*Iqbal* does not change the fact that "[w]hen a state actor's deliberate indifference deprives someone of [a] protected liberty interest in bodily integrity, that actor violates the Constitution, regardless of whether [he] is a supervisor or subordinate, and … may be held liable for the resulting harm."), *Dodds v. Richardson*, 614 F.3d 1185, 1204 (10th Cir. 2010); *Sanchez v. Pereira*, 590 F.3d 31, 49 (1st Cir. 2009). See also *Santiago v. Warminster*, 629 F.3d 121, 129 & n.5 (3d Cir. 2010); *Whitley v. Hanna*, 726 F.3d 631, 649 (5th Cir. 2013); *Frodge v. Newport*, 501 Fed.Appx. 519, 532-34 (6th Cir. 2012)(Ex. 17 hereto); *Wagner v. Jones*, 664 F.3d 259, 275 (8th Cir. 2011); *Keating v. Miami*, 598 F.3d 753, 762 (11th Cir. 2010); *Elkins v. Dist. of Col.*, 690 F.3d 554, 565-66 (D.C. Cir. 2012).

pages of the Amended Complaint that are devoted to Lyon's particular actions and omissions specify, with ample factual support, that Lyon's "individual acts" ran afoul of each part of the *Gandy/Shaw* test for supervisory liability. See generally Amended Complaint, pages 56-72, ¶¶176-220. Thus, Plaintiff provided detailed, fact-based allegations regarding the following three elements of the *Gandy/Shaw* test for supervisory liability, i.e.:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like Plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by Plaintiff.

*Gandy,* 520 Fed.Appx at 142-143 (emphasis added; quoting *Shaw*, 13 F.3d at 798-99).

## 1. Lyon "had actual or constructive knowledge that his subordinate [i.e., Arpaio] was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like Plaintiff"—

The Amended Complaint not only alleges, in summary fashion, that "Lyon had actual or constructive knowledge that his subordinate, Arpaio, and several other members of [the Citadel's] staff of directors and counselors had, on numerous occasions, engaged in acts or conduct that posed a pervasive, widespread, arbitrary, outrageous, unreasonable, and unjustified risk of physical, emotional, and constitutional injury to Plaintiff and other minor campers like Plaintiff," Am. Compl., ¶204, but the Amended Complaint also provides detailed specification (and even evidentiary documentation) regarding Lyon's actual or constructive knowledge that Arpaio's conduct posed an unreasonable and pervasive risk of injury to Plaintiff constitutional rights, particularly his substantive due process right to bodily integrity. Thus the Complaint provides detailed allegations regarding: the fact that Plaintiff and Summer Campers like him were "exclusively in the care and custody of the Citadel during camp sessions," Am. Compl. ¶197; the general vulnerabilities of prepubescent campers at The Citadel

35

Summer Camp, see, e.g., ¶¶190-94; Plaintiff's unique vulnerabilities, see, e.g., ¶196; and the fact that Plaintiff and Summer Campers like him were physically isolated from—and completely unable to communicate with—their parents, teachers, religious leaders, child welfare authorities, or law enforcement officers, and thus were unable to adequately assert and protect their own constitutional rights to bodily integrity, ¶201, as well as particularized allegations regarding Arpaio's actions and Lyon's actual or constructive knowledge of those actions. See ¶¶190-94, 202-04, 204(a)—204(i), 204(n)—204(p), 204(aa)—204(gg), 205(c), 205(e), 214-17.[18]

2.    **Lyon's "response to [his] knowledge [of pervasive and unreasonable risk of constitutional injury to Plaintiff from Arpaio] was so inadequate as to show 'deliberate indifference to or tacit authorization of [Arpaio's] alleged offensive practices'"—**The Amended Complaint not only summarily alleges that "Lyon's responses to Arpaio's widespread, outrageous, unreasonable, and constitutionally injurious (and/or constitutionally dangerous) acts and misconduct were so lacking and insufficient as to demonstrate deliberate apathy or conscious indifference towards and/or implicit approval or

---

[18] The same argument applies to Garrott. The Amended Complaint not only alleges, in summary fashion, that "Garrott had actual or constructive knowledge that his subordinate, Arpaio, and several other members of his staff of directors and counselors had, on numerous occasions, engaged in acts or conduct that posed a pervasive, widespread, arbitrary, outrageous, unreasonable, and unjustified risk of physical, emotional, and constitutional injury to Plaintiff and other minor campers like Plaintiff," Am. Compl., ¶159, but it also provides detailed specification (and even evidentiary documentation) regarding Garrott's actual or constructive knowledge that Arpaio's conduct posed an unreasonable and pervasive risk of injury to Plaintiff constitutional rights, particularly his substantive due process right to bodily integrity. Thus, it details allegations regarding: the fact that Plaintiff and Summer Campers like him were "exclusively in the care and custody of the Citadel during camp sessions," Am. Compl. ¶152; the general vulnerabilities of prepubescent campers at the Summer Camp, see, e.g., ¶¶145-48, 155-57; Plaintiff's unique vulnerabilities, see, e.g., ¶¶149, 151; and the fact that Plaintiff and Summer Campers like him were physically isolated from—and completely unable to communicate with—their parents, child welfare, or law enforcement authorities, and thus were unable to adequately assert and protect their own constitutional rights to bodily integrity, ¶156, as well as detailed allegations regarding Arpaio's actions and Garrott's actual or constructive knowledge of those actions. See ¶¶148-50, 157-58, 159(aa)—159(jj), 169-72.

tolerance of Arpaio's unconstitutional acts and misconduct," ¶205, and that "Lyon's supervisory response (or lack thereof) to the above-noted actual or constructive knowledge of the inappropriate, offensive, suspicious, illegal, or injurious sexual acts, proclivities, and misconduct that Defendant Arpaio committed or exhibited was so inadequate as to show deliberate apathy and conscious and deliberate indifference to or tacit authorization of Arpaio's offensive, unlawful, and injurious practices and actions," ¶206, but the Complaint also specifies the ways in which Lyon's responses (or lack thereof) were so inadequate as to rise to deliberate indifference. See, e.g., ¶¶205(a)-(d), 205(g)-(i), 205(k)-(l), 205(o)-(y), 206-215.[19]

> **3.    There "was an 'affirmative causal link' between [Lyon's] supervisor's inaction and the particular constitutional injury suffered by Plaintiff'**—The Amended Complaint alleges, in summary fashion, that (a): "Lyon's deliberate apathy or conscious indifference to, or tacit authorization of Arpaio's acts and misconduct, including Lyon's unwillingness to terminate Arpaio and to report his acts and misconduct to child welfare and law enforcement authorities, created an affirmative causal connection between Arpaio's past misconduct and his assaults upon, abuse of, or misconduct towards Plaintiff," ¶67; (b) a "direct and affirmative causal link exists between Lyon's failure to prevent, detect, intervene in, stop, or report Arpaio's physical and sexual assault, abuse, misconduct, or molestation of Plaintiff and

---

[19] The same argument applies to Garrott. The Amended Complaint not only summarily alleges that his "responses to Arpaio's widespread, outrageous, unreasonable, and constitutionally injurious (and/or constitutionally dangerous) acts and misconduct were so lacking and insufficient as to demonstrate deliberate apathy or conscious indifference towards and/or implicit approval or tolerance of Arpaio's unconstitutional acts and misconduct," Am. Compl. ¶160, and that "Garrott's supervisory response (or lack thereof) to the above-noted actual or constructive knowledge of the inappropriate, offensive, suspicious, illegal, or injurious sexual acts, proclivities, and misconduct that Defendant Arpaio committed or exhibited was so inadequate as to show deliberate apathy and conscious and deliberate indifference to or tacit authorization of Arpaio's offensive, unlawful, and injurious practices and actions," ¶161, but the Amended Complaint also details the ways in which Garrott's responses (or lack thereof) were so inadequate as to rise to deliberate indifference. See, e.g., ¶¶159-160.

the physical, emotional, and constitutional injuries Plaintiff suffered in this case," ¶84; and (c) a "direct and affirmative causal link" also "exists between Lyon's authorization of special privileges and benefits to Defendant Arpaio and Arpaio's physical and sexual assault, abuse, misconduct, or molestation of Plaintiff and the resulting physical, emotional, and constitutional injuries Plaintiff suffered in this case." ¶85.

Significantly, however, the Amended Complaint also details the ways in which Lyon's deliberately indifferent response to Arpaio's actions facilitated and enabled him to injure, assault, or abuse Plaintiff, including the constitutional injuries Arpaio caused to and inflicted upon Plaintiff, and thereby provided an affirmative link between Lyon's actions and omissions and Plaintiff's constitutional injuries. See, e.g., ¶¶70, 71, 72, 73, 74, 75, 76, & 77.[20]

### C. LYON'S RELIANCE ON THE "CREATE THE DANGER" AND "SHOCK THE CONSCIENCE" DOCTRINES IS MISPLACED BECAUSE THOSE DOCTRINES DO NOT APPLY IN SITUATIONS LIKE PLAINTIFF'S, WHO WAS IN A "SPECIAL," "CUSTODIAL RELATIONSHIP" WITH THE CITADEL AND WHOSE CONSTITUTIONAL INJURIES WERE NOT CAUSED BY A PRIVATE THIRD-PARTY BUT AN EMPLOYEE OF THE CITADEL, ARPAIO, WHOM LYON SUPERVISED

---

[20] The same argument applies to Garrott. The Amended Complaint alleges, in summary fashion, that (a): "Garrott's deliberate apathy or conscious indifference to, or tacit authorization of Arpaio's acts and misconduct, including Garrott's unwillingness to terminate Arpaio and to report his acts and misconduct to child welfare and law enforcement authorities, created an affirmative causal connection between Arpaio's past misconduct and his assaults upon, abuse of, or misconduct towards Plaintiff," ¶162; (b) a "direct and affirmative causal link exists between Garrott's failure to prevent, detect, intervene in, stop, or report Arpaio's physical and sexual assault, abuse, misconduct, or molestation of Plaintiff and the physical, emotional, and constitutional injuries Plaintiff suffered in this case," ¶174; and (c) a "direct and affirmative causal link" also "exists between Garrott's authorization of special privileges and benefits to Arpaio and Arpaio's physical and sexual assault, abuse, misconduct, or molestation of Plaintiff and the resulting physical, emotional, and constitutional injuries Plaintiff suffered in this case." ¶175. The Amended Complaint also provides detailed specification of the ways in which Garrott's deliberately indifferent response to Arpaio's actions facilitated and enabled Arpaio to injure, assault, or abuse Plaintiff, including the constitutional injuries Arpaio caused to and inflicted upon Plaintiff, and thereby provided an affirmative link between Garrott's actions and omissions and Plaintiff's constitutional injuries. See, e.g., ¶¶159-68.

Lyon argues that because Plaintiff supposedly cannot sue under a supervisory liability theory, the "Plaintiff's substantive due process claim therefore must allege Lyon's own 'affirmative governmental action creates or substantially increases [Plaintiff's] risk of injury.' " Lyon Br. 15 & n.77 (brackets in Lyon's Brief, citing, but not quoting, "*Slaughter v. Mayor & City Council of Balt*., 682 F.3d 317, 321 (4th Cir. 2012); *Waybright v. Frederick County M.D.* [sic], 528 F.3d 199 (2008)[sic]; *Stevenson v. Martin County Board of Education*, 3 Appx. [sic] 25 (4th Cir. 2001); *Pinder v. Johnson*, 54 F.3d 1169, 1174 (4th Cir. 1995)").

Lyon also contends that " "[i]n order to create a danger, the state has to take some affirmative steps. Liability does not arise when the state stands by and does nothing in the face of danger. Failing to provide protection from danger does not implicate the state in the harm caused by third parties.'" Lyon Br. at 15-16 & n.78 (quoting *Stevenson*, 25 Fed.Appx. at 31).

Finally, Lyon notes "[t]he Fourth Circuit recently held that the official's culpability must rise to the level of 'intent to harm Plaintiff' to meet the 'shock the conscience.'" Lyon Br. at 16-17 & n.85 (quoting *Slaughter,* 682 F.3d at 323).

Any of these four cases would doom Plaintiff's §1983 claim if they were remotely on point. In reality, each is completely inapposite.

As discussed at considerable length in Plaintiff's Response to Defendant Lackey's Motion to Dismiss (ECF 37), *Slaughter* and *Waybright* are readily distinguishable because each case involved injuries incurred by the plaintiffs' deceased next-of-kin while that victim had been in "a voluntary employment relationship" with a government agency. 682 F.3d at 322. It was in that context—and that context only—that the Fourth Circuit "h[e]ld that the Baltimore City Fire Department's constitutional liability in this case turns on whether it intended to harm the new [volunteer-employee] recruits." Id.

*Slaughter* went out of its way to emphasize the narrow, fact-specific nature of its "hold[ing]."

> **To be sure**, a lower level duty of culpability may amount to a substantive due process violation in those situations where the government is required "to take care of those who have already been deprived of their liberty"—such as pretrial detainees, persons in mental institutions, convicted felons, and persons under arrest. See *Collins [v. City of Harker Heights,]* 503 U.S. 115 (1992) at 127 (collecting cases). **In those circumstances,** the Court has held that **the government's deliberate indifference to the care of persons in its custody can shock the conscience for purposes of finding a substantive due process violation**. See *[Cnty. of Sacramento v.] Lewis*, 523 U.S. [833 (1998)] at 849-50. The Court has reasoned that **the deliberate indifference standard relates to** "[t]he 'process' that the Constitution guarantees in connection with **any deprivation of liberty," imposing on the government a "continuing obligation to satisfy certain minimal custodial standards**." *Collins*, 503 U.S. at 127-28.
> But the *Collins* Court made clear that **this lower level standard does not apply to persons in an employment relationship with the government.**

*Slaughter*, 682 F.3d at 321-23 (emphasis added).

Lastly, *Slaughter* made clear that "[a]s *DeShaney* indicates and our case law specifies, **a 'special relationship' is all but synonymous with a custodial relationship**." *Waybright,* 528 F.3d at 207 (citing *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 199-200 (1989)(emphasis added)). This is very important because, as the Fourth Circuit made clear, by itself, "deliberate indifference" by supervisor in the context of a "special," i.e., "custodial" relationship "can shock the conscience for purposes of finding a substantive due process violation." 682 F.3d at 321.

Unlike the deceased victims in *Slaughter, Collins,* and *Waybright,* Plaintiff did not allege he was in an "employment relationship" with The Citadel because he was not. Unlike the victims in those cases, Plaintiff did not allege that he was a physically mature and emancipated adult, one who was capable of caring for himself and protecting his own safety because he was not. And

Plaintiff did not allege he could walk away from The Citadel and flee from Arpaio because he surely could not.

What Plaintiff actually alleged was that "Lyon had actual or constructive knowledge that":

> "Plaintiff … was exclusively in the **care and custody of The Citadel** during camp sessions," Am. Compl. ¶197 (emphasis added); that Lyon, as the "Summer Camp Supervisor, … **[wa]s in charge of the safety and custody** of the 200 minor children who attend[ed] each … three-week [Camp] session," including Doe, ¶186 (emphasis added), and he was "charge[d] with the **custody** and care of minor children" at the Camp. Am. Compl. ¶205(b)(emphasis added). See ¶¶189-90 & 198;

> "Plaintiff was **only eleven (11) years-old** during the 2000 camp session, and was **comparatively small for his age**, i.e., **short in height and slight in stature** and weight, and thus appeared to most observers to be a child of only eight (8) to nine (9) years of age …." ¶196 (emphasis added); and

> "Plaintiff and other minor campers were completely isolated and cut off from the outside world while at camp, that they had no means of expressing confidential complaints to Lyon or other senior staff (such as co-defendants Lackey, Bates, and Lyon), that they lacked access to land-line telephones, cellphones, email, fax machines, and other electronic forms of communications, and thus had no means of communicating—other than by non-confidential, open-faced postcard—with their parents and other relatives, hometown friends and neighbors, school teachers and classmates, church leaders and fellow parishioners, child welfare authorities, law enforcement authorities, or other non-Citadel related caregivers, other than by postcard." ¶201.

Crucially, Lyon has not disputed these allegations at any time, in any way, or to any degree.

*Slaughter* makes clear that its holding does not apply to every case, just to those "in the context of a voluntary employment relationship." 682 F.3d at 322. The Amended Complaint makes clear—and Lyon does not deny—Doe was in a "custod[ial]" relationship with The Citadel, not an employment one. For these reasons, *Slaughter* and *Waybright* do not apply to this case and do not bar Plaintiff from pleading a viable supervisory liability claim against Lyon.

There can be no doubt Plaintiff was in a "special relationship" with The Citadel inasmuch as he was in its "custody" (which neither The Citadel nor Lyon has denied), was unable to care

for himself or secure his own safety while he was in custody, was incapable of communicating his injuries, fears, needs, and distress to his parents and others outside The Citadel's walls, and was utterly dependent on it, Lyon, and Lyon's co-defendants to shield him from monsters like Arpaio. Because Plaintiff had special relationship with The Citadel, Lyon's conduct regarding his "care and custody" must be judged under the "deliberate indifference" test, not the "intent to harm" one.

Stevenson, and the precedent upon which it is largely based, Pinder, also are inapposite to this case, as neither involved a custodial relationship and as both involved injuries caused by private-citizen third-parties, not state agent-employees, like Arpaio, who were supervised by other state agent-employees, like Lyon, i.e., as "person[s] who [were] act[ing] under color of state law," for the purpose of §1983 suits. Thus, Stevenson explained: "In this case, the perpetrators of the attacks against [Plaintiff were private individuals, not the school officials. The law is clear that 'a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.'" Stevenson, 3 Fed.Appx at 30 (quoting DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 197 (1989)). In Pinder, the Fourth Circuit held a police officer was not liable under §1983 for the murder of a woman's three young children at the hands of a former boyfriend, even though the officer had failed to arrest and remove the boyfriend from the woman's home, because "the Due Process Clause of the Fourteenth Amendment does not require governmental actors to affirmatively protect life, liberty, or property against intrusion by private third parties." Pinder, 54 F.3d at 1174.

In sum, for all the reasons detailed above—the facts that (A) supervisory liability remains a cognizable basis for a §1983 claim, (B) Plaintiff adequately alleged Lyon's individual actions and omissions violated §1983 because Lyon's own particular conduct met the tripartite

*Gandy/Shaw* standards for supervisory liability under §1983, and (C) *Slaughter*'s "intent to harm"/"shock the conscience" tests do not apply outside "the context of a voluntary employment relationship" and do not apply to a person, like Plaintiff, who was in a "special," "custodial relationship" with The Citadel, while the *Stevenson/Pinder* standards do not apply because Plaintiff was victimized by state agent-agent, supervised by another state-agent, and was not harmed by a third-party private-citizen—this Court should deny Lyon' motion to dismiss because Plaintiff has alleged a facially plausible §1983 claim against him.

### III. THIS COURT SHOULD DENY LYON'S AND GARROTT'S MOTIONS TO DISMISS BECAUSE THEY ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Defendants urge this Court to dismiss Plaintiff's §1983 claims because "supervisory liability" ostensibly was not "clearly established" until 2009 when *Iqbal* "clarif[ied]" that doctrine, Lyon Br. at 19-20, and because Defendants' constitutional violations in this case were less "egregious" than those at issue in *Doe ex rel. Johnson v. S.C. Dep't of Social Servs.*, 597 F.3d 163 (4th Cir. 2010), which marked "the first time" the Court of Appeals recognized that substantive due process could be violated by "an adoption specialist with the DSS, [who] involuntarily removed the child/Plaintiff from her home, took her into custody, and placed her into a foster home with another child known to be sexually aggressive." Lyon Br. at 19.

Lyon is wrong on both counts, while Lyon also is wrong in failing to acknowledge the "clearly established" right of a child not to be sexually abused by state actors.

#### A. "SUPERVISORY LIABILITY" WAS CLEARLY ESTABLISHED BEFORE *IQBAL*

As noted above, early in Lyon's brief, he argued that "after *Iqbal*, a claim based on a theory of 'supervisory liability' is no longer actionable under §1983," Lyon Br. at 15, because the Supreme Court ostensibly "'eliminat[ed] it entirely'" in that decision. Lyon Br. at 15 n.75 (citations omitted). Five pages later he says "[n]ot until the Supreme Court issued its *Ashcroft v.*

43

*Iqbal* opinion in 2009 did the Court clarify whether a supervisor is liable for a subordinate's violation of a Plaintiff's constitutional rights." Lyon Br. at 20

Inconsistency aside,[21] Lyon's argument is problematic because there is no constitutional right, "clearly established" or otherwise, to "supervisory liability." If, however, "supervisory liability" is regarded as a right, it was clearly established at least a decade before Plaintiff was repeatedly and brutally raped by Arpaio at The Citadel Summer Camp. Thus, as Plaintiff noted above the Fourth Circuit held supervisors were liable under §1983 (on a non-*respondeat superior*, non-vicarious liability basis) no later than 1984. See *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984); *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990); *Shaw v. Stroud*, 13 F.3d 791, 798-99 (4th Cir. 1994).

**B.    The Right of a Child to be Free from Sexual Abuse by a State Actor was Clearly Established When Plaintiff First Came to The Citadel Summer Camp in 1998.**

Lyon contends that the right at issue in this case is no different than the one in dispute in *Johnson*, Lyon Br. at 19, where the Court of Appeals held that

> [a]lthough our precedents do not foreclose a foster child's claim that her substantive due process right to personal safety and security is violated by a foster care placement made in deliberate indifference to a known danger, such a right was not clearly established in this circuit at the time [the state foster care specialist] made her placement decisions regarding [Plaintiff].

*Johnson*, 597 F.3d at 176. Indeed, Lyon asserts the facts were "far more egregious" in that case. Lyon Br. at 19.

---

[21] In Lyon's telling, "supervisory liability"—which he contends was simultaneously "eliminated" and "clarified" by *Iqbal*, would seem to be the jurisprudential equivalent of "Schrodinger's cat," of quantum physics fame, "which is both dead and alive" at the same time. *Kusay v. United States*, 62 F.3d 192, 194 (7th Cir. 1995)(Easterbrook, J.). See *Auction Co. of Am. v. FDIC*, 141 F.3d 1198, 1201-02 (D.C. Cir. 1998)(per curiam).

Lyon's analogy of the legal right at issue in this case to the one in dispute in *Johnson* is false, while his view that the sexual abuse of prepubescent girl by a minor member of the girl's family was factually "far more egregious" than the multiple rapes of a prepubescent boy by an adult counselor at The Citadel Summer Camp defies understanding.

As a matter of fact, the Court of Appeals has condemned child sexual abuse—of any kind—in the harshest terms, castigating "child rape" as "'hideous and heinous.'" *Merzbacher v. Shearin*, 706 F.3d 356, 369 (4th Cir. 2013). Court of Appeals judges have reiterated those views several times, as have several Supreme Court Justices.[22]

For just these reasons, in 1997 a unanimous Supreme Court approved a jury instruction that said:

> "Included in the liberty protected by the [Due Process Clause of the] Fourteenth Amendment is the concept of personal bodily integrity and the right to be free of unauthorized and unlawful physical abuse by state intrusion. Thus, this protected right of liberty provides that no person shall be subject to physical or bodily abuse without lawful justification by a state official acting or claiming to act under the color of the laws of any state of the United States when that official's conduct is so demeaning and harmful under all the circumstances as to shock one's conscience. Freedom from such physical abuse includes the right to be free from certain sexually motivated physical assaults and coerced sexual battery. It is not, however, every unjustified touching or grabbing by a state official that constitutes a violation of a person's constitutional rights. The physical

---

[22] See *United States v. Perez-Perez*, 737 F.3d 950, 959 (4th Cir. 2013)(Davis, J., concurring)("Because child sexual abuse involves a particularly vulnerable population … all decent people experience boundless antipathy and abject opprobrium at the very thought of such perpetrators."); *United States v. Springer*, 715 F.3d 535, 551 (4th Cir. 2013)(Wilkinson, J., dissenting)("sexual molestation and abuse" of children constitute "unjustified infringements of personal freedom" because "[c]hildren often lack defenses against sexual predation, especially if they are lonely or despondent, without adequate parental protection, or struggling simply to make a go of life."); *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 305 (4th Cir. 2008)(Duncan, J., concurring)(child rape is "a crime that shocks the conscience."). See also *Kennedy v. Louisiana*, 554 U. S. 407, 467 (2008)(Alito, J., dissenting)(explaining that sexual abuse of children is the "epitome of moral depravity"); *United States v. Kebodeaux*, 133 S. Ct. 2496, 2513 (2012)(Scalia & Thomas, JJ., dissenting)(same); *Miller v. Alabama*, 132 S. Ct. 2455, 2488 (2012)(Roberts, C.J., and Scalia, Thomas, & Alito, JJ., dissenting)("the rape of a young child may involve greater depravity than some murders").

45

abuse must be of a serious substantial nature that involves physical force, mental coercion, bodily injury or emotional damage which is shocking to one's conscience."

*United States v. Lanier*, 520 U.S. 259, 262 (1997)(citations omitted).

Thirty-four years ago, the Court of Appeals held the right of school children to be free from excessive corporal punishment by a teacher was clearly established and accordingly held that both the teacher and the principal who supervised him were liable for damages under §1983. *Hall v. Tawney*, 621 F.2d 607, 614-15 (4th Cir. 1980). In "defin[ing] … the constitutionally protected substantive due process right" at issue, the *Hall* Court stressed:

> **The existence of this right to ultimate bodily security as the most fundamental aspect of personal privacy is unmistakably established in our constitutional decisions as an attribute of the ordered liberty that is the concern of substantive due process.** Numerous cases in a variety of contexts recognize it as a last line of defense against those literally outrageous abuses of official power whose very variety makes formulation of a more precise standard impossible. Clearly recognized in persons charged with or suspected of crime and in the custody of police officers, **we simply do not see how we can fail also to recognize it in public school children under the disciplinary control of public school teachers**. Difficult as may be application of the resulting rule of constitutional law in the public school disciplinary context, it would seem no more difficult than in related realms already well established. In any event it is a difficulty that may not be avoided in the face of allegations or proof sufficient to raise the possibility that such an intolerable abuse of official power no matter how aberrant and episodic has occurred through disciplinary corporal punishment.

621 F.2d at 612-13 (footnote omitted).

Although the Court of Appeals never has had occasion to consider whether the right of a child to be free from the sort of **physical abuse** by a state actor that the Court held was "clearly recognized" in 1980 also was "clearly established" in **sexual abuse cases**, at least five other Circuits have held that the substantive due process right to bodily integrity safeguards the subsidiary right to be free from sexual assault by a teacher, principal, coach, or counselor and unequivocally. Notably, those Circuits found that right to be free from sexual abuse by a

counselor, teacher, principal, or coach had been "clearly established" years before Plaintiff was

sexually assaulted by Arpaio at The Citadel Summer Camp.

In 1994, for example, the Fifth Circuit explained this logic as follows:

> If the Constitution protects a schoolchild against being tied to a chair or against arbitrary paddlings, then surely the Constitution protects a schoolchild from physical sexual abuse—here, sexually fondling a 15-year old school girl and statutory rape by a public schoolteacher. [The teacher's] sexual abuse of Jane Doe, earlier detailed in this opinion, is not contested by the defendants. Thus, Jane Doe clearly was deprived of a liberty interest recognized under the substantive due process component of the Fourteenth Amendment. **It is incontrovertible that bodily integrity is necessarily violated when a state actor sexually abuses a schoolchild and that such misconduct deprives the child of rights vouchsafed by the Fourteenth Amendment**. Obviously, there is never any justification for sexually molesting a schoolchild, and thus, no state interest, analogous to the punitive and disciplinary objectives attendant to corporal punishment, which might support it.

*Doe v. Taylor Indep. Sch. Dist*., 15 F.3d 443, 451-52 (5th Cir. 1994)(emphasis added). Five years

later, the Third Circuit applied the same reasoning and reached the same result, explaining:

> It may seem ludicrous to be obliged to consider whether it was "clearly established" that it was impermissible for school teachers and staff to sexually molest students. Nonetheless, we construe the proper inquiry as whether it was established that the students' rights were constitutionally based. Applying this standard, we reiterate the conclusion we reached in Stoneking I that the constitutional right Stoneking alleges, to freedom from invasion of her personal security through sexual abuse, was well-established at the time the assaults upon her occurred. …
> A teacher's sexual molestation of a student is an intrusion of the schoolchild's bodily integrity not substantively different for constitutional purposes from corporal punishment by teachers. **Reasonable officials would have understood the "contours" of a student's right to bodily integrity, under the Due Process Clause, to encompass a student's right to be free from sexual assaults by his or her teachers.** …
> Since a teacher's sexual molestation of a student could not possibly be deemed an acceptable practice, as some view teacher-inflicted corporal punishment, a student's right to be free from such molestation may be viewed as clearly established even before *Ingraham [v. Wright*, 430 U.S. 651, 673 & n.41 (1977)].

*Stoneking v. Bradford Area School Dist*., 882 F.2d 720, 726-727 (3d Cir. 1989)(emphasis add;

citations omitted). At least three other Circuits, for a total of five, agree. See, e.g., *Abeyta ex rel.*

*Martinez v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253, 1255 (10th Cir. 1996); *Doe v. Claiborne County*, 103 F.3d 495, 506 (6th Cir. 1996); *Doe v. Gooden*, 214 F.3d 952, 956 (8th Cir. 2000).

Finally, although the decision is not precedential, this Court can take note of the well-reasoned decision by the U.S. District Court for the Northern District of Virginia which, a decade ago, held that a public schoolteacher's sexual abuse of a pupil from 1995 to 1998 violated the latter's clearly established due process rights to bodily integrity in the school context, and, on that basis, held that the teacher's principal was not entitled to qualified immunity and could be held supervisorily liable for damages under §1983. *Arbaugh v. Bd. of Educ.*, 329 F. Supp. 2d 762, 768-70 (N.D. W. Va. 2004).

For all these reasons, Defendants Lyon and Garrott are not entitled to qualified immunity.

IV.    **IN THE EVENT THAT S.C. CODE ANN.§ 15-3-555 IS FOUND NOT TO APPLY, THE RECORD CONTAINS QUESTIONS OF MATERIAL FACT REGARDING TOLLING UNDER THE DISCOVERY RULE AND AS TO THE EXISTENCE OF "DELIBERATE ACTS OF DECEPTION," AND A "SYSTEMATIC PRACTICE OF SECRECY AND CONCEALMENT" UNDER THE SOUTH CAROLINA SUPREME COURT'S DECISION IN *DOE V. BISHOP OF CHARLESTON*.**

The Plaintiff further contends that Defendants Garrott and Lyons are not entitled to judgment at this stage in the proceedings because the Plaintiff has pled specific facts indicating that these defendants engaged in "[d]eliberate acts of deception" and a "systematic practice of secrecy and concealment of their knowledge of sexual abuse by employees." *Doe v. Bishop of Charleston*, 407 S.C. 128, 754 S.E.2d 494 (2014).   As the South Carolina Supreme Court recently held, such a showing can be sufficient to toll a statute of limitations in a sexual abuse case even when the abuse happened some 36 to 44 years prior to the filing of suit.  *Id.*  Further, the analysis regarding tolling as a result of deliberate acts of deception is independent from the

analysis regarding statutory tolling until a Plaintiff's twenty-seventh birthday pursuant to S.C. Code Ann. § 15-3-555.   Just weeks ago, the South Carolina Court of Common Pleas denied summary judgment on the statute of limitations grounds in a parallel action currently pending in state court against The Citadel.   Transcripts of these hearings have yet to be completed by the Court of Common Pleas, though the Plaintiff has attached The Citadel's Motion, the Plaintiff's Memorandum in Opposition, and the Form 4 Order of the Court in the companion litigation for reference.   (Ex.18, Citadel's Motion for Summary Judgment, *Doe v. Arpaio and The Citadel*, C/A No. 2011-CP-10-8609); (Ex. 19, Plaintiff's Memorandum in Opposition to The Citadel's Motion for Summary Judgment, *Doe v. Arpaio and The Citadel*, C/A No. 2011-CP-10-8609); (Ex. 20, Order Denying Summary Judgment,  *Doe v. Arpaio and The Citadel*, C/A No. 2011-CP-10-8609).   As to Defendants Garrott and Lyon, the Plaintiff hereby incorporates by reference all arguments regarding fraudulent concealment and/or deliberate acts of deception previously set forth in the instant litigation at Pages 20-30 of the Plaintiff's Response in Opposition to The Citadel's Motion to Dismiss, (ECF No. 17); Pages 24-33 of the Response in Opposition to Defendant Lackey's Motion to Dismiss, (ECF No. 37); and Pages 25-33 of the Response in Opposition to Defendant Bates's Motion to Dismiss, (ECF No. 39).   However, the Plaintiff briefly summarizes several items specific to these two individual Defendants.

### A.  **Deliberate Acts of Deception by Defendant Garrott**

As set forth in the Amended Complaint, while Defendant Garrott was the Deputy Director of the Citadel Summer Camp in the year 2000 during the time period that the Plaintiff was molested, and Defendant Garrott became the Director of the Citadel Summer Camp for the years 2002 until its closure in 2006.   (Amended Complaint at ¶ 139).   Thus, this Defendant was the director of the Summer Camp during the initial years that the alleged pattern of fraudulent

concealment was underway at The Citadel. It was Defendant Garrott that testified she understood and acknowledged that it was not appropriate to fail to notify the parents of the minor children who had been exposed to Arpaio of the risks their children had been exposed to. *See* (ECF Nos. 38, 40, Motion to Seal, Sealed Ex.2) (10-22-13 Garrott Dep pp.101:16--102:10). Defendant Garrott ultimately worked with The Citadel's public relations department to orchestrate a media and parent cover-up regarding Arpaio's activities on campus. *See* (ECF Nos. 38, 40, Motion to Seal, Sealed Ex.1)(06-25-13 Lackey Dep pp.70:6--90:16). Defendant Garrott actively evaded victims of sexual abuse who subsequently came forward and attempted to break their silence. *See* (ECF Nos. 38, 40, Motion to Seal, Sealed Ex.6)(08-28-13 Garrott Dep p.32:14—34:16). Defendant Garrott allowed The Citadel to terminate the employment of a minor victim of statutory rape and/or assault working within the camp rather than reporting the rapes to the proper authorities, as required by South Carolina law. *See* (ECF Nos. 38, 40, Motion to Seal, Sealed Ex.6)(08-28-13 Garrott Dep p.124, ll. 1-25; p. 125, ll. 1-25; p.126, ll. 1-25; p.127, ll. 1-10). Defendant Garrott failed to follow The Citadel's Sexual Harassment policy when a former counselor returned to the Summer Camp to masturbate in the presence of the 10-15 year-old campers in the locker room. *See* (ECF Nos. 38, 40, Motion to Seal, Sealed Ex.1)(06-25-13 Lackey Dep p.150:23--151:15; p.152:1-12; p.153:15—154: 2; p.155:2-9, 15-18; p.190:14-21; p.191:9-24; Sealed Ex.3, 06-26-13 Lackey Dep at p.229:15-24; p.234:9-15, p.235:6-15; p.236:11-25; p.237:1--239:7). Defendant Garrott failed to fire other counselors for known policy violations, although this failure caused up to fifty more campers to be sexually abused by the same counselor whom Garrott knew had violated the Camp's anti-cohabitation policy in 2003. *See* (ECF Nos. 38, 40, Motion to Seal, Sealed Ex.6)(08-28-13 Garrott Dep p.57:1-13). Finally, according to witnesses already deposed in parallel litigation, this Defendant actually witnessed

counselors participating in sexually deviant and criminal behavior with campers in the years leading up to the sexual molestation of the Plaintiff. (Amended Complaint at ¶¶ 159(g), (h), (bb), (cc)). However, this Defendant took no steps to prevent this abuse from happening to campers such as Plaintiff, to warn the parents of minor campers that their children had been exposed to these activities (and to a convicted pedophile), nor to expose the sexual deviance known by this Defendant to run rampant within The Citadel Summer Camp.

### B.    Deliberate Acts of Deception by Defendant Lyon

Defendant Lyon served as the senior counselor for the Summer Camp in 1998, a position that afforded considerable control over The Citadel Summer Camp. (Ex. 21, Depo of General Grinalds at Page 62, Lines 12-18). In 1999 and 2000 Lyon was promoted to positions affording even greater control over the camp, first as the Personnel and Administrative Officer for 1999 and then as the Safety and Education Officer for 2000. Prior to the summer of 2000, the Citadel withdrew its offer of employment to Lyon over concerns that he had embezzled Citadel Summer Camp funds. However, at the insistence of Camp Director Major Bates, the Citadel re-extended its offer of employment to Lyon, and Lyon returned to the Citadel Summer Camp as the Safety and Education Officer for the year 2000. Like Deputy Director Garrott, Safety Officer Lyon was said to have directly witnessed much of the inappropriate conduct with minors. One camper confirms that Rob Lyon walked into the room, which he shared with Defendant Arpaio in 1998, and saw that Arpaio was showing pornography to children. (Ex. 22, Victim No. 2 Depo at Page 157, Lines 17-21). Lyon roomed with counselor Arpaio in 1998, and was physically present while counselor Arpaio shared his bed with children. (Ex. 22, Victim No. 2 Depo at Page 149, Lines 11-25; Page 150, Lines 1-15; Page 158, Lines 21-25; Page 159, Lines 1-9); *see also* (Ex. 23, Daly Depo at Page 46, Lines 1-16; Page 47, Lines 2-8; Page 48, Lines 6-13, 19-24; Page 49,

Line 1).  Lyon knew that alcohol was being served to children within the camp frequently, and one camper testified "Rob Lyons for sure saw us. Definitely saw us getting drunk." (Ex. 24, Victim No. 1 Depo at Page 375, Lines 9-11).

Most shockingly, Lyon visited Arpaio's residence in Emerald Isle, North Carolina, in the summer of 1998 (or two years prior to the preventable molestation of the Plaintiff) wherein Lyon witnessed Arpaio serving alcohol to minor campers of the Citadel Summer Camp to the point of intoxication.  Further, Lyon witnessed Arpaio removing the clothing of the intoxicated minor campers during this visit, and Lyon is actually depicted in photographs with naked children confirming his presence during these events. (Ex. 23, Daly Depo at Page 60, Lines 11-19; Page 61, Lines 9-20; Page 62, Lines 11-18; Page 64, Lines 18-23; Page 66, Lines 10-12; Page 69, Lines 16-22; Page 70, Lines 14-22; Page 71, Lines 8-21; Page 73, Lines 7-11, 18-22)[23].  As such, Lyon, prior to serving as Safety and Education Officer for the year 2000, had actual knowledge of Arpaio's sexual proclivities towards minors but, incredibly, took absolutely no action to protect the safety of minor Citadel Summer Campers, including the Plaintiff, who suffered multiple sexual assaults and molestations inside the Citadel Summer Camp in 2000.  More relevant to the instant analysis, however, Defendant Lyon concealed his knowledge regarding the presence of sexual deviance within The Citadel Summer Camp and actually took active steps apparently designed to impede the subsequent prosecution of Michael Arpaio. (Ex. 25, Major Harward Depo, Vol. II at Page 36, Lines 7-21; Page 37, Lines 2-4)(Navy JAG prosecutor confirming that he would not believe a thing that Defendant Lyon had to say during Arpaio's criminal investigation).

---

[23] The photographs referenced within this deposition excerpt have been designated as exhibits to the original deposition of Robert Lyon.  These photographs have not been appended hereto due to their sensitive nature, but are incorporated herein by reference.

**CONCLUSION**

For the reasons set forth above, the Plaintiff respectfully request that this Honorable Court deny the motions to dismiss filed by Defendants Garrott and Lyon.  (ECF. No. 43)(ECF No. 44).

Respectfully Submitted,

s/ Scott C. Evans
J. Edward Bell, III, Fed ID No.1280
David W. Harwell, Fed ID No. 1766
Scott C. Evans, Fed ID No. 10874
Bell Legal Group, LLC
219 Ridge Street
Georgetown, SC 29442
Telephone: 843-546-2408
Facsimile: 843-546-9604

**Attorneys for the Plaintiff**

Georgetown, South Carolina
May 5, 2014