# Exhibit 2



**STEVEN F. BOYDEN, Plaintiff v. RONALD N. MICHAUD, and THE ROMAN CATHOLIC BISHOP OF PORTLAND, Defendants; WILLAIM J. PICHER, Plaintiff v. REV. MSGR. J. JOSEPH FORD, REV. JAMES M. MORRISON, REV. MSGR. RENE T. MATHIEU SR. RITA-MAE BISSONNETTE, and JOHN DOE, Defendants**

**CIVIL ACTION DOCKET NO. CV-07-276 and CV-07-331**

**SUPERIOR COURT OF MAINE, KENNEBEC COUNTY**

*2008 Me. Super. LEXIS 88*

**May 14, 2008, Decided**

**DISPOSITION: [\*1]** Plaintiff Boyden's motion to strike defendant, the Bishop's second motion for judgment on the pleadings is DENIED. Defendant, the Bishop's second motion for judgment on the pleadings is DENIED. Defendants Ford, Morrison, Mathieu and Bissonnette's motion for judgment on the pleadings is DENIED. The court reserves judgment on defendant, the Bishop's first motion for judgment on the pleadings according to this decision.

**COUNSEL:** For STEVEN F BOYDEN, PLAINTIFF: SUMNER LIPMAN, LIPMAN & KATZ & MCKEE, PA, AUGUSTA ME.

For RONALD N MICHAUD, ROMAN CATHOLIC BISHOP OF PORTLAND, DEFENDANTS: GERALD F PETRUCCELLI, PETRUCCELLI, MARTIN & HADDOW, LLP, PORTLAND ME.

**JUDGES:** Justice Joseph Jabar.

**OPINION BY:** Joseph Jabar

**OPINION**

**DECISION AND ORDER**

In front of the court in the *Boyden* case are two M.R. Civ. P. 12(c) motions for judgment on the pleadings brought by The Roman Catholic Bishop of Portland (the Bishop) and plaintiff's motion to strike the Bishop's second motion for judgment on the pleadings. In front of the court in the *Picher* case is defendants, Ford, Morrison, Mathieu and Bissonnette's M.R. Civ. P. 12(c) motion for judgment on the pleadings. Because the *Picher* motion for judgment on the pleadings raises identical legal issues to the **[\*2]** Bishop's second motion for judgment on the pleadings in *Boyden,* the court discusses them together.

**Facts**

A. *Boyden v. Michaud*

Plaintiff alleges defendant Michaud molested him between 1983 and 1985 while Michaud was a priest and plaintiff was a member of Michaud's parish. Plaintiff was born December 4, 1969.

B. *Picher v. Ford, et al.*

Plaintiff was molested by Raymond P. Melville between 1986 and 1989 while Melville was a priest at the St. Mary's School and plaintiff was a student. Plaintiff was born January 29, 1974. Plaintiff originally sued

Melville and the Bishop in Ken Doc. CV-07-57. Melville was defaulted for failure to respond. The Bishop filed a motion for summary judgment in that case based on a charitable immunity defense, which was granted by the court on December 10, 2007, final judgment being entered January 24, 2008. The current action is brought against defendants who were employees of the Bishop with supervisory roles with relation to Melville.

**Standard of Review:**

"A defendant's motion for judgment on the pleadings is the equivalent of a defendant's motion to dismiss for failure to state a claim." *MacKerron v. MacKerron, 571 A.2d 810, 813 (1990)*, citing 1 FIELD, MCKUSICK & WROTH, [*3] MAINE CIVIL PRACTICE, § 12.14 at 253 (2d ed. 1970). *See also, Burke v. Hamilton Beach Division, Etc., 424 A.2d 145, 148 (Me. 1981)*. Both a motion to dismiss for failure to state a claim and a motion for judgment on the pleadings "test[] the legal sufficiency of the complaint." *MacKerron, 571 A.2d at 813*. *See also,* 1 FIELD, MCKUSICK & WROTH, § 12.11 at 248.

**Discussion**

**A. Defendant, the Bishop's, first motion for judgment on the pleadings in *Boyden***

In 1985, the Maine legislature enacted *14 M.R.S.A. § 752-C*, effective September 19, 1985, providing:

> Actions based upon sexual intercourse or a sexual act, as defined in Title 17-A, chapter 11, with a person under the age of majority shall be commenced within 6 years after the cause of action accrues.

In 1989, the legislature amended *§ 752-C*, effective September 30, 1989, adding a discovery period:

> Actions based upon sexual intercourse or a sexual act, as defined in Title 17-A, chapter 11, with a person under the age of majority shall be commenced within 6 years after the cause of action accrues, or within 3 years of the time the person discovers or reasonably should have discovered the harm, whichever occurs later.

In 1991, *§ 752-C* was [*4] again amended:

> Actions based upon sexual intercourse or a sexual act, as defined in Title 17-A, chapter 11, with a person under the age of majority must be commenced within 12 years after the cause of action accrues, or within 6 years of the time the person discovers or reasonably should have discovered the harm, whichever occurs later.

As to the application of these changes the amendments provided:

> Sec. 2. Application. This Act applies to the following actions based upon sexual intercourse or a sexual act with a person under the age of majority:
>
>> 1. All actions based upon sexual intercourse or a sexual act occurring after the effective date of this Act; and
>>
>> 2. All actions for which the claim has not yet been barred by the previous statute of limitations in force on the effective date of this Act.

In 1993, the legislature did nothing to change the statute of limitations period, but did change "sexual intercourse, as defined in Title 17-A, *chapter 11*" to "sexual intercourse, as defined in Title 17-A, *section 556, subsection 1-B*."

Finally in 1999, effective August 11, 2000, the legislature removed the statute of limitations, such that today *14 M.R.S.A. § 752-C* reads:

> *§ 752-C* Sexual acts towards [*5] minors
>
>> 1. No limitation. Actions based upon

sexual acts toward minors may be commenced at any time.

2. Sexual acts toward minors defined. As used in this section, "sexual acts toward minors" means the following acts that are committed against or engaged in with a person under the age of majority;

> A. Sexual act, as defined in Title 17-A, section 251, subsection 1, paragraph C; or
>
> B. Sexual contact, as defined in Title 17-A, section 251, subsection 1, paragraph D.

Sec. 2. Application. This Act applies to the following actions based upon a sexual act or sexual contact occurring on or after the effective date of this Act; and

1. All actions based on a sexual act or sexual contact occurring on or after the effective date of this Act; and

2. All actions for which the claim has not yet been barred by the previous statute of limitations in force on the effective date of this Act.

Also quite important to determination of whether plaintiff's claims are time barred is 14 MJR.S.A. § 853, "If a person entitled to bring any action under section[]...752-C...is a minor...when the cause of action accrues, the action may be brought within the times limited herein after the disability is removed." Plaintiff turned [*6] 18 on December 4, 1987. (Pl.'s Cmpl. P 1.)

Based on the statutory scheme above, defendant's argument is that the six year limitations period in existence at the time of the abuse was tolled by § 853 until plaintiff reached the age of 18, it began to run at that point but was extended to 12 years by the 1991 amendment and thus ran 12 years after plaintiff's 18th birthday on December 4, 1999. The elimination of the statutory period did not become effective until August 11, 2000, at which point the statutory period of limitations for plaintiff's claim had elapsed. Thus, defendant argues, the elimination of a statute of limitations period was not applicable to plaintiff's claim. This analysis is the same offered by the Federal District Court in *Guptill v. Martin, 228 F.R.D. 62, 64-65 (D. Me. 2005).*

Plaintiff argues that the statute was effectively tolled for several reasons. [1] First of which is the Servicemembers' Civil Relief Act. The Servicemembers' Civil Relief Act (SCRA), *50 U.S.C App. § 526(a)* provides:

> (a) Tolling of statutes of limitations during military service.
>
> The period of a servicemember's military service may not be included in computing any period limited by law, regulation, [*7] or order for the bringing of any action or proceeding in court, or in any board, bureau, commission, department, or other agency of a state (or political subdivision of a state) or the United States by or against the servicemember or the servicemember's heirs, executors, administrators or assigns.

---

1   Other theories addressed are tolling due to fraudulent concealment, continuous tort, or Michaud being out of the country. The court does not address these because it believes that 1) the SCRA tolling will be dispositive with the caveat discussed below; and 2) these theories would also require resolution of matters outside of the pleadings.

Though it is not part of the pleadings, Boyden claims he was enlisted in the Air Force in July 1987 prior to reaching the age of 18 and thus prior to the conclusion of the § 853 tolling, and was in active duty thereafter until April 1994 when he was honorably discharged. He served during this time three tours outside of the United States, 6 months in Panama in 1988; two years in Korea in 1989 and 1990; and ten months in Saudi Arabia in 1991. "The tolling of the statute is unconditional. The only critical factor is military service; once that circumstance [*8] is shown, the period of limitations is automatically tolled for the duration of the service..." *Ricard v. Birch, 529*

*F.2d 214, 216 (4th Cir. 1975).*

Defendant argues, assuming December 31, 1985 as the last act of abuse in accordance with the pleadings, plaintiff had until December 31, 1991 to bring suit. However, the legislature changed the six-year statute of limitations to 12 years on October 9, 1991. Thus, according to defendant, the 1991 amendments gave plaintiff until January 1, 1998 to bring his claim (12 years and a day from last alleged action). Defendant argues the 1999 statutory amendment did not apply to plaintiff's claim because the statute of limitations had run on January 1, 1998. Thus the 1999 statute made irrelevant federal tolling because it took out any statutory limitations period.

The court does not agree with defendant's analysis. Assuming the truth of plaintiff's memorandum, the end of his service was 1994. The statute of limitations period in effect in 1994 was twelve years. Twelve years after 1994 is 2006. During this twelve year period, the statute of limitations was fully eliminated. The court sees no reason SCRA should be interpreted not to apply because of subsequent [*9] amendment to *§ 752-C*, especially given that subsequent amendment would erode the effect of the SCRA. Plaintiff should not be denied the benefit of SCRA's tolling simply because during that tolling period the statute of limitations was eliminated.

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. M.R. Civ. P. 12(c).

While defendant seemed not to deny plaintiff's military service [2], and its denial would merely create an issue of material fact justifying denial of defendant's motion given the above legal analysis, the court nonetheless finds that it must provide a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." M.R. Civ. P. 12(c). The only indication that the court currently has in the record that plaintiff served in the military is plaintiff's opposition to defendant's first motion for judgment on the pleadings.

An affidavit indicating likewise would establish [*10] a material fact for M.R. Civ. P. 56 purposes. The plaintiff and defendant are hereby given the opportunity to provide materials on this question. The parties will have fourteen days to do so.

> 2  As evidenced by its reply to the plaintiff's opposition to the motion for judgment on the pleadings, its response to plaintiff's motion to strike the second motion for judgment on the pleadings, its rationale for filing the second motion for judgment on the pleadings, and its conduct at a hearing on the motions.

**B. Plaintiff Boyden's motion to strike defendant, the Bishop's, second motion for judgment on the pleadings**

Defendant filed a second motion for judgment on the pleadings. While the first dealt with *§ 752-C*'s statute of limitations assuming *§ 752-C*'s application to plaintiff's cause of action, the second deals with the question whether *§ 752-C* applies substantively to plaintiff's cause of action. Plaintiff moved to strike this second motion for its failure to be brought in the first motion. The court sees no reason to strike defendant's 'second motion. No prejudice has occurred and no effect on judicial economy or efficiency is incurred, especially given the need for this court to deal with [*11] the identical argument in the *Picher* case. Accordingly plaintiff's motion to strike is denied.

**C Defendant, the Bishop's, second motion for judgment on the pleadings in *Boyden* and defendants, Ford, Morrison, Mathieu and Bissonnette's motion for judgment on the pleadings**

The legal question posed by these motions is whether *§ 752-C* or *§ 752* applies to the plaintiffs' causes of action. If *§ 752* and not *§ 752-C* applies, both plaintiffs' causes of action would be barred by *§ 752*'s statute of limitations. [3]

> 3  "All civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards..." 14 M.R.S.A. *§ 752*.

*§ 752-C* is applicable to "[a]ctions based upon sexual acts..." The question and the two meritorious positions on whether *§ 752-C* is applicable to claims against parties other than the perpetrator of the sexual acts were

previously brought before the Federal District Court for the District of Maine in *Allen v. Forest, 257 F. Supp. 2d 276 (D. Me. 2003)*.

The approach argued by the defendant in that case, as here, focused on the conduct of the perpetrator. The approach argued by the plaintiff in that case, as here, focused instead on the policy behind the elimination of **[*12]** the statute of limitations, to give added relief to the victims of sexual abuse. In *Allen* both parties cited a cavalcade of cases from foreign jurisdictions in support of their positions, the same exact cases cited here. *See Allen, 257 F. Supp. at 278-280* (citing *Kelly v. Marcantonio, 678 A.2d 873 (R.I. 1996)*; *Debbie Reynolds Prof'l Rehearsal Studios v. Johnson, 25 Cal.App. 4th 222* (Cal. App. 1994; *Almonte v. New York Med. Coll., 851 F. Supp. 34 (D. Conn. 1994)*; *Werre v. David, 913 P.2d 625 (Mont. 1996)*; *Lourim v. Swensen, 977 P.2d 1157 (Or. 1999)*; and *C.J.C v. Corporation of the Catholic Bishop of Yakima, 985 P.2d 262 (Wash. 1999))*. [4]

> 4   This court notes also the existence of *Sandoval v. The Archdiocese of Denver, 8 P.3d 598 (Colo. Ct. App. 2000)* and *Delonga v. Diocese of Sioux Falls, 329 F. Supp. 2d 1092 (D. S.D. 2004)*.

The District Court found that "[t]he language of each of the state statutes construed in these cases differed form that of *section 752-C.*" *Allen, 257 F. Supp. 2d at 279*. It also pointed out that "[t]he courts in *Kelly* and *C.J.C.* reached opposite results in construing essentially identical language." *Id.* Therefore "[u]nder the circumstances none of these opinions provides **[*13]** persuasive authority for interpretation of *section 752- C.*" *Id.* Ultimately, because the District Court was "unable to predict the path of Maine law in regard to claims against non-perpetrator defendants with respect to *14 M.R.S.A. § 752-C*" and certified the question whether *§ 752-C* is "applicable to claims against parties other than the perpetrator of the sexual acts toward minors that provide the factual basis for those claims" to the Law Court. *Id.* Unfortunately for this court, *Allen* settled before the Law Court had opportunity to opine on the certified question. This court suggested to the parties, given the reasons expressed in *Allen,* reporting this question to the Law Court per M.R. App. P. 24(a) might be prudent. However, not all parties appearing agreed. M.R. App. P. 24(a).

Though the question is razor thin, this court finds more compelling the rationale of cases like *C.J.C.* out of Washington, *Delonga* out of South Dakota, and *Almonte* out of Connecticut. Both Washington and South Dakota's statutes utilize the phrase "based on." [5] "Based on" means "the starting point or foundation of the claim." *C.J.C., 985 P.2d at 267* (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 180 (1986)). **[*14]** In *C.J.C.* the Court held that the plain meaning of "based on" encompassed all actions arising from intentional conduct. *Delonga,* whose analysis the District Court in *Allen* did not have the benefit, provided a bridge from *Alamonte's* policy analysis to *C.J.C's* broad interpretation of the phrase "based on." The *Delonga* court focused on "actions flowing from a particular type of harm[,]" rather than a particular defendant. It quoted *Almonte* at length:

> In recognizing that it may take years for a victim to come to terms with the sexual abuse, the Legislature implicitly understood that it may take as much time to identify those responsible for the abuse: It is only logical that the abuse and the abuser must be identified before the chain of responsibility can be discovered. Thus were the [Connecticut sex abuse statute of limitations] limited to action's against perpetrators only, many if not most non-offender prospective defendants would, for all practical purposes, be rendered immune from suit. Such a result is both contrary to public policy and inconsistent with the Legislature's intent to broaden remedies available to victims of sexual abuse through the extended limitations period. *Delonga, 329 F. Supp. 2d at 1103-04* **[*15]** (quoting *Almonte, 851 F. Supp. at 37-38*).

> 5   *§ 752-C* utilizes the phrase "based upon" rather than "based on." Upon means "on." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 1268 (1984). Therefore, there is no meaningful distinction between the use of "based upon" and "based on."

This court finds from the plain meaning of the phrase "based upon" and "the focus of the statute at hand, as gleaned from the language, is on actions flowing from a particular type of harm, not on the nature of the party or

parties causing the harm." *Id. at 1104*. As stated in *Almonte,* this is a "harm-based approach". *Almonte, 851 F. Supp at 39*.

For the reasons stated above, the court finds and concludes that the plaintiffs' claims are "based upon sexual acts towards minors"; therefore, *§ 752-C* is applicable to those claims. The defendants' motions for judgment on the pleadings contesting the substantive application of *§ 752-C* are dismissed. [6]

> 6   This court is also not deaf to the argument made by the defendants that *§ 752-C* is distinguishable from the statutes of other states because it fully eliminates the statute of limitations period. Thus defendants' argue the Legislature could not have intended to render them **[*16]** liable for negligence in perpetuity. Defendants' argument, while raising interesting and valid policy concerns, would require a strange form of statutory interpretation. The court interprets the plain language of "based upon" broadly. The "based upon" language did not come into existence at the time the Legislature eliminated the statute of limitations period. Quite the contrary, it was in the statute in 1985 when the Legislature first enacted *14 M.R.S.A. § 752-C* and the statute of limitations period was six years, stayed in tact when the Legislature amended the statute to include a three year discovery period in 1989, was unchanged when the legislature expanded the original statutory period to twelve years and the discovery period to six years in 1991, and finally was unchanged when the Legislature drastically changed the statute to create no limitations period in 1999. It would be strange for this court to interpret the meaning of language that, to this court, plainly encompassed the defendants in 1985, 1989, and 1991 to suddenly halt from doing so when it remained unchanged. Were it the intent of the Legislature to narrow the scope of "based upon" to accord with its elimination **[*17]** of the statute of limitations period, it would have done so. Defendants essentially ask this court to defy the plain meaning of words framed in 1985, because of an amendment occurring in 1999, without any change to those words.

The entry is

> Plaintiff Boyden's motion to strike defendant, the Bishop's second motion for judgment on the pleadings is DENIED.
>
> Defendant, the Bishop's second motion for judgment on the pleadings is DENIED.
>
> Defendants Ford, Morrison, Mathieu and Bissonnette's motion for judgment on the pleadings is DENIED
>
> The court reserves judgment on defendant, the Bishop's first motion for judgment on the pleadings according to this decision

May 14, 2008

> /s/ Joseph Jabar
>
> Justice Joseph Jabar