# Exhibit 9



**In the Matter of Estate of Margaret Dever Hover Gurnham, a/k/a Margaret D. Hover.  Beach First National Bank, Respondent, v. The Estate of Margaret Gurnham, a/k/a Margaret D. Hover and/or Brian Hover, Its Personal Representative, Appellants.**

Opinion No. 27360

**SUPREME COURT OF SOUTH CAROLINA**

*754 S.E.2d 875*; *2014 S.C. LEXIS 55*

**December 4, 2013, Heard
February 26, 2014, Filed**

**PRIOR HISTORY:** [**1]
 Appeal From Beaufort County. Appellate Case No. 2012-207047. The Honorable Marvin H. Dukes, III, Special Circuit Court Judge.

**DISPOSITION:**   REVERSED.

**COUNSEL:** Jonathan Brent Kiker, of Kiker Law Firm and Richard Bryan Allen, both of Hilton Head Island, for Appellants.

William Weston Jones Newton, of Jones Simpson & Newton, PA, of Bluffton, James B. Richardson, Jr., Esquire, of Columbia, for Respondent.

**JUDGES:** JUSTICE BEATTY. TOAL, C.J., PLEICONES, KITTREDGE and HEARN, JJ., concur.

**OPINION BY:** BEATTY

**OPINION**

   [*877] **JUSTICE BEATTY:** Brian Hover (Hover), who is the son of Margaret Dever Hover Gurnham and the Personal Representative of her Estate, appeals the circuit court's order confirming the probate court's grant of summary judgment in favor of Beach First National Bank (Bank) to enforce a deficiency judgment against the Estate. Hover asserts the Bank's claim, which arose following a foreclosure action, was untimely and, thus, barred by *section 62-3-803* [1] of the South Carolina Probate Code (Probate Code). We hold the Bank's claim is barred as it was presented outside the time limits of the nonclaim statute. Accordingly, we reverse the grant of summary judgment in favor of the Bank.

   1  *S.C. Code Ann. § 62-3-803* (2009) (providing the limitations on presentation [**2] of claims against a decedent's estate). We note that in 2013 the South Carolina General Assembly extensively amended the Probate Code. Act No. 100, 2013 S.C. Acts 1, 1-498. Because these amendments are effective on January 1, 2014, we have cited to the code provisions in effect at the time this case arose. We do, however, reference these amendments to glean legislative intent as "the 2013 amendments contain effective date provisions that generally apply the amendments retroactively, except when that would divest otherwise vested rights." S. Alan Medlin, *The South Carolina Probate Code Patched and Refurbished: Version 2013*, 65 S.C. L. Rev. 81, 130 (2013).

**I. Factual / Procedural History**

   On March 24, 2005, Margaret Gurnham executed a

promissory note (the Note) in the amount of $750,000 and obtained an equity line of credit for $260,000 as an advance against the Note. Hover, as Trustee of the "Margaret D. Hover Irrevocable Qualified Personal Residence Trust, dated May 22, 2000 (Residence Trust)," secured payment of this debt by executing: (1) a first mortgage, which was assigned to Hudson City Savings Bank, for the Note with a maturity date of April 1, 2035; and (2) a second mortgage to [**3] the Bank for the credit line. Both mortgages covered real property located on Hilton Head Island that was owned by Gurnham and conveyed to Hover as Trustee of the Residence Trust.

On December 8, 2005, Gurnham died testate. On February 23, 2006, Gurnham's estate was opened in probate court with Hover being appointed as Personal Representative. Hover properly notified creditors by publication [2] in *The Beaufort Gazette* on March 2, 9, and 16, 2006. Hover continued to make payments on the Note and mortgages, but ceased to do so after March 29, 2008.

> 2   *S.C. Code Ann. § 62-3-801(a)* (2009) ("Unless notice has already been given under this section, a personal representative upon his appointment shall publish a notice to creditors once a week for three successive weeks in a newspaper of general circulation in the county announcing his appointment and address and notifying creditors of the estate to present their claims within eight months after the date of the first publication of the notice or be forever barred.").

On July 15, 2008, Hudson City Savings Bank commenced an action in the circuit court seeking foreclosure of the real property that was the subject of the first mortgage. On August 18, [**4] 2008, the Bank, as a named defendant in the foreclosure action, answered and filed a cross-claim against Hover as Personal [*878] Representative of the Estate for foreclosure of the second mortgage and, if necessary, a deficiency judgment. The next day, the Bank filed in probate court a Statement of Creditor's Claim for $247,168.23 ("as of July 29, 2008") against the Estate.

After Hover defaulted in the foreclosure proceedings, the circuit court entered judgment of foreclosure and sale of the real estate by order dated October 9, 2008. On December 11, 2008, following the sale of the real estate, the court entered a deficiency judgment against Hover as Personal Representative of the Estate in the amount of $259,620.63.

On December 30, 2008, while the Estate was still open, the Bank filed in probate court a Supplemental Statement of Creditor's Claim for the full amount of the deficiency judgment.

On July 29, 2009, Hover filed a Notice of Disallowance of the Bank's claim on the ground that it was not timely filed and was, therefore, barred under *section 62-3-803* [3] of the Probate Code. In response, the Bank filed a Petition for Allowance of the Creditor's Claim, alleging the claim was timely presented [**5] under *section 62-3-803(b)(2)* and that the deficiency judgment constituted an allowance of the claim under *section 62-3-806(c)*.[4] Additionally, the Bank asserted causes of action based on waiver, res judicata, estoppel, fraud, constructive fraud, negligent misrepresentation, and breach of contract. In support of these causes of action, the Bank asserted that "Brian Hover and/or others carefully kept both the first mortgage and second mortgage accounts current until well after the passage of the usual six (6) months for filing of claims had passed." The Bank further noted that Hover, in the "official inventory filed March 7, 2007 [with the probate court], did not disclose any debt to [the Bank], thus indicating an intent opposite to [Hover's] representations to [the Bank]."

> 3   *Section 62-3-803* provides in relevant part:
>
>> (a) All claims against a decedent's estate which arose before the death of the decedent, including claims of the State and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, if not barred earlier by other statute of limitations, are barred against the estate, the personal [**6] representative, and the heirs and devisees of the decedent, unless presented within the earlier of the following dates:
>>
>>> (1) one year after the decedent's death; or

(2) within the time provided by Section 62-3-801(b) for creditors who are given actual notice, and within the time provided in *Section 62-3-801(a)* for all creditors barred by publication; provided, claims barred by the nonclaim statute at the decedent's domicile before the giving of notice to creditors barred in this State are also barred in this State.

(b) All claims against a decedent's estate which arise at or after the death of the decedent, including claims of the State and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:

(1) a claim based on a contract with the personal representative within eight months after performance by the personal representative is due;

(2) any other claim, within the later of eight months after it arises, or the time specified in subsection (a)(1).

(c) Nothing **[**7]** in this section affects or prevents:
(1) any proceeding to enforce any mortgage, pledge, lien, or other security interest upon property of the estate;

. . . .

*S.C. Code Ann. § 62-3-803* (2009).

4   *Subsection (c) of section 62-3-806* states, "A judgment in a proceeding in another court against a personal representative to enforce a claim against a decedent's estate is an allowance of the claim." *S.C. Code Ann. § 62-3-806(c)* (2009).

Both parties moved for summary judgment. Following a hearing, the probate court granted summary judgment in favor of the Bank. In so ruling, the court initially noted there was no dispute as to the facts of the case or the validity of the deficiency judgment entered in circuit court. Consequently, the court found the entry of this judgment in circuit court constituted an allowance of the Bank's claim in probate court pursuant to *section 62-3-806(c)*. Based on this ruling, the court declined to address the parties' remaining issues, particularly "whether the Claim was timely presented under other provisions of the Probate Code or is barred by the statute of limitations."

**[*879]** Following the denial of his motion to alter or amend, Hover appealed the probate court's order to **[**8]** the circuit court. The circuit court confirmed the probate court's order, but clarified that Hover was not individually liable as he "was not an individual Defendant" in the action. Hover then appealed to the Court of Appeals. This Court certified the appeal pursuant to Rule 204(b) of the South Carolina Appellate Court Rules.

**II. Discussion**

### A. Arguments

Hover argues the circuit court erred in confirming the probate court's grant of summary judgment to the Bank as the creditor claim was untimely and "forever barred" by the Probate Code's "claims-barring process." Specifically, Hover asserts the claim arose prior to Gurnham's death and, therefore, *section 62-3-803(a)* mandated that the Bank present its claim no later than one year after Gurnham's death on December 8, 2005. Given the fact that the Bank first attempted to present its claim in probate court on August 19, 2008, Hover maintains the claim was not timely presented. Alternatively, Hover avers the Bank's untimely filing divested the circuit court of subject matter jurisdiction to issue the order for the deficiency judgment, thus rendering the judgment invalid.

Finally, Hover urges this Court to reverse the circuit court's order as [**9] a matter of policy because a decision in favor of the Bank would "moot the entire claims-barring process established by the South Carolina General Assembly." Hover explains that "[b]y creating a date certain by which all creditors' claims have to be resolved, the claims-barring statute assures the determination of ownership within a reasonable time so that the decedent's property becomes marketable."

### B. Standard of Review

The parties presented this case in the posture of a motion for summary judgment; thus, it is governed by Rule 56(c) of the South Carolina Rules of Civil Procedure. This rule provides a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "An appellate court reviews the granting of summary judgment under the same standard applied by the trial court pursuant to Rule 56, SCRCP." *Brockbank v. Best Capital Corp., 341 S.C. 372, 379, 534 S.E.2d 688, 692 (2000)*.

Because the facts of this case are undisputed, the resolution [**10] of this appeal is limited to the legal determination of whether the Bank's claim against the Estate was enforceable under the applicable provisions of the Probate Code. Accordingly, the analysis of this case is controlled by rules of statutory construction.

" 'Questions of statutory interpretation are questions of law, which we are free to decide without any deference to the court below.' " *Grier v. AMISUB of S.C., Inc., 397 S.C. 532, 535, 725 S.E.2d 693, 695 (2012)* (quoting *CFRE, L.L.C. v. Greenville County Assessor, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011))*. "The cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Sloan v. Hardee, 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007)*. "When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning." *Id.* In interpreting a statute, "[w]ords must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation." *Id. at 499, 640 S.E.2d at 459*. Further, "the statute must be read as a whole and sections which [**11] are a part of the same general statutory law must be construed together and each one given effect." *S.C. State Ports Auth. v. Jasper County, 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006)*.

### C. Two Avenues for Secured Creditors

#### 1. Statutory Progression

Pursuant to the general statutory scheme of the Probate Code, all claims against a decedent's estate and his successors must be presented after a personal representative is [*880] appointed and within the time limits prescribed by *section 62-3-803*, which our appellate courts have designated as a "nonclaim statute." *See S.C. Code Ann. § 62-3-104* (2009) ("No proceeding to enforce a claim against the estate of a decedent or his successors may be revived or commenced before the appointment of a personal representative. After the appointment and until distribution, all proceedings and actions to enforce a claim against the estate are governed by the procedure prescribed by this article *[§§ 62-3-101 et seq.*].")*; In re Estate of Tollison, 320 S.C. 132, 135, 463 S.E.2d 611, 613 (Ct. App. 1995)* ("*Section 62-3-803* is a nonclaim statute.").

The Probate Code generally defines "claims" to include "liabilities of the decedent . . . whether arising in contract, [**12] in tort, or otherwise, and liabilities of the estate which arise at or after the death of the decedent . . . , including funeral expenses and expenses of administration." *S.C. Code Ann. § 62-1-201(4)* (2009). As stated in the nonclaim statute, claims against a decedent's estate include all claims "whether due or to become due,

absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis." *Id. § 62-3-803(a), (b)*.

Thus, "[b]roadly speaking, all claims against the decedent should be presented for allowance, and the word 'claims' includes such debts or demands as existed against the decedent in his or her lifetime and that might have been enforced against him or her by personal actions for the recovery of money." 34 C.J.S. *Executors & Administrators* § 548 (Supp. 2013) (footnotes omitted). "Stated another way, the term includes every species of liability that the personal representative can be called on to pay out of the general funds of the estate." *Id.* "However, claims against an estate are not limited to obligations of the decedent that could have been enforced against him or her while living." *Id.*

Despite this seemingly all-inclusive language, the [**13] General Assembly has provided exemptions for certain claims filed by secured creditors. *Section 62-3-803*, the nonclaim statute, provides that "[n]othing in this section affects or prevents any proceeding to enforce any mortgage, pledge, lien, or other security interest upon property of the estate." *Id. § 62-3-803(c)(1)*; *see id. § 62-3-812* ("No execution may issue upon nor may any levy be made against any property of the estate under any judgment against a decedent or a personal representative, *but this section shall not be construed to prevent the enforcement of mortgages, pledges, liens, or other security interests upon real or personal property in an appropriate proceedings.*" (emphasis added)).

These exemptions, however, are not without limitation as a secured creditor may only present a claim outside of the time limits of the nonclaim statute if the creditor's recovery is confined to the security. Specifically, *section 62-3-104* provides that the statutes governing probate code proceedings have no application "to a proceeding by a secured creditor of the decedent to enforce his right to his security *except as to any deficiency judgment which might be sought therein.*" *Id. § 62-3-104* [**14] (emphasis added); Reporter's Comments to *§ 62-3-104* ("[T]he secured creditor who wishes to enforce a claim for deficiency, even if unliquidated or only potential, is required to comply with the claims provisions in this section and Part 8 of this article.").[5] *See generally* G. Van Ingen, Annotation, *Nonclaim Statute as Applied to Real Estate Mortgage or Mortgage Debt*, 78 A.L.R. 1126 (1932 & Supp. 2013) (citing state and federal court decisions regarding the general rule that the failure to present a mortgage claim to the personal representative of the estate of the deceased mortgagor, as required by a general nonclaim statute, does not bar the mortgagee's right to foreclose or enforce his mortgage against the mortgaged property, but *only* bars a recovery of any deficiency judgment, or participation in the general assets of the estate).

> 5   *Section 62-3-804(7)(b)* of the 2013 amendments "clarifies that, as earlier stated in *Section 62-3-104*, an *in rem* proceeding by a secured creditor is not suspended until a personal representative is appointed, unless that proceeding includes an action for a deficiency judgment against a decedent or his estate." Reporter's Comments to *S.C. Code Ann. § 62-3-804(7)(b)* [**15] (2013 amendments) (outlining the manner of presentation of claims against a decedent's estate).

[*881] Thus, the General Assembly has created two avenues by which a secured creditor may seek recovery following the opening of an estate and the appointment of a personal representative. Under the first avenue, the secured creditor may pursue foreclosure proceedings on the security for the mortgage without presenting a claim against the estate and, thus, may do so outside the time limits of the nonclaim statute. Alternatively, the secured creditor may seek to recover directly from the assets of the estate, which then requires the claim to be presented in the probate court within the time limits of the nonclaim statute. However, if the creditor chooses the first avenue and the foreclosure proceedings fail to yield the full amount of the security, the creditor must have presented a claim on the security in probate court within the time limits prescribed by the nonclaim statute.[6]

> 6   Notably, the method of payment by the personal representative to a secured creditor is dependent upon whether the creditor "surrenders his security" or "exhausts his security before receiving payment." *S.C. Code Ann. § 62-3-809* [**16] (2009) (outlining method of payment for secured claims); *see id. § 62-3-805* (establishing priority of claims for payment when assets of the estate are insufficient to pay all claims in full).

### 2. Effect of the Nonclaim Statute

If the secured creditor fails to timely present a claim

in compliance with the nonclaim statute, the creditor's right of action against the estate is barred. *See In re Estate of Tollison, 320 S.C. 132, 135, 463 S.E.2d 611, 613 (Ct. App. 1995)* ("*Section 62-3-803* is a nonclaim statute. Thus, unless the statute is complied with, the creditor's claim is barred." (citation omitted)); *see also Phillips v. Quick, 399 S.C. 226, 230, 731 S.E.2d 327, 329 (Ct. App. 2012)* (contrasting the nonclaim statute with a statute of limitations and recognizing that " '[u]nless the claim is filed within the prescribed time set out in the statute, no enforceable right of action is created' " (quoting *Estate of Decker v. Farm Credit Servs. of Mid-Am., ACA, 684 N.E.2d 1137, 1138-39 (Ind. 1997))).*

In contrast to the Bank's characterization, the nonclaim statute is not a general statute of limitations as the two statutes are fundamentally and operationally distinct.[7] "Although a nonclaim statute **[**17] is in the nature of, and is similar to, a statute of limitations, in that it prevents the enforcement of stale demands, it is not wholly such." 34 C.J.S. *Executors & Administrators* § 556 (Supp. 2013). "An untimely claim filed pursuant to a jurisdictional statute of nonclaim is automatically barred, so that the filing of a claim within the period specified is mandatory." *Id.* (footnotes omitted). "However, a claim filed beyond the time set forth in a statute of limitations ordinarily is barred only if the statute of limitations is raised as an affirmative defense or by way of a motion to dismiss, if the defense appears on the face of the prior pleading." *Id.*

  7  The Bank maintains that the phrase "other statute of limitations" in *section 62-3-803* means the nonclaim statute is "itself [] a statute of limitations." *See S.C. Code Ann. § 62-3-803(a)* (2009) ("All claims against a decedent's estate which arose before the death of the decedent, . . . , *if not barred earlier by other statute of limitations*, are barred against the estate." (emphasis added)). We note, however, that the General Assembly has now clarified *section 62-3-803(a)* to state, "if not barred earlier by another statute of limitations **[**18] or nonclaim statute." Although this amendment is effective January 1, 2014, after the matter at issue here, we believe it provides guidance in this case as it constitutes evidence of legislative intent and is consistent with this Court's classification of *section 62-3-803* as a nonclaim statute.

These operational differences are based on fundamental distinctions between the two types of statutes, which are explained as follows:

> A nonclaim statute is a self-contained statute which absolutely prohibits the initiation of litigation based on it after a prescribed period. *While nonclaim statutes limit the time in which a claim may be filed or an action brought, they are separate and distinct from statutes of limitation, and are broader in their operation.* Such statutes also are sometimes called special statutes of limitation.
>
> A statute is a nonclaim statute if there is a clearly evidenced legislative intent in the statute to not merely withhold the remedy, but to take away the right of recovery when a claimant fails to present his or her [*882] claim as provided in the statute. The language creating a nonclaim statute must indicate clearly that a failure to comply with its terms bars the claim, that **[**19] filing is a condition to the existence of the claim, or that failure to file deprives the court of jurisdiction.
>
> The time element is a built-in condition of a nonclaim statute and is of the essence of the right of action, and unless the claim is filed within the prescribed time set out in the statute, no enforceable right of action is created.

*51 Am. Jur. 2d Limitation of Actions § 3* (2011) (footnotes omitted) (emphasis added).[8]

  8  Relying on a footnote in *Moultis v. Degen, 279 S.C. 1, 6 n.3, 301 S.E.2d 554, 557 n.3 (1983)*, which states "[w]hile we recognize that the claims barring statute is an affirmative defense to be pled by way of answer," the Bank contends that Hover's failure to plead the claims-barring statute as an affirmative defense in the foreclosure proceedings waived its operation. For several reasons, we reject the Bank's contention. First, as discussed, the nonclaim statute is not a statute of limitations that must be pled but, rather, is one

that affects a claimant's right of action against the Estate. Thus, we find the footnote upon which the Bank relies is an incorrect statement of the law. Second, the statement constitutes dicta as it was in reference to an unpreserved **[\*\*20]** appellate issue that did not serve as a basis for the Court's decision.

Furthermore, although the nonclaim "bar" is often cursorily categorized as "jurisdictional," it does not implicate subject matter jurisdiction as asserted by Hover. *See In re Estate of Ongaro, 998 P.2d 1097, 1103 (Colo. 2000)* (en banc) (discussing cases that state a nonclaim statute "operates to deprive a court of jurisdiction" and finding these cases mischaracterized the precise effects of the nonclaim statute because "the nonclaim statute does not deprive courts of jurisdiction over untimely claims").

As this Court recently explained, "The word 'jurisdiction' does not in every context connote subject matter jurisdiction, but rather, is 'a word of many, too many, meanings.' " *Limehouse v. Hulsey, 404 S.C. 93, 104, 744 S.E.2d 566, 572 (2013)* (quoting *Rockwell Int'l Corp. v. U.S., 549 U.S. 457, 467, 127 S. Ct. 1397, 167 L. Ed. 2d 190 (2007))*. Rather, "[j]urisdiction is generally defined as 'the authority to decide a given case one way or the other. Without jurisdiction, a court cannot proceed at all in any cause; jurisdiction is the power to declare law, and when it ceases to exist, the only function remaining to a court is that of announcing the fact **[\*\*21]** and dismissing the cause.' " *Id. at 104, 744 S.E.2d at 572* (quoting *32A Am. Jur. 2d Federal Courts § 581* (2007) (footnotes omitted)). "Specifically, '[j]urisdiction is composed of three elements: (1) personal jurisdiction; (2) subject matter jurisdiction; and (3) the court's power to render the particular judgment requested.' " *Id.* (quoting *Indep. Sch. Dist. No. 1 of Okla. County v. Scott, 2000 OK CIV APP 121, 15 P.3d 1244, 1248 (Okla. Civ. App. 2000))*.

Thus, a failure to comply with the nonclaim statute would not divest either the probate court or the circuit court of subject matter jurisdiction with respect to issues arising out of the probate of an estate. *See S.C. Const. art. V, § 11* ("The Circuit Court shall be a general trial court with original jurisdiction in civil and criminal cases, except those cases in which exclusive jurisdiction shall be given to inferior courts, and shall have such appellate jurisdiction as provided by law."); *S.C. Code Ann. § 62-1-302(a)(1)* (2009 & Supp. 2012) (recognizing probate court's exclusive original jurisdiction over all subject matter related to the estates of decedents). Instead, noncompliance eliminates a claimant's right of action against a decedent's estate **[\*\*22]** and, in turn, deprives the court of the power to adjudicate the claim. *See* 54 C.J.S. *Limitations of Actions* § 33 (Supp. 2013) ("Nonclaim statutes operate to bar untimely claims without any action by the opposing party and deprive a court of the *power* to adjudicate those claims." (emphasis added)).

**D. Application**

**1. Bank's Actions**

Applying the foregoing principles to the facts of the instant case, we hold the Bank's failure to present a timely claim barred its right to recover the deficiency judgment from the Estate.

We find and the Bank concedes that the second mortgage constituted a "claim" within the meaning of the Probate Code and, therefore, **[\*883]** subject to the nonclaim statute. The mortgage, which was executed during Gurnham's lifetime, constituted a contractual liability that arose prior to her death but was to become due in the future. Thus, although the mortgage was "unmatured" at the time the Estate was opened, liability was certain. *See* 34 C.J.S. *Executors & Administrators* § 522 (Supp. 2013) ("Fixed claims that will become due and payable in the future, although presently unmatured, may be proper claims against the estate of the decedent."); *id.* at § 552 ("A contingent claim within **[\*\*23]** the meaning of the statutes relating to presentation of claims against a decedent's estate is one under which the existence of any right or liability is not presently certain or absolute, but is dependent on some future event that may or may not happen; if the right or liability exists independent of the event, the claim is absolute, notwithstanding that it may be uncertain in amount or unenforceable until the happening of the event."); *see also In re Estate of Thomas, 743 S.W.2d 74, 77 (Mo. 1988)* (en banc) ("In probate the term 'liability' typically, if not exclusively, refers to a debt or a pecuniary obligation.").

Because the Bank pursued foreclosure proceedings, its right of recovery was limited to the sale of the real estate unless it timely filed a claim in probate court to recover any potential deficiency. The Bank did not do so as it filed a Statement of Creditor's Claim on August 19,

2008, which was clearly more than one year after Gurnham's death and more than eight months after Hover served creditors notice by publication on March 2, 2006. Although the deficiency judgment was entered after the claims-filing time limits and arguably "arose after the decedent's death,"[9] this **[**24]** fact did not "toll" the time limits of the nonclaim statute as the claim that formed the basis of the deficiency judgment arose long before the deficiency judgment was entered.

> 9   For claims arising after the decedent's death, the nonclaim statute allows the claim to be filed within eight months after it arises. *S.C. Code Ann. § 62-3-803(b)(2)* (2009). These types of claims normally include funeral expenses and costs incurred by the personal representative in administering the estate. *See* 34 C.J.S. *Executors & Administrators* § 553 (Supp. 2013) ("The statutes of nonclaim usually apply only to claims that existed against the decedent in his or her lifetime, and do not require presentation of claims that come into existence after his or her death, such as claims for funeral expenses, or administration expenses, or claims based on contracts entered into by the executor or administrator." (footnotes omitted)).

Our conclusion is consistent with the decisions of other jurisdictions addressing similar facts. *See, e.g., Harter v. Lenmark, 443 N.W.2d 537, 540 (Minn. 1989)* (recognizing that a mortgagee may proceed against property of the estate encumbered by a mortgage without the necessity of filing **[**25]** a claim, but finding "there is no statutory provision authorizing the entry of a deficiency judgment on a debt in the absence of the requisite claim"; finding noteholder's failure to file a claim in probate court was "dispositive"); *Gandy v. Citicorp, 985 So. 2d 371 (Miss. Ct. App. 2008)* (finding that bank, which chose not to probate its claims but proceeded with foreclosure against security, was precluded from a claim for any deficiency from the assets of the estate); *Provident Inst. for Sav. in Jersey City v. W. Bergen Trust Co., 126 N.J.L. 595, 20 A.2d 437, 439 (N.J. Ct. of Errors & Appeals 1941)* (barring bank's suit for deficiency judgment against the estate where bank proceeded with foreclosure action but did not file "claims upon the bonds and mortgages" within the "time fixed by law"); *Alexander v. Galloway, 239 N.C. 554, 80 S.E.2d 369, 372 (N.C. 1954)* ("Where a secured creditor seeks to obtain payment either in full or of a deficiency out of the general assets of the estate and thus to enforce his claim against property not covered by his lien or held by him as security, presentation of his claim is necessary to preserve the right to payment out of the general assets of the estate."); *Meissner v. Murphy, 58 Ore. App. 174, 647 P.2d 972, 974 (Or. Ct. App. 1982)* **[**26]** (stating, "the failure to present to an executor or administrator for allowance a claim secured by mortgage, only operates to prevent a judgment for a deficiency that might remain after exhausting the mortgaged property, but does not affect the right to a foreclosure where no recovery is sought beyond the proceeds of the mortgaged lands" (citation omitted)).

**2. Deficiency Judgment did not "Override" Nonclaim Statute**

Despite the Bank's admission that it failed to file a timely claim against the Estate **[*884]** in probate court, the Bank maintains the filing of the foreclosure action in circuit court and the entry of the deficiency judgment cured this mistake. However, contrary to the analysis of the lower courts, the entry of the deficiency judgment could not "override" or eliminate the mandatory provisions of the nonclaim statute.

Although *section 62-3-806(c)* provides that "[a] judgment in a proceeding in another court against a personal representative to enforce a claim against a decedent's estate is an allowance of the claim," this provision does not eliminate the requirement that the claim must be timely filed in probate court. *See Ocean Nat'l Bank v. Spang, 675 A.2d 983, 984 (Me. 1996)* (recognizing **[**27]** that judgment constitutes an allowance of a probate claim, but stating that "[w]e would eliminate the time limits of the Probate Code if we were to conclude that a judgment obtained without presentment of a timely claim or commencement of a timely action is likewise allowed"). Thus, the entry of the deficiency judgment merely constituted a valid debt against the Estate that must have also been presented within the time limits of the nonclaim statute.[10]

> 10   Notably, the General Assembly has clarified *section 62-3-806* to define an "allowance of a claim" as merely constituting a valid debt of the decedent's estate. *See S.C. Code Ann. § 62-3-806(e)* (2013 amendments).

**3. Equitable Considerations**

Furthermore, even though a decision in favor of the Estate may appear inequitable, equitable considerations are not a factor in the claims-barring analysis. Thus, neither Hover's continued payment on the Note after his mother's death or the act of default in the foreclosure proceedings can "override" or eliminate the nonclaim statute as this statute has been strictly applied in similar circumstances. *See Phillips v. Quick, 399 S.C. 226, 230, 731 S.E.2d 327, 329 (Ct. App. 2012)* (" 'While equitable principles **[\*\*28]** may extend the time for commencing an action under statutes of limitation, nonclaim statutes impose a condition precedent to the enforcement of a right of action and are not subject to equitable exceptions.' " (quoting *Estate v. Decker v. Farm Credit Servs. of Mid-Am., ACA, 684 N.E.2d 1137, 1139 (Ind. 1997)))*; 34 C.J.S. *Executors & Administrators* § 547 (Supp. 2013) ("Misleading statements, assurances, or conduct of the representative inducing a creditor to refrain from the due presentation of his or her claim do not estop the representative from contesting the claim because of such a failure to present the claim."). *See generally* E.W.H., Annotation, *Effect of Conduct of Personal Representative Preventing Filing of Claims Within Time Allowed by Statute of Nonclaim*, 66 A.L.R. 1415 (1930 & Supp. 2013) (citing state and federal cases addressing the general rule that no promise on the part of a personal representative is sufficient to prevent the bar of the statute as to a claim not filed within the statutory period).

### III. Conclusion

Although we recognize that the Bank's deficiency judgment will not be satisfied, we decline to let this dictate a result that is contrary to the terms of the **[\*\*29]** Probate Code and the intent of the legislature. Instead, we reverse the grant of summary judgment in favor the Bank as it is mandated by our rules of statutory construction and effectuates the purpose of the nonclaim statute, which is to expedite and resolve claims against a decedent's estate with finality. *See In re Estate of Ongaro, 998 P.2d 1097, 1102 (Colo. 2000)* (en banc) (analyzing nonclaim statute and stating, "Allowing creditors to toll claims against estates would frustrate the speedy and efficient settlement of estates and distribution of assets"); *Ragan v. Hill, 337 N.C. 667, 447 S.E.2d 371, 374 (N.C. 1994)* ("The time limitations prescribed by [the nonclaim statute] allow the personal representative to identify all claims to be made against the assets of the estate early on in the process of administering the estate. The statute also promotes the early and final resolution of claims by barring those not presented within the identified period of time.").

Moreover, had the Bank timely presented a claim, it could have assumed its position as a general creditor to seek recovery against the remaining assets of the Estate. *See* 34 C.J.S. *Executors & Administrators* § 555 **[\*885]** (Supp. 2013) ("In any **[\*\*30]** case, where a mortgagee, pledge, or other secured creditor seeks to obtain payment either in full or of a deficiency out of the general assets of the estate, and, thus, to enforce his or her claim against property not covered by his or her lien or held by him or her as security, the claim stands on the same footing with the claims of other creditors and must be presented for allowance."); *In re Lundy Estate, 291 Mich. App. 347, 804 N.W.2d 773, 778 (Mich. Ct. App. 2011)* (noting that a "bank is in the same position as other creditors with respect to any claim against the estate for the amount of any deficiency existing after exhausting the security").

Based on the foregoing, we reverse the order of the circuit court.

**REVERSED.**

**TOAL, C.J., PLEICONES, KITTREDGE and HEARN, JJ., concur.**