# Exhibit 13



**ALITA LITTLETON, Individually; as the next best friend of and personal Representative of the Estate of Gregory Boggs, Jr.; LANAYA BORDEN, Plaintiffs - Appellants, v. JORDAN SWONGER, Officer, in both his official and individual capacities; PRINCE GEORGE'S COUNTY, MD, Defendants - Appellees, and MELVIN HIGH, Defendant.**

No. 11-1800

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

*502 Fed. Appx. 271*; *2012 U.S. App. LEXIS 26622*

**October 23, 2012, Argued
December 28, 2012, Decided**

**NOTICE:** PLEASE REFER TO *FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1* GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**PRIOR HISTORY:** [**1]
Appeal from the United States District Court for the District of Maryland, at Greenbelt. (8:07-cv-01409-PJM). Peter J. Messitte, Senior District Judge.
*Littleton v. Prince George's County, 797 F. Supp. 2d 648, 2011 U.S. Dist. LEXIS 67138 (D. Md., 2011)*

**DISPOSITION:** AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

**COUNSEL:** ARGUED: Gregory L. Lattimer, LAW OFFICES OF GREGORY L. LATTIMER, Washington, D.C., for Appellants.

Shelley Lynn Johnson, PRINCE GEORGE'S COUNTY OFFICE OF LAW, Upper Marlboro, Maryland, for Appellees.

ON BRIEF: Ted J. Williams, Washington, D.C., for Appellants.

M. Andree Green, Acting County Attorney, William A. Snoddy, Deputy County Attorney, PRINCE GEORGE'S COUNTY OFFICE OF LAW, Upper Marlboro, Maryland, for Appellees.

**JUDGES:** Before TRAXLER, Chief Judge, and WYNN and THACKER, Circuit Judges. Judge Wynn wrote the opinion, in which Chief Judge Traxler and Judge Thacker joined.

**OPINION BY:** WYNN

**OPINION**

[*272] WYNN, Circuit Judge:

This appeal arises from an incident in which Prince George's County, Maryland Police Officer Jordan Swonger ("Swonger") fatally shot Gregory Boggs, Jr. ("Boggs"). Boggs's mother, Alita Littleton ("Littleton"), and Boggs's girlfriend, Lanaya Borden ("Borden"), sued Swonger; Chief of Police Melvin High ("Chief High"); and Prince George's County. The district court dismissed the claims against Chief High [**2] and granted summary judgment for Prince George's County. The claims against Swonger proceeded to trial in which the jury deadlocked and the district court declared a mistrial. Thereafter, Swonger renewed his motion for summary judgment and the district court granted it, determining

502 Fed. Appx. 271, *272; 2012 U.S. App. LEXIS 26622, **2

that Swonger had acted reasonably. Because a genuine factual dispute exists about whether it was objectively reasonable for Swonger to use deadly force, we hold that the district court erred in granting summary judgment in Swonger's favor and remand this case for a retrial on the excessive force and state law claims.

I.

A.

After midnight on September 18, 2006, Swonger responded to a reported assault. At 1:44 a.m., Swonger radioed in to police dispatch to say that he had arrived at the scene and had spotted two people there, Boggs and Borden. Less than two minutes later, Swonger fatally shot Boggs. Swonger and Borden were the only eyewitnesses to the shooting, and they gave dramatically different accounts of the events.

Borden gave the following testimony at trial: She and Boggs were standing on the sidewalk when she heard a car door slam and she noticed Swonger walking towards them with "his gun pointed out [**3] at [them]." J.A. 198. Borden "was standing partially in front of [Boggs,]" with her "right back . . . to his left chest." J.A. 405. Boggs's left arm was around her neck. Swonger ordered Borden and Boggs to put their hands up but as she and Boggs were "attempting to comply," Appellant's Br. at 5, Swonger shot Boggs in the right midline of his chest. Boggs hit the back of Borden's legs as he fell to the ground. Borden knelt down to help Boggs and did not see anything in his hands. Borden's bloodstained pants were introduced as evidence at trial.

[*273] In contrast, Swonger testified that: when he arrived, Borden was on the ground and Boggs was standing above her with his hands "either around her throat or holding her shoulders." J.A. 334-35. Upon noticing Swonger, Boggs began walking Borden in the direction of a car parked nearby. Swonger moved to position himself between the couple and the car, ordering them to stop, sit, and put their hands up. Swonger could not see Boggs's right hand because Borden was standing in front of Boggs, when Swonger saw Boggs push Borden down, reach behind himself into his waistband with his right hand, and pull out an object. Believing Boggs had a weapon, Swonger [**4] fired at him. Swonger went up to Boggs's body and brushed a wallet out of his right hand. An evidence technician recovered a wallet from the scene.

B.

On May 29, 2007, Littleton, individually and as the administrator of Boggs's estate, and Borden ("Plaintiffs") brought this action against Prince George's County, Chief High, and Swonger, asserting: (I) claims under Maryland's Survival Act; (II) claims under Maryland's Wrongful Death Act; (III) excessive force/police brutality; (IV) assault and battery; (V) claims under *42 U.S.C. § 1983* for violations of the *Fourth* and *Fifth Amendments to the U.S. Constitution*; (VI) negligent training and supervision; (VII) intentional/negligent infliction of emotional distress; and (VIII) violations of Articles 24 and 26 of the Maryland Declaration of Rights.

After Chief High successfully moved to dismiss all claims against him, Prince George's County and Swonger moved for summary judgment, asserting that: Swonger was protected from liability by qualified immunity; his use of force was reasonable; and any unreasonable use of force was not the policy of Prince George's County. The district court granted summary judgment for Prince George's County on all [**5] counts and for Swonger on the assault and battery count and the intentional/negligent infliction count as to Borden.[1]

> 1  Negligent infliction of emotional distress is not a cognizable claim under Maryland law. E.g., *Abrams v. City of Rockville, 88 Md. App. 588, 596 A.2d 116, 118 (Md. Ct. Spec. App. 1991)*.

Following a trial on the remaining claims against Swonger, the jury deadlocked and the district court declared a mistrial. Thereafter, Swonger renewed his motion for summary judgment, which the district court granted, dismissing all claims against him. Plaintiffs appeal the initial and post-trial grants of summary judgment in favor of Swonger and Prince George's County, contending that there is a genuine issue of material fact as to whether it was objectively reasonable under the circumstances for Swonger to use deadly force against Boggs.

II.

We review the district court's grant of summary judgment de novo. *PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 119 (4th Cir. 2011)*. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. A

court reviewing a motion for summary judgment is not **[**6]** "to weigh the evidence, to count how many affidavits favor the plaintiff and how many oppose him, or to disregard stories that seem hard to believe." *Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991)* (citing *Anderson v. Liberty Lobby, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).* Instead, courts must view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in her favor, *Liberty* **[*274]** *Lobby, 477 U.S. at 255*, and grant summary judgment only "[i]f the nonmovant's evidence fails to put a material fact in dispute or is not significantly probative," *Gray, 925 F.2d at 95* (citing *Liberty Lobby, 477 U.S. at 249-50*).

III.

A.

Under Counts III and V, Littleton asserted that Swonger used unconstitutionally excessive force. A claim that an officer used excessive force during an apprehension or arrest is "analyzed under the *Fourth Amendment* and its 'reasonableness' standard"--that is, the use of force is not excessive if the officer's actions are "objectively reasonable" under the circumstances. *Graham v. Connor, 490 U.S. 386, 395-97, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)*. Littleton also asserted that Swonger violated Articles 24 and 26 of the Maryland Declaration of Rights (Count VIII). Because Articles 24 and **[**7]** 26 are construed in pari materia with the *Fourth* and *Fourteenth Amendments of the U.S. Constitution*, the district court assessed Littleton's state constitutional claims under the same objective reasonableness standard. *Carter v. State, 367 Md. 447, 788 A.2d 646, 652 (Md. 2002)* (Article 26); *Dua v. Comcast Cable of Md., Inc., 370 Md. 604, 805 A.2d 1061, 1070 (Md. 2002)* (Article 24); *Muse v. State, 146 Md. App. 395, 807 A.2d 113, 117 n.7 (Md. Ct. Spec. App. 2002)* (Article 26).

The district court determined "as a matter of law that Swonger's decision to use deadly force was objectively reasonable under the circumstances and that Boggs' *Fourth Amendment* right was not violated." *Littleton v. Prince George's Cnty., Md., 797 F. Supp. 2d 648, 657 (D. Md. 2011)*. Further, the district court held that even if Swonger had violated Boggs's constitutional rights, he was entitled to qualified immunity. 2

  2  As the district court noted, qualified immunity was not a defense to Littleton's claims under the Maryland Constitution. See, e.g., *Okwa v. Harper, 360 Md. 161, 757 A.2d 118, 140 (Md. 2000)*.

Under the doctrine of qualified immunity, a law enforcement officer performing a discretionary function is shielded from liability for civil damages unless his conduct **[**8]** (1) violated a constitutional right, and (2) "it would be clear to an objectively reasonable officer that his conduct violated that right." *Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002)*. The district court determined that it was reasonable for an officer in Swonger's position to "have believed that Boggs posed a serious deadly threat" warranting the use of deadly force to protect himself or Borden. *Littleton, 797 F. Supp. 2d at 658*.

Because the district court concluded that Swonger's conduct was objectively reasonable under the circumstances, the court ruled that Plaintiffs' state law claims also failed. Littleton had brought claims under Maryland's Survival Act and Wrongful Death Act (Counts I and II), both of which required establishing that Swonger's conduct was wrongful. 3 The district court stated that because Swonger's use of force was reasonable, "Littleton [could not] show that Swonger [had] committed a wrongful act that would entitle her to recover for wrongful death or survivorship." *Littleton, 797 F. Supp. 2d at 658*.

  3  The Survival Act permits the personal representative of an estate to bring an action that the decedent could have brought "against a tort-feasor for a **[**9]** wrong which resulted in the death of the decedent." *Md. Code Ann., Est. & Trusts § 7-401(y)* (emphasis added). The Wrongful Death Act permits an individual to bring an action against a person "whose wrongful acts caused the death of another." *Md. Code Ann., Cts. & Jud. Proc. § 3-902(a)* (emphasis added).

**[*275]** Regarding Littleton's assault and battery claim (Count IV) and Borden's intentional infliction of emotional distress claim (Count VII), Maryland law provides that "a law enforcement officer is not liable for assault and battery or other tortious conduct performed during the course of his official duties unless he acted with actual malice toward the plaintiff, i.e. with ill will, improper motivation or evil purpose." *Goehring v. United States, 870 F. Supp. 106, 108 (D. Md. 1994)* (internal quotations omitted). Further, to establish intentional

infliction of emotional distress, a plaintiff must show that the defendant intentionally or recklessly engaged in extreme or outrageous conduct that caused severe emotional distress. *Valderrama v. Honeywell Tech. Solutions, Inc., 473 F. Supp. 2d 658, 666 n.20 (D. Md. 2007)*. The district court concluded that because Swonger's conduct was objectively **[**10]** reasonable, it was neither malicious nor outrageous.

In sum, for each of Plaintiffs' claims against Swonger, the district court granted summary judgment based on its determination that there was no genuine issue of material fact as to whether Swonger's use of deadly force was objectively reasonable. Therefore, the issue central to this appeal, and the question we now turn to, is whether the district erred in determining that no genuine issue of fact exists as to the objective reasonableness of Swonger's use of deadly force.

B.

To determine whether a genuine issue of fact exists as to whether Swonger's use of deadly force was objectively reasonable, we must consider the circumstances Swonger confronted at the time of the shooting as described by the only two eyewitnesses at trial--Swonger and Borden. See *Graham, 490 U.S. at 397*.

In his testimony, Swonger stated that he believed Boggs was reaching for a weapon. "A police officer may use deadly force when the officer has sound reason to believe that a suspect poses a threat of serious physical harm to the officer or others." *Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996)* (citing *Tennessee v. Garner, 471 U.S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985))*. We evaluate the **[**11]** facts "from the perspective of a reasonable officer on the scene," *Waterman v. Batton, 393 F.3d 471, 477 (4th Cir. 2005)*, recognizing that "police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving," *Graham, 490 U.S. at 397*. Determining the reasonableness of an officer's use of force "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham, 490 U.S. at 396* (citing *Garner, 471 U.S. at 8-9*).

Here, the district court concluded that Swonger's use of deadly force was objectively reasonable because Swonger thought "that Boggs was reaching for a weapon and he reasonably feared Boggs could inflict serious physical harm on him or on Borden." *Littleton, 797 F. Supp. 2d at 656-57*. In the motion proceeding before trial, the district court acknowledged that Borden gave a very different account of the events, stating, "I can understand that small discrepancies as the Anderson case **[**12]** points out always would permit the officer's testimony to prevail, but here the divergence is radical. I mean, if [Borden's version is] believed, this officer totally unprovoked . . . shot these people." J.A. 175. After hearing the trial testimony, the district court concluded that because Borden **[*276]** "was not in a position to see what was visible to Swonger," her testimony "d[id] not create a genuine issue of material fact as to whether Swonger had a reasonable basis to believe that Boggs had a weapon and was going to use it." *Littleton, 797 F. Supp. 2d at 656*. In light of the discrepancies between Borden's testimony and Swonger's testimony, we cannot agree.

In Anderson v. Russell, this Court stated that "minor discrepancies in testimony do not create a material issue of fact in an excessive force claim, particularly when . . . the witness views the event from a worse vantage point than that of the officers." *247 F.3d 125, 130-31 (4th Cir. 2001)*. Unlike Anderson, however, the testimony offered here by Borden, if believed by a jury, established that Borden's vantage point was irrelevant to at least two significant discrepancies between her and Swonger's testimonies: (1) whether Boggs pushed **[**13]** Borden down as he reached behind himself; and (2) whether Boggs repeatedly ignored Swonger's commands and appeared to be trying to escape.

Regarding the first discrepancy, Swonger testified that he shot Boggs when he saw Boggs lower his center of gravity and--"in one motion"--push Borden to the ground and reach behind his (Boggs's) back. J.A. 349. According to Swonger, when he fired at Boggs, Borden was "well on her way to the ground . . . below [Boggs's] waist level, on her way to the ground off to the side." J.A. 350-51.

In contrast, Borden testified that Boggs never pushed her and that she was standing in front of Boggs when Swonger shot him. Clearly, Borden did not need to see Boggs to know whether he pushed her down. But the district court deemed this dispute about whether Borden

was pushed immaterial, stating that "[w]hether Borden was pushed to the ground or whether she was still standing in front of Boggs, she still was not in a position to see what was visible to Swonger right before he discharged his weapon." *Littleton, 797 F. Supp. 2d at 656*.

Although Borden's testimony does not directly contradict Swonger's assertion that Boggs reached behind himself, her account conflicts with **[\*\*14]** the entirety of what Swonger allegedly saw Boggs do. Swonger had not received any information suggesting Boggs was armed, such as observing a bulge at Boggs's waistline. Moreover, Boggs had not verbally threatened Swonger. Rather, the threat Swonger perceived was based on Boggs's physical conduct--the motion of lowering his center of gravity, pushing Borden down, and reaching behind himself. Borden's testimony puts in dispute whether Boggs ever assumed this allegedly threatening posture.

Furthermore, the district court incorrectly discredited Borden's testimony about whether she was standing in front of Boggs. Specifically, the district court found that Borden's statement about "her position at the time the shot was fired [was] inconsistent with forensic evidence, which showed that Boggs was hit in the midline of his right chest. If, as she said, Borden was standing in front of Boggs, the likelihood is that she and not Boggs would have been hit." Id. The district court's assessment of Borden's testimony conflicts with the record. Borden testified that she was "standing partially in front of [Boggs]"--that her "right back was to his left chest"-- not that she was standing directly in front **[\*\*15]** of Boggs. J.A. 405. Furthermore, physical evidence supports Borden's version, i.e., that she was standing in front of Boggs when he was shot: his blood stained the back of her pants.

Second, Borden's testimony conflicts with Swonger's account of the events leading up to the shooting. The district court emphasized that, according to Swonger, **[\*277]** when he arrived he saw "two people engaged in a violent encounter." *Littleton, 797 F. Supp. 2d at 652*. When Boggs noticed Swonger, Boggs picked Borden up and attempted to drag her to a nearby car. Id. Swonger testified that he ordered Boggs to put Borden down and show his hands, but that Boggs ignored him and kept moving away. According to Borden, she and Boggs were standing and talking when Swonger got out of his car, and they did not move as Swonger approached. Even assuming that Swonger observed a tussle before he got out of his car, Borden's testimony calls into question whether Boggs repeatedly ignored Swonger's verbal commands and casts doubt on whether the atmosphere was volatile. Based on Borden's version, a jury reasonably could find that Boggs did not appear to be violent, resisting, or attempting to flee in the moments leading up to the **[\*\*16]** shooting.

In sum, the trial record reveals disputed facts material to whether a reasonable officer in Swonger's position would have perceived that Boggs posed a "threat of serious physical harm" justifying Swonger's use of deadly force. See *Elliott, 99 F.3d at 642*. Accordingly, we hold that the district court erred in granting summary judgment for Swonger.

IV.

Finally, we turn to the district court's grant of summary judgment for Prince George's County. Plaintiffs asserted that Prince George's County was liable for Swonger's alleged assault and battery (Count IV). Maryland counties are immune from claims seeking to impose liability for the intentional torts of county employees committed while the employee was acting within the scope of his employment. *Gray-Hopkins v. Prince George's Cnty., Md., 309 F.3d 224, 234 (4th Cir. 2002)*. Because Swonger was on duty and responding to dispatch at the time of the shooting, there is no question that he was acting within the scope of his employment as a Prince George's County police officer. Accordingly, we uphold the district court's determination that Prince George's County was immune from Plaintiffs' assault and battery claim.

Plaintiffs also alleged **[\*\*17]** that Prince George's County was liable for Swonger's use of excessive force in violation of the federal constitution under *Section 1983* (Count III). A county's liability under *Section 1983* is limited to constitutional violations caused by "official policy or custom." *Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003)* (citations omitted). Policy or custom can be

> written ordinances and regulations, . . . affirmative decisions of individual policymaking officials, . . . omissions on the part of policymaking officials that manifest deliberate indifference to the rights of citizens, . . . [and] practice[s] [] so persistent and widespread . . . as to

constitute a custom or usage with the force of law.

*Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)* (internal quotations and citations omitted). Similarly, Plaintiffs alleged that the Prince George's County was liable for negligent training and supervision (Count VI). Establishing a county's supervisory liability under *Section 1983* requires showing that the county had actual or constructive knowledge that a subordinate's conduct posed "a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff." *Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)* **[**18]** (internal quotations and citations omitted).

Here, Plaintiffs failed to offer any evidence of a county policy or custom, deficient training, or knowledge that Swonger engaged in conduct that posed a risk of constitutional injury. Rather, Plaintiffs merely made general assertions about Prince George's County's failure to train **[*278]** and supervise. See J.A. 85, 171. Accordingly, the district court did not err in granting summary judgment for Prince George's County on Plaintiffs' federal constitutional and negligent training claims.

In Count VIII, Plaintiffs asserted Prince George's County was liable for Swonger's alleged state constitutional violation under a theory of respondeat superior. Under Maryland law, governmental entities do not enjoy immunity from "respondeat superior liability for civil damages resulting from State Constitutional violations committed by their agents and employees within the scope of the employment." *DiPino v. Davis, 354 Md. 18, 729 A.2d 354, 372 (Md. 1999)*. Because we reverse the district court's grant of summary judgment for Swonger on Plaintiffs' state constitutional claim, we concordantly find that the district court erred in granting summary judgment for Prince George's County **[**19]** on this claim.

V.

Whether Plaintiffs will ultimately prevail upon retrial remains an open question. But at this stage of the legal process, the record indicates a genuine dispute exists regarding the reasonableness of Swonger's conduct. That dispute is for a jury to decide, not a trial court on summary judgment. Therefore, we hold that the district court erred in granting summary judgment in Swonger's favor and remand this case for a trial of Plaintiffs' excessive force and state law claims against Swonger and respondeat superior state constitutional claim against Prince George's County.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED