# Exhibit 15



**ALAN J. CILMAN, Plaintiff - Appellee, v. M.A. REEVES, Police Officer, Vienna Police Department, Defendant - Appellant, and THE TOWN OF VIENNA, VIRGINIA; DOES 1-10, employees of the Vienna Police Department, Defendants. ALAN J. CILMAN, Plaintiff - Appellant, v. M.A. REEVES, Police Officer, Vienna Police Department, Defendant - Appellee, and THE TOWN OF VIENNA, VIRGINIA; DOES 1-10, employees of the Vienna Police Department, Defendants.**

No. 09-1887, No. 09-1920

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

*452 Fed. Appx. 263*; *2011 U.S. App. LEXIS 22483*

**September 23, 2011, Argued
November 4, 2011, Decided**

**NOTICE:** PLEASE REFER TO *FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1* GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**SUBSEQUENT HISTORY:** US Supreme Court certiorari denied by *Cilman v. Reeves, 2012 U.S. LEXIS 3441 (U.S., May 14, 2012)*

**PRIOR HISTORY: [\*\*1]**
   Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. (1:06-cv-01099-GBL-JFA). Gerald Bruce Lee, District Judge.
*Cilman v. Reeves, 266 Fed. Appx. 270, 2008 U.S. App. LEXIS 3678 (4th Cir. Va., 2008)*

**DISPOSITION:** AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

**COUNSEL:** Julia Bougie Judkins, BANCROFT, MCGAVIN, HORVATH & JUDKINS, PC, Fairfax, Virginia, for M.A. Reeves.

Alan J. Cilman, Fairfax, Virginia, for Alan J. Cilman.

**JUDGES:** Before MOTZ, KEENAN, and DIAZ, Circuit Judges.

**OPINION**

   **[\*264]** PER CURIAM:

   Alan J. Cilman brought this suit against Officer M.A. Reeves and the Town of Vienna, Virginia alleging deprivation of his civil **[\*265]** rights in violation of *42 U.S.C. § 1983*, illegal search and seizure in violation of *Va. Code Ann. § 19.2-59*, and various state law torts. For the reasons set forth within, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I.

   On October 2, 2004, Cilman went to Neighbors Restaurant in Vienna, Virginia for dinner, drinks, and to watch a football game on television. Cilman arrived at Neighbors between 6:00 and 6:30 pm. Shortly after midnight, he left Neighbors and got into his car to drive home. Officer Reeves, who was patrolling an adjacent apartment complex, noticed Cilman's car progressing through the **[\*\*2]** parking lot at a "high rate of speed."

Officer Reeves proceeded to follow Cilman's car, suspecting that the driver could be driving under the influence of alcohol. Officer Reeves testified that he observed a number of infractions during his pursuit that he believed gave him probable cause to arrest Cilman for driving under the influence, including failing to stop at stop signs, failing to signal, driving down the middle of the road, and accelerating quickly in turns. After following Cilman for several blocks, Officer Reeves testified that he turned on his police lights, and soon also activated his sirens. Instead of pulling over, Cilman proceeded to drive the extra two blocks to his home. Cilman appeared to notice that he was being followed by police and accelerated as a result. According to Officer Reeves, Cilman was driving so quickly that his car "bottomed out" when Cilman turned into his driveway, causing sparks from contact with the pavement. Cilman testified that he noticed a vehicle following him purposefully but stated that Officer Reeves did not activate his lights until Cilman had already turned into his driveway.

Officer Reeves stopped in front of Cilman's driveway and got [**3] out of his police cruiser just as Cilman was briskly walking toward his front door. Officer Reeves told Cilman to stop and that he was under suspicion of driving under the influence. Cilman refused, telling the officer "this is my property, please leave." Cilman then entered the house and locked the door. Officer Reeves testified that Cilman's speech seemed slurred. Both Cilman and Officer Reeves agree that the officer did not tell Cilman he was under arrest at that time.

Officer Reeves called for backup and parked his car a few houses down the street to wait for other officers. When he heard the sirens of approaching police cars a few minutes later, Officer Reeves returned to Cilman's door. Officer Reeves testified that he banged on the door and asked Cilman to open up. Cilman testified that no conversation took place. Officer Reeves then kicked in Cilman's front door and placed him under arrest.

Officer Reeves ultimately arrested Cilman for being drunk in public and for evasion without force. The officer offered somewhat diverging explanations as to why he did not arrest Cilman for driving under the influence. At his deposition and in the police incident report, Officer Reeves stated [**4] that he did not do so because he lost sight of Cilman when Cilman entered his home and thus believed he could not arrest Cilman for driving under the influence. At trial, Officer Reeves testified that he planned to arrest Cilman for driving under the influence when he kicked in Cilman's door, but because Cilman said he had consumed alcohol while inside the house, Officer Reeves changed the charge, believing that drunk driving could not be proven under those circumstances.

[*266] All criminal charges against Cilman were ultimately dismissed. Cilman then filed this action against Officer Reeves and the Town of Vienna on five claims: deprivation of his civil rights in violation of *42 U.S.C. § 1983*, illegal search and seizure in violation of *Va. Code Ann. § 19.2-59*, malicious prosecution, false arrest, and gross negligence. Officer Reeves and Vienna moved for summary judgment. The district court denied the officer's motion but granted Vienna's. We affirmed the denial of Officer Reeves' motion and dismissed Cilman's cross-appeal as to Vienna as interlocutory. *Cilman v. Reeves, 266 Fed. Appx. 270 (4th Cir. 2008)*.

After remand, Cilman moved for summary judgment on all five claims against Officer Reeves. [**5] The district court granted Cilman's motion in part, ruling that the officer violated Cilman's clearly established *Fourth Amendment* rights when he kicked in Cilman's door without a warrant, and that, therefore, the officer was liable, as a matter of law, for violations of *§ 1983* and *Va. Code Ann. § 19.2-59*. The district court otherwise denied Cilman's motion for summary judgment. Cilman dropped the gross negligence claim before trial. Thus, only the state tort claims, and the issues of causation and damages for the constitutional and statutory violations went to trial.

At the conclusion of the trial, the jury found in favor of Officer Reeves on all issues. The jury awarded zero compensation and punitive damages to Cilman on his *§ 1983* and *Va. Code Ann. § 19.2-59* claims and found in favor of Officer Reeves on the malicious prosecution and false arrest claims. It also answered in the affirmative a special interrogatory asking, "Do you find: With respect to the false arrest and malicious prosecution [t]hat the defendant Officer Reeves acted in good faith and with a reasonable belief in the validity of the plaintiff's arrest." Following the jury's verdict, Officer Reeves moved to set aside [**6] the grant of summary judgment as to liability to Cilman on the constitutional and statutory claims, and to have judgment entered in the officer's favor on those claims. For his part, Cilman moved for a new trial. The

district court denied both motions.

On appeal, Officer Reeves challenges the grant of summary judgment in favor of Cilman as to liability on the constitutional and statutory claims, and the denial of his motion for a judgment as a matter of law on those claims. [1] Cilman cross-appeals the grant of summary judgment in favor of Vienna, the lack of clarifying language in a special interrogatory given to the jury, and the district court's refusal to give the jury one of Cilman's proposed instructions.

> 1  Although the jury awarded zero damages on these claims, Officer Reeves appeals the finding of liability because Virginia law provides that "[a]ny officer found guilty of a second offense under this section shall, upon conviction thereof, immediately forfeit his office." *Va. Code Ann. § 19.2-59*.

II.

We first address the district court's grant of summary judgment in favor of Cilman on liability for his *42 U.S.C. § 1983* and *Va. Code Ann. § 19.2-59* claims. We review de novo a district [**7] court's grant of summary judgment. *Pueschel v. Peters, 577 F.3d. 558, 563 (4th Cir. 2009)*. "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie, 526 U.S. 541, 552, 119 S. Ct. 1545, 143 L. Ed. 2d 731 (1999)* (internal quotation omitted). Although a warrantless entry of a home to effectuate an arrest is presumptively unlawful, *Payton v. New* [*267] *York, 445 U.S. 573, 586, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980)*, such an entry is permitted if an officer has a combination of probable cause and exigent circumstances. See *Payton, 445 U.S. at 583-90*.

In granting summary judgment as to liability in favor of Cilman on his constitutional and statutory claims, the district court relied principally on *Welsh v. Wisconsin, 466 U.S. 740, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984)*. The court concluded that, in Welsh, "[t]he Supreme Court has held that police may not make a warrantless entry into a home to make an arrest for DUI," and that "suspicion of drunk behavior cannot, as a matter of constitutional law, create an emergency that justifies warrantless entry." In so holding, the district court erred. [2]

> 2  Our prior affirmance of the denial of summary judgment on qualified immunity [**8] grounds to Officer Reeves is not at odds with this holding. Then, a material dispute of fact as to whether Cilman's driving was sufficiently erratic so as to warrant his arrest precluded a grant of summary judgment to Officer Reeves. Indeed, the district court itself noted that "a genuine issue of material fact" prevented the grant of summary judgment. To be sure, the court also denied the motion because it believed that Welsh compelled a ruling that a warrantless entry into a suspect's home to make an arrest for a non-violent traffic offense always constitutes a clearly established *Fourth Amendment* violation. Our affirmance, in two paragraphs, "for the reasons stated by the district court" does not, however, signal wholesale adoption of the entire rationale offered by the district court, particularly when that rationale was at odds with the court's holding that a genuine issue of material fact prevented the grant of summary judgment. When Cilman later moved for summary judgment, this same factual dispute required the court to deny that motion.

Contrary to the district court's contention, Welsh does not establish a categorical rule that police may never make a warrantless entry into [**9] a home to effect an arrest for driving under the influence. The Welsh Court held only that, because Wisconsin treated a DUI as a civil non-jailable offense for which the maximum penalty was a fine of $200, no exigent circumstances justified the warrantless entry at issue there. *Welsh, 466 U.S. at 753-54*. The Court emphasized that "the penalty that may attach to any particular offense seems to provide the clearest and most consistent indication of the State's interest in arresting individuals suspected of committing that offense." *Welsh, 466 U.S. at 754 n.14*; see also *id. at 754* ("[The penalty] is the best indication of the State's interest in precipitating an arrest.").

Unlike the Wisconsin law at issue in *Welsh*, driving under the influence in Virginia is a Class 1 misdemeanor punishable by up to a year in jail and a $2500 fine. *Va. Code Ann. § 18.2-270(A)*; id. *§ 18.2-11*. A conviction may also result in a one-year driver's license suspension, id. *§ 18.2-271*, and require the offender to complete a mandatory alcohol safety action program. Id. *§ 18.2-271.1*. If the blood alcohol level is determined to be above .15, Virginia law imposes a five day mandatory jail

term. Id. *§ 18.2-270(A)(i)*. [**10] ³

> 3   Cilman argues that Officer Reeves only arrested him for the lesser charge of being "drunk in public," a Class 4 misdemeanor for which the penalty is a fine of no more than $250, and thus Officer Reeves did not think he had committed a serious crime. This argument does not help Cilman because in assessing Officer Reeves' acts we consider not his subjective beliefs but whether his acts were objectively reasonable. See *Whren v. United States, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996)*. Viewed objectively, Reeves had probable cause to arrest Cilman for driving under the influence. Virginia law does not require that a person be within an officer's view at all times prior to an arrest for driving under the influence; nor does imbibing alcohol in one's home save a wrongdoer from a DUI conviction. Instead, Virginia law provides that an officer may arrest a person "whether or not the offense was committed in such officer's presence." *Va. Code Ann. § 19.2-81(D)*; see also *Cutright v. Commonwealth, 43 Va. App. 593, 601 S.E.2d 1, 3 (Va. Ct. App. 2004)* (noting that a police officer's observations can support a DUI conviction even in the absence of a blood alcohol test).

[*268] Although the Supreme Court later observed that "Welsh drew [**11] a distinction between jailable and nonjailable offenses, not between felony and misdemeanor offenses," *Illinois v. McArthur, 531 U.S. 326, 335-36, 121 S. Ct. 946, 148 L. Ed. 2d 838 (2001)*, in Welsh itself, the Court left open the possibility that the *Fourth Amendment* could impose a wholesale ban on warrantless home arrests for minor offenses. *Welsh, 466 U.S. at 749 n.11* ("Because we conclude that, in the circumstances presented by this case, there were no exigent circumstances sufficient to justify a warrantless home entry, we have no occasion to consider whether the *Fourth Amendment* may impose an absolute ban on warrantless home arrests for certain minor offenses."). We need not here determine the exact parameters of the rule set forth in Welsh because even if Officer Reeves did violate Cilman's *Fourth Amendment* rights, those rights were not "clearly established."

No controlling Supreme Court or Fourth Circuit precedent speaks to a person's right to be free from a warrantless entry into his home in circumstances like those in the case at hand. Numerous out-of-circuit cases do address this issue, but courts have divided on this question. Some hold that commission of a misdemeanor drunk driving offense subject to a possible [**12] jail term does not justify a warrantless home arrest. *Hopkins v. Bonvicino, 573 F.3d 752 (9th Cir. 2009)*; *Patzner v. Burkett, 779 F.2d 1363 (8th Cir. 1985)*; *State v. Saale, 2009 MT 95, 350 Mont. 64, 204 P.3d 1220 (Mont. 2009)*; *Norris v. State, 338 Ark. 397, 993 S.W.2d 918 (Ark. 1999)*; *State v. Flegel, 485 N.W.2d 210 (S.D. 1992)*. Others, however, hold to the contrary. See, e.g., *People v. Thompson, 38 Cal. 4th 811, 43 Cal. Rptr. 3d 750, 135 P.3d 3 (Cal. 2006)*; *City of Middletown v. Flinchum, 95 Ohio St. 3d 43, 2002 Ohio 1625, 765 N.E.2d 330 (Ohio 2002)*; *State v. Legg, 633 N.W.2d 763 (Iowa 2001)*; *State v. Paul, 548 N.W.2d 260 (Minn. 1996)*; *Cherry v. Commonwealth, 44 Va. App. 347, 605 S.E.2d 297, 306 (Va. App. 2004)*; *Stark v. New York State Dep't of Motor Vehicles, 104 A.D.2d 194, 196, 483 N.Y.S.2d 824 (N.Y. App. 1984)*. In light of the divergence in these holdings, we can only conclude that Officer Reeves was entitled to qualified immunity. See *Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)* ("[I]f officers of reasonable competence could disagree on [the] issue, immunity should be recognized."). Accordingly, the district court erred in granting summary judgment to Cilman on liability as to the *§ 1983* and *Va. Code Ann. § 19.2-59* claims. ⁴

> 4   Although Virginia law does not recognize qualified immunity, the district court also erred in granting [**13] partial summary judgment on Cilman's *Va. Code Ann. § 19.2-59* claim. See *Burnham v. West, 681 F. Supp. 1169 (E.D. Va. 1988)*. Under Virginia's sovereign immunity doctrine, a police officer performing discretionary functions is entitled to sovereign immunity if he did not commit "gross negligence." *Colby v. Boyden, 241 Va. 125, 400 S.E.2d 184, 186, 7 Va. Law Rep. 1368 (Va. 1991)*. "[G]ross negligence is the 'absence of slight diligence, or the want of even scant care.'" *Id. at 189* (quoting *Frazier v. City of Norfolk, 234 Va. 388, 362 S.E.2d 688, 691, 4 Va. Law Rep. 1220 (Va. 1987))*. Given the division in authority as to whether a warrantless entry in to the home is lawful under the circumstances of this case, Officer Reeves could not be found grossly negligent in presuming his actions were lawful. This is perhaps why Cilman dropped his gross negligence claims before trial.

[*269] III.

Next, we consider whether the district court erred in denying Officer Reeves' post-trial motion to enter final judgment as a matter of law in his favor on liability as to the *§ 1983* and *Va. Code Ann. § 19.2-59* claims.

A trial court must enter a final judgment as a matter of law if "there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).* [**14] Judgment as a matter of law is appropriate if there is not "sufficient disagreement to require submission to a jury" and the evidence "is so one-sided that one party must prevail as a matter of law." *Id. at 251-52*.

In this case, although the jury's verdict did not specifically address liability as to the constitutional and statutory claims, it did sufficiently resolve the disputed facts in favor of Officer Reeves. For the jury not only rejected Cilman's false arrest and malicious prosecution claims; it also expressly answered in the affirmative a special interrogatory that asked, "Do you find: With respect to the false arrest and malicious prosecution [t]hat the defendant Reeves acted in good faith and with a reasonable belief in the validity of the plaintiff's arrest." The only reasonable conclusion from this verdict is that the jury concluded that Cilman did drive erratically, justifying Officer Reeves' subsequent arrest of Cilman.

Cilman objects strenuously to the application of the special interrogatory to the constitutional and statutory claims, and argues that the special interrogatory was limited to the false arrest and malicious prosecution claims. Although he is correct that [**15] the special interrogatory included limiting language, the state tort claims and deprivation of constitutional and statutory rights claims all arise out of the same set of facts. Given that the jury in this case determined that Officer Reeves acted in good faith and with a reasonable belief in the validity of the arrest for the purposes of Cilman's state tort claims, a subsequent jury could not conclude that Cilman obeyed all traffic signals and displayed no drunk behavior for the purpose of the constitutional and statutory claims. Returning this case for a second jury trial would be futile in light of the jury verdict in this case. Therefore, Officer Reeves was entitled to judgment as a matter of law on the constitutional and statutory claims.

IV.

We now turn to Cilman's cross-appeal.

A.

Cilman initially appeals the district court's grant of summary judgment to Vienna. Unlike Officer Reeves, Vienna is not entitled to qualified immunity based upon the good faith actions of its employees, see *Owen v. City of Independence, 445 U.S. 622, 638, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980)*, and so we must determine whether, in this circumstance, Vienna should be held liable for the actions of Officer Reeves.

Three elements establish [**16] supervisory liability under *§ 1983*:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that [*270] there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)*.

Even assuming that Vienna failed to train Officer Reeves, Cilman must show that the failure to train was the result of a "deliberate indifference" on the part of the city. See *Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000)*. As in Broderick, "[t]here is simply nothing in the record to suggest that [Vienna's] lack of instruction of its officers . . . was the result of an affirmative, conscious decision." Id.

Cilman argues that the police department had not adequately responded to past complaints involving searches and seizures, had not disciplined its officers for *Fourth Amendment* [**17] violations, and even affirmatively instructed officers to violate the *Fourth Amendment*. But, to support this contention, Cilman offered only isolated and unconnected incident reports and complaints. Even if we agreed that these incidents show violations of the *Fourth Amendment*, we have

previously held that such "isolated, unprecedented incidents" do not suffice to create municipal liability. *Id. at 456*.

Nor do we find persuasive Cilman's contention that Vienna "ratified" and "aid[ed] and abet[ed]" Officer Reeves' misconduct by filing "specious" new charges "to help cover or lessen Reeves' misconduct." Because Cilman did not raise this argument in the district court, it is waived. Moreover, Cilman points to no official policy or custom maintained by Vienna that mandates or condones conduct in violation of the *Fourth Amendment*. See *Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)*. We agree with the district court that Cilman has not "set forth sufficient facts to establish that the supervising officials had knowledge, actual or constructive, that Town of Vienna police officers were engaged in conduct that . . . posed a pervasive and unreasonable risk of constitutional injury **[**18]** to citizens like the plaintiff."

B.

Cilman also maintains that the district court made two trial errors.

First, he contends that the district court erred in not clarifying that the special interrogatory applied only to the false arrest claim and not to the constitutional and statutory claims. This argument is meritless. In fact, the district court did include the clarifying language that Cilman requested. The special interrogatory reads in its entirety: "Do you find: With respect to the false arrest and malicious prosecution [t]hat the defendant Reeves acted in good faith and with a reasonable belief in the validity of the plaintiff's arrest." Of course, as explained above, this clarifying language does not preclude the conclusion that Officer Reeves had probable cause to arrest Cilman for driving under the influence for the purpose of the constitutional and statutory claims.

Second, Cilman contends that the district court erred in refusing to give the jury Instruction Q, which reads: "Reeves must show by a preponderance of the evidence that at the time he arrested plaintiff Alan Cilman he had probable cause for each element of the offense." Instead, the trial court instructed the jury **[**19]** as follows: "Probable cause to institute criminal proceedings against the plaintiff existed if the facts and circumstances known to defendant and on which he acted were such that a reasonable and prudent man acting on the same facts and circumstances would have believed the plaintiff guilty."

**[*271]** We review challenges to jury instructions for abuse of discretion. *Nelson v. Green Ford, Inc., 788 F.2d 205, 208 (4th Cir. 1986)*. When considering an objection to jury instructions, we determine if the jury instructions, taken as a whole, fairly state controlling law. *Barber v. Whirlpool Corp., 34 F.3d 1268, 1279 (4th Cir. 1994)*.

The district court's instruction fairly stated controlling law; indeed, it is almost verbatim the definition of probable cause used by the Supreme Court of Virginia. See *Stamathis v. Flying J, Inc., 389 F.3d 429, 437 (4th Cir. 2004)* ("Under Virginia law, 'probable cause is defined as knowledge of such facts and circumstances to raise the belief in a reasonable mind, acting on those facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected.'" (quoting *Stanley v. Webber, 260 Va. 90, 96, 531 S.E.2d 311 (2000)))*. Therefore, the district court did not err in **[**20]** refusing to give Cilman's instruction.

V.

For the foregoing reasons, we reverse the district court's partial grant of summary judgment in favor of Cilman as to liability on his *42 U.S.C. § 1983* and *Va. Code Ann. § 19.2-59* claims, and we remand to the district court to enter final judgment as a matter of law in favor of Officer Reeves on these claims. We affirm the district court's grant of summary judgment in favor of Vienna. Finally, we reject Cilman's remaining cross-appeal contentions.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED