# Exhibit 16



**AMANDA DEANNE SMITH, Plaintiff - Appellant, v. R. R. RAY, Officer; UNKNOWN UNIFORMED CITY OF VIRGINIA BEACH POLICE OFFICER; CITY OF VIRGINIA BEACH; ARMAND RUBBO, Sergeant; JARVIS LYNCH, Sergeant; SCOTT STEIN, Officer; JAY KEATLEY, MPO; JOHNNY MONTS, MPO; JAMES HEWLETT, MPO; TONY F. BULLARD, Defendants - Appellees.**

No. 09-1518

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

*409 Fed. Appx. 641*; *2011 U.S. App. LEXIS 2191*

**October 26, 2010, Argued
February 2, 2011, Decided**

**NOTICE:** PLEASE REFER TO *FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1* GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**SUBSEQUENT HISTORY:** Magistrate's recommendation at *Smith v. Ray, 2011 U.S. Dist. LEXIS 116909 (E.D. Va., Sept. 13, 2011)*

**PRIOR HISTORY:** [**1]
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. (2:08-cv-00281-RBS-JEB). Rebecca Beach Smith, District Judge.
*Smith v. Ray, 2009 U.S. Dist. LEXIS 29419 (E.D. Va., Apr. 7, 2009)*

**DISPOSITION:** REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.

**COUNSEL:** ARGUED: Darren Marshall Hart, HART & ASSOCIATES, PC, Richmond, Virginia, for Appellant.

Christopher Scott Boynton, OFFICE OF THE CITY ATTORNEY, Virginia Beach, Virginia; James Arthur Cales, III, FURNISS, DAVIS, RASHKIND & SAUNDERS, Norfolk, Virginia, for Appellees.

ON BRIEF: Thomas W. Ashton, HART & ASSOCIATES, PC, Richmond, Virginia, for Appellant.

Mark D. Stiles, Michael A. Beverly, OFFICE OF THE CITY ATTORNEY, Virginia Beach, Virginia, for Appellees.

**JUDGES:** Before TRAXLER, Chief Judge, GREGORY, Circuit Judge, and HAMILTON, Senior Circuit Judge.

**OPINION**

 [*643] GREGORY, Circuit Judge:

 This appeal was taken by Amanda Smith, the plaintiff-appellant, following the grant of summary judgment by the district court in favor of Robert Ray, Armand Rubbo, Jarvis Lynch, Scott Stein, Jay Keatley, Johnny Monts, and James Hewlett, all law enforcement officers for the Virginia Beach Police Department, and the City of Virginia Beach, the defendant-appellees (hereinafter, collectively, "Defendants"). Smith filed two separate, [**2] but closely related complaints containing *42 U.S.C. § 1983* and state tort law claims against overlapping groups of the above named Defendants as well as against Tony Bullard, a private citizen. On appeal, we must determine (1) whether the district court erred in "merging" these cases and dismissing the first complaint

following the consolidation of the cases; (2) whether the court erred in granting summary judgment as to the *§ 1983* claims contained within Smith's second complaint; and (3) whether the court erred when, after dismissing the federal claims contained within the second complaint, it declined to retain jurisdiction over the outstanding state law claims.

As explained below, we agree that the court erred in merging the two cases. On remand, we direct the court to revive the first complaint and the claims therein for further proceedings consistent with this opinion. However, we affirm the grant of summary judgment as to those federal claims contained within the second complaint. We also find that the court acted within its discretion as to its treatment of the state law claims from the second complaint.

I.

A.

"We review de novo a district court's denial of summary judgment, construing **[\*\*3]** all facts and reasonable inferences in the light most favorable to the nonmovant." *Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008)*; see also *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. We therefore present the following recitation of facts in the manner most favorable to Smith.

On the afternoon of September 21, 2006, Ray, a uniformed police officer for the City of Virginia Beach, arrived at a home on Adler Avenue to assist Bullard, a private citizen, with finding T., Bullard's missing juvenile stepson. Bullard believed that T. was staying at the Adler Avenue home, but was told by its residents that T. was now at another house.

Arriving at the second address, Ray and Bullard looked through a window and saw several young men standing together inside the house. Bullard tentatively identified one of the men as his stepson. Ray knocked on the door of the residence, and heard "scurrying" sounds coming from inside. Smith opened the door, and exited the house after being instructed to do so by Ray.

Ray asked Smith for her name and age, and whether she was the homeowner. Smith gave the officer her first name, her age, then twenty-two, and explained that she was **[\*\*4]** a guest. Ray then asked Smith if T. was inside the house, and Smith answered that T. was not there. [1] Ray next **[\*644]** asked for "Joel," an adult acquaintance of T. Smith said that Joel was there, and told Ray to "Hold on." As Smith turned away and opened the screen door, Ray reached across her and shut it. Ray's sudden movement startled Smith, and she took a small step away from the house.

> 1  Both Ray and Bullard claim that, throughout the encounter, Smith appeared unfocused and intoxicated. Smith denies being inebriated or otherwise unresponsive. No drug or alcohol tests were ever performed on Smith.

Ray -- allegedly concerned that Smith was attempting to flee -- grabbed her arm, and Smith struggled to get out of his grip. A pocketknife fell onto the ground from her sweatshirt, and Bullard kicked it away. Bullard, hoping to further assist Ray, then kicked Smith's legs out from under her. Smith fell onto her stomach, and Ray landed atop her back. Although Smith admits to screaming profanities while attempting to get up, she denies ever striking out at the officer.

Ray then punched Smith three times on the right side of her body. Soon, Officer Keatley arrived on the scene, and assisted Ray with handcuffing **[\*\*5]** Smith. Smith alleges that Ray then brought her to her feet by grabbing her by the ponytail with enough force to tear hair from her scalp.

Smith was then brought to Ray's police car, and searched by him. While searching Smith, Ray asked whether she had any weapons, and Smith admitted that she had a pocketknife. Unable to find the pocketknife on her person, Ray walked back towards the house to search for it. While Ray was looking for the pocketknife, Smith was again searched by another police officer. [2] Smith alleges that this second officer inappropriately touched her breasts and penetrated her genitalia. Smith screamed for help, but no one responded to her pleas. Upon finding the knife, Ray returned to Smith.

> 2  During an interview as a part of an internal police investigation into the incident, Bullard also admitted that he saw a second officer search Smith.

The other officers, Hewlett, Monts, Stein, Rubbo, and Lynch, all arrived at the scene after Smith was in handcuffs.

Ray then drove Smith to the police precinct. Ray told Smith that she was under arrest for obstruction of justice, and unlawfully carrying a concealed weapon. Smith was brought before a magistrate judge, and charged with [**6] carrying a concealed weapon. However, Smith was ultimately found not guilty of that charge.

B.

On May 23, 2008, Smith filed a lawsuit in Virginia state court against Ray and an Unknown Uniformed City of Virginia Beach Police Officer (hereinafter the "Unknown Officer"), who Smith now believes to have been Keatley. Within her complaint were *§ 1983* claims for the alleged violation of her rights under the *Fourth*, *Fifth* and *Fourteenth Amendments*, as well as state tort claims. On June 18, Ray filed his answer and successfully moved for the removal of the case to the United States District Court for the Eastern District of Virginia, where it was assigned number 2:08cv281 (hereinafter, the "281 case" or "281 Complaint").

On September 22, 2008, Smith filed a second complaint in the district court, thereby initiating another and ostensibly separate lawsuit, which was assigned case number 2:08cv449 (hereinafter, the "449 case" or "449 Complaint"). This second complaint contained allegations that the City of Virginia Beach, and those officers present during the incident were all liable for failing to act so as to prevent the violation of Smith's constitutional rights by Ray and the Unknown Officer. [**7] Specifically, the 449 Complaint included theories of bystander, supervisor and municipal liability arising under *§ 1983*. It also contained state tort claims against Bullard.

 [*645] On September 30, 2008, Smith filed and then withdrew an Amended Complaint in the 281 case. The same day, she filed an Amended Complaint in the 449 case ("First Amended 449 Complaint"). None of the claims asserted in the 281 case were mentioned in the First Amended 449 Complaint.

On October 29, 2008, upon a motion from Smith, the district court consolidated cases 281 and 449. In its consolidation order, the court informed the parties that:

> Counsel's future docket entries are to be made ONLY in the LEAD CASE, Case No. 2:08cv281. COUNSEL'S FUTURE DOCKET ENTRIES are NOT to be "spread" to this member case.

J.A. 23. In an effort to comply with this direction, on November 18, 2008, Smith filed the Second Amended 449 Complaint on the 281 docket. That same day, Defendants filed a Motion to Dismiss in response to the First Amended 449 Complaint. J.A. 151, 155. However, by agreed order, the Motion was later deemed filed in response to the Second Amended 449 Complaint. The next day, the court ordered the Second Amended 449 Complaint [**8] stricken from the record because, according to the court, it should have been "designated as case number 2:08cv281." J.A. 192, n.1.

On November 20, 2008, Smith moved for leave to file her Second Amended 449 Complaint, which contained no references to the original claims against Ray or the Unknown Officer. On December 10, 2008, the district court granted an Agreed Order asking that the Second Amended Complaint be deemed filed in the consolidated case. Three days later, on December 12, the court dismissed the 449 case without prejudice:

> Pursuant to this agreed order plaintiff's Second Amended Complaint was filed. As such the plaintiff's Second Amended Complaint is the operative document for purposes of these consolidated cases, and the court will treat it as the sole active complaint in this matter.

J.A. 334. By designating the Second Amended 449 Complaint the sole operative pleading, the court effectively supplanted the 281 Complaint, and "merged" the two cases into one. Smith moved the district court to reconsider its order, but the court denied her motion. Similarly, the court denied a motion for relief filed by Smith pursuant to *Federal Rule of Civil Procedure 60(b)*.

The parties later [**9] filed opposing motions for summary judgment. On February 13, 2009, a magistrate judge recommended, after analyzing only those claims found within the Second Amended 449 Complaint, that Defendants' motion for summary judgment be granted, and that the court decline jurisdiction over Smith's state law claims. The district court wholly adopted the magistrate judge's recommendations. Smith thereafter filed a timely appeal to this Court.

II.

Smith challenges the district court's denial of her motion for leave to amend, the denial of her *Rule 60(b)* motion and the denial of her motion for reconsideration of the court's December 12, 2008 order, whereby the court concluded that the Second Amended 449 Complaint was the "sole active complaint." J.A. 355. The abuse of discretion standard governs appellate review for all of these motions. See *Nourison, 535 F.3d at 298* ("leave to amend is reviewed for abuse of discretion"); *United States v. Holland, 214 F.3d 523, 527 (4th Cir. 2000)* ("When a motion for reconsideration is appealed, the standard of review is abuse of discretion."); *Heyman v. M.L. Marketing Co., 116 F.3d 91, 94 (4th Cir. 1997)* ("We review denials of *Rule 60(b)* motions for an abuse of [**10] discretion.").

 [*646] The district court abused its discretion when it sua sponte dismissed the 281 Complaint. "Although consolidation is permitted as a matter of convenience and economy in administration, it . . . does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Intown Properties Management, Inc. v. Wheaton Van Lines, Inc., 271 F.3d 164, 168 (4th Cir. 2001)* (citing *Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496-97, 53 S. Ct. 721, 77 L. Ed. 1331 (1933))*. Indeed, in granting the motion for consolidation, the court correctly noted that it was consolidating the cases for "any and all hearings and for trial under case 2:08cv281," but not for the purpose of combining the pleadings. J.A. 8. Therefore, the original 281 Complaint remains active, and was not amended or otherwise superseded by the Second Amended 449 Complaint.

Accordingly, the court also erred in denying Smith's other requests for relief. We therefore reverse the district court, revive the 281 complaint -- as well as the *§ 1983* and state tort claims against Ray and the Unknown Officer contained therein --and remand for further proceedings below.

III.

Smith appeals the district [**11] court's grant of summary judgment in favor of Defendants as to the *§ 1983* claims for bystander, supervisor, and municipal liability within the Second Amended 449 Complaint. We address each of these claims in separate sections below, and we affirm the decision of the district court. Because we find that Smith's indirect *§ 1983* liability claims fail, we will not discuss qualified immunity.

A.

We first address the bystander liability claims against Defendants Hewlett, Lynch, Stein, Keatley, Monts, Ray, and Rubbo. When considering a motion for summary judgment, "[i]t is not our job to weigh the evidence, to count how many affidavits favor the plaintiff and how many oppose him, or to disregard stories that seem hard to believe. Those tasks are for the jury . . . . [A] court should consider only whether there is a genuine issue for trial." *Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991)* (citing *Anderson, 477 U.S. at 249-50*). However, even upon viewing the evidence in the most favorable light, Smith has failed to demonstrate that a reasonable juror could find any defendant liable for failing to prevent the alleged violations of her constitutional rights.

Under the theory of bystander liability, [**12] an officer may be liable only if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's County, 302 F.3d 188, 204 (4th Cir. 2002)*. Given these guidelines, we must first decide whether there was any constitutional violation as to each of the three incidents identified by Smith: (1) the initial seizure, (2) the use of excessive force, and (3) the sexual assault. We therefore separately review these allegations, and the adequacy of her bystander liability claims as to each.

i.

First, we find that Smith's constitutional rights were not violated when she was stopped and detained by Ray on the front doorstep of the home where she was an overnight guest. Absent exigent circumstances, "[i]t is a 'basic principle of *Fourth Amendment* law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York, 445 U.S. 573, 586-90, 100 S. Ct.* [*647] *1371, 63 L. Ed. 2d 639 (1980)*. The standard for warrantless seizure within a home is different from the one necessary for a stop in a public space, *id. at 587*, and the curtilage of a home, including the [**13] front doorway, is "entitled to the same level of *Fourth Amendment* protection extended to the home, so that, as with the home, probable cause, and not reasonable suspicion, is the appropriate standard for searches of [or seizures within] the curtilage." *Rogers v. Pendleton, 249 F.3d 279, 287 (4th Cir. 2001)*. As an overnight guest, Smith was entitled to nearly the same *Fourth Amendment* protections afforded the resident of

the house. *Minnesota v. Olson, 495 U.S. 91, 98-100, 110 S. Ct. 1684, 109 L. Ed. 2d 85 (1990)* ("[T]he overnight guest[] . . . seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside.").

Here, we need not address the level of protection Smith was entitled to as a guest seized within the curtilage of a home. This is because even assuming Smith were to be afforded the full measure of *Fourth Amendment* protections, exigent circumstances, specifically, the need to confirm the whereabouts of a runaway child, would still have permitted Ray to stop or "seize" her for further questioning. See, e.g., *United States v. Taylor, 624 F.3d 626, 631-32 (4th Cir. 2010)* (where an officer's [**14] concern for the safety of a child provided him with sufficient exigent circumstances to justify the warrantless intrusion into a home); *Hunsberger v. Wood, 570 F.3d 546, 555-57 (4th Cir. 2009)* (a reasonable officer could conclude that exigencies excused the warrantless search of a home in order to locate a missing girl).

Although we must view the facts in the light most favorable to Smith, we must also review the legitimacy of the seizure from the perspective of a reasonable officer in Ray's position. See *Taylor, 624 F.3d at 631* ("An officer may enter the home if 'the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the *Fourth Amendment*.'" (quoting *Mincey v. Arizona, 437 U.S. 385, 394, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978))).* Ray maintains that he stopped Smith from reentering the home because she was uncooperative, appeared to be intoxicated, had a concealed weapon, seemed evasive, and was contributing to the delinquency of a minor. We therefore address each of these bases for the stop.

The encounter began voluntarily as Smith opened the door of the home to the officer and forthrightly answered all of his questions. In response [**15] to a question about Joel, Smith told the officer to "Hold on," and turned to go back into the residence, ostensibly to retrieve Joel. Smith acted in a manner consistent with her intentions to assist Ray with his investigation. Cf. *Florida v. Bostick, 501 U.S. 429, 437, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991)* ("We have consistently held that a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure."). At the moment Ray moved to prevent Smith from reentering the house, he also had no reason to suspect that Smith was in possession of a weapon. Indeed, he did not become aware of the "weapon," a pocketknife, until after Smith was handcuffed. [3] [*648] We also take as true Smith's contention that she was coherent and not intoxicated when she encountered Ray.

> 3    Smith maintains that her pocketknife did not fall within the statutory definition of a weapon. Appellant's Br. at 32-33. However, because we take as true Smith's contentions that Ray was not aware of the instrument until after her seizure, this distinction is irrelevant.

However, a reasonable officer still would have had a basis for suspecting that Smith was contributing to the "delinquency of a minor." [**16] [4] Bullard had identified T. as one of the young men in the window of the house. [5] A reasonable officer therefore would have had some cause for suspecting that a missing child was being harbored within the house. It does not matter that Bullard later turned out to have been mistaken. In light of this information, Smith's statements denying that the child was present, her sudden turn back towards the home, and her attempts to step away from Ray during his questioning could have led a reasonable officer to believe that Smith sought to unlawfully conceal T. from his concerned stepfather. See *Code of Virginia § 16.1-228(5)* (defining an "abused or neglected child" as any child "without parental care or guardianship caused by the unreasonable absence . . . of the child's parent, guardian, legal custodian, or other person standing in loco parentis"). Viewed objectively, these facts presented the exigent circumstances necessary to justify the warrantless stop of Smith. Thus, because the stop was constitutional, no Defendant was under any obligation to prevent it.

> 4    The crime of contributing to the delinquency of a minor is defined under *Code of Virginia § 18.2-371* as follows:
>
>> Any person 18 years [**17] of age or older . . . who . . . willfully or contributes to, encourages, or causes any act, omission, or condition which renders a child delinquent . . . as defined in *[Code of Virginia] § 16.1-228* . . . shall be guilty of a class 1 misdemeanor.

5   We also note that Ray did not illegally "search" the home when he entered the property and peered through the window. "[A] law enforcement officer's observations from a public vantage point where he has a right to be and from which the activities or objects he observes are clearly visible do not constitute a search within the meaning of the *Fourth Amendment*." *United States v. Taylor, 90 F.3d 903, 908 (4th Cir. 1996)* (citations and quotations omitted). Because Ray peered through an un-obscured window to observe the home's interior, there was no *Fourth Amendment* violation. See *Katz v. United States, 389 U.S. 347, 351, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)* ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of *Fourth Amendment* protection.").

ii.

Next, we find that while Ray may be liable for the use of excessive force against Smith -- because none of the other defendants had any opportunity to intervene on her behalf, her bystander **[**18]** liability claims again must fail.

While we find that the detention of Smith was constitutional, the *Fourth Amendment* also bars police from using excessive force during the course of a lawful seizure. *Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003)*. In order to determine whether the force used by Ray was excessive, we must look objectively as to whether a reasonable officer on the scene would have used the same measure of force. *Rowland v. Perry, 41 F.3d 167, 173 (4th Cir. 1994)*. We must examine the totality of the circumstances from the perspective of a reasonable officer at the time of the altercation, *Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)*; including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officer or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight, *Jones, 325 F.3d at 527-28*. We must then decide whether these circumstances justified the level of force used. *Id. at 396*.

[*649] On summary judgment, where there is a dispute as to the underlying facts of the case, the courts are bound to accept as true the version of the facts as presented by the non-movant, Smith, not **[**19]** as alleged by the officer, Ray. *Rowland, 41 F.3d at 174*. It is particularly important to remember these distinctions where, as here, there are conflicting accounts concerning what the officer actually perceived with respect to the suspect. *Gooden v. Howard County, Md., 954 F.2d 960, 965-66 (4th Cir. 1992)* (en banc). We therefore find that in its summary judgment order, which was adopted in total from a report issued by the magistrate judge, the district court incorrectly looked only to the facts as alleged by Ray in his affidavit.

Upon proper review of the situation leading up to the altercation, a reasonable juror could find that Ray used an excessive amount of force in the seizure. Smith was not suspected of committing a violent crime. Ray had no reason to believe that T. -- while a missing child -- was under any immediate threat of physical harm. From his perspective, Ray had, only moments before, seen the child standing before a window, unharmed and unrestricted, with other youths. Outside of the understandable general worry about the exact whereabouts of T., Bullard also never expressed any grave concern about his stepson's safety.

According to Smith, Ray was also not aware of the **[**20]** presence of any possible weapon until after Smith was in handcuffs. Smith further claims that she offered only minimal resistance when the officer initially grabbed her arm. In response, Ray tried to grab Smith, and sought Bullard's help in tripping her. Smith was brought face down to the ground, and incapacitated by the full weight of Ray atop her. It was at that moment that Ray punched Smith in the side several times. Smith denies ever striking out at or struggling with Ray while on the ground. Ray then handcuffed and purportedly pulled Smith up from the ground by her hair. Reviewing the totality of the circumstances, we believe that a reasonable jury could find that the amount of force used by Ray to subdue Smith was excessive in violation of the *Fourth Amendment*.

We nonetheless agree with the reasoning of the district court and magistrate judge as to the insufficiency of the bystander liability claims. Keatley was the only officer present at the time of the altercation. However, Smith admits that Keatley did not arrive until she was being handcuffed, and picked up from the ground. Thus, Keatley would not have been present to witness the use of excessive force. None of the other **[**21]** officers,

Rubbo, Lynch, Stein, Monts and Hewlett, were present for any part of the altercation. We therefore affirm the grant of summary judgment as to Keatley, Rubbo, Lynch, Stein, Monts and Hewlett.

iii.

Finally, while Smith has demonstrated that a reasonable juror could find that she was sexually assaulted by the Unknown Officer, she cannot show that Defendants were aware of the alleged assault. Thus, we cannot find any Defendant liable as a "bystander."

A sexual assault by a police officer clearly violates the security interests protected by the *Fourth Amendment*. *Fontana v. Haskin, 262 F.3d 871, 880 (9th Cir. 2001)*. We must take as true the allegations by Smith that such an assault occurred at the hands of the Unknown Officer. We further note that Bullard's statement that he witnessed a second officer search Smith lends additional support to her allegations.

We also accept as true Smith's contention that she called for help during the assault. Ray, Hewlett, Monts, Rubbo, and **[*650]** Lynch all admit to being present at the scene. They also agree that Smith was heard shouting. However, there is no indication that these Defendants heard her screams as intelligible calls for help. Nor is there **[**22]** any suggestion that the officers deliberately chose not to assist Smith. We therefore agree with the district court, and affirm the dismissal of the *§ 1983* bystander liability claims against Ray, Hewlett, Monts, Rubbo, and Lynch.

In the absence of any evidence that Stein was even present at the time of the assault, the claim against him also fails.

B.

Smith similarly does not present any genuine issues of material fact as to her supervisory liability claims against Rubbo. In *§ 1983* suits, neither municipalities nor superiors can be held liable under theories of respondeat superior liability. *Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)*. However, a supervisor may be liable for the actions of a subordinate if he had

> (1) actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional **[**23]** injury suffered by the plaintiff.

*Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994)* (citations omitted). A supervisor is deliberately indifferent where the misconduct of the subordinate is "widespread, or at least been used on several different occasions," id., and the supervisor continuously fails to act to correct the behavior in the face of "documented widespread abuses," *Randall, 302 F.3d at 206*.

As stated above, the actions of some Defendants may have violated the constitutional rights of Smith. However, in response to these allegations, Rubbo ordered an investigation. His response as a supervisor was appropriate, and the investigation did not confirm any of Smith's allegations. As to Ray, despite the evidence showing that he had been the subject of some civilian complaints of excessive force, the subsequent investigations failed to substantiate these claims. Rubbo was not deliberately indifferent to these complaints as Ray was investigated following each allegation. Thus, we affirm the dismissal of the *§ 1983* supervisory liability claim.

C.

Moreover, the Monell claim against the City of Virginia Beach also must fail. A municipality is liable under *§ 1983* where a policymaker officially **[**24]** promulgates or sanctions an unconstitutional law, or where the municipality is deliberately indifferent to the development of an unconstitutional custom. *City of St. Louis v. Praprotnik, 485 U.S. 112, 123, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988)*. A municipality is not liable for mere "isolated incidents of unconstitutional conduct by subordinate employees . . . . Rather, there must be numerous particular instances of unconstitutional conduct in order to establish a custom or practice." *Lytle v. Doyle, 326 F.3d 463, (4th Cir. 2003)* (quotations and citations omitted).

Here, Smith has failed to present any convincing evidence that a policy or custom has developed regarding the use of excessive force, sexual assaults or any other unconstitutional actions by officers. Thus, we affirm the district court's dismissal on summary judgment of all claims against the City of Virginia Beach.

 [*651] IV.

Finally, the district court did not abuse its discretion when it dismissed the state tort claims of the 449 case without prejudice, and chose not to remand the claims back to state court. Upon the dismissal of all of a party's federal claims, a district court may choose to "dismiss the pendent state-law claims without prejudice, remand the [**25] state-law claims to the state court, or decide the merits of the state-law claims." *Farlow v. Wachovia Bank of North Carolina, 259 F.3d 309, 316-17 (4th Cir. 2001)* (emphasis added); see also *United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)* ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."). The district court was not obligated to retain jurisdiction, and therefore its actions were not in error.

V.

The district court erred in merging the two cases and summarily dismissing the original 281 Complaint, and we therefore reverse that decision. Accordingly, consistent with the findings of this opinion, we restore the *§ 1983* and state law claims against Ray and the Unknown Officer contained therein, and remand the 281 case to the district court for further proceedings.

However, Smith lacked sufficient evidence to maintain any of the *§ 1983* bystander, supervisory and municipal liability claims of the 449 case against Defendants. Despite there being sufficient evidence for a reasonable jury to find that Smith was subjected to excessive force and a sexual assault, she cannot show that either Ray, Rubbo, Lynch, Stein, Keatley, Monts, [**26] or Hewlett were aware of or otherwise indirectly liable for these constitutional violations under the above named theories. She similarly lacks any evidence to sustain her claim against the City of Virginia Beach. Finally, upon the dismissal of the federal claims contained within the Second Amended 449 Complaint, we find no error in the court's refusal to continue to hear the state law claims against Bullard from the same complaint.

Therefore, the decisions of the district court are

REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.