# Exhibit 17



**BRYAN FRODGE, TARYN PENCE, Plaintiffs-Appellants, v. CITY OF NEWPORT, CITY OF NEWPORT POLICE DEPARTMENT, CHIEF ROBBIE K. HALL, LIEUTENANT PAUL MORGAN, CORPORAL KUNKEL, CORPORAL GENE SIMMONS, Defendants-Appellees.**

No. 11-5458

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

*12a1056n.06*; *501 Fed. Appx. 519*; *2012 U.S. App. LEXIS 20942*; *2012 FED App. 1056N (6th Cir.)*

**October 5, 2012, Filed**

**NOTICE:** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. *SIXTH CIRCUIT RULE 28* LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE *RULE 28* BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY: [**1]**
ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY.

**COUNSEL:** For BRYAN FRODGE, TARYN PENCE, Plaintiffs - Appellants: Eric C. Deters, Law Office, Independence, KY.

For CITY OF NEWPORT, CITY OF NEWPORT POLICE DEPARTMENT, ROBBIE K. HALL, Chief, PAUL MORGAN, Lieutenant, KUNKEL, Corporal, GREG SIMMONS, Corporal, Defendants - Appellees: Jeffrey C. Mando, Adams, Stepner, Woltermann & Dusing, Covington, KY.

**JUDGES:** BEFORE: BOGGS and COLE, Circuit Judges; and OLIVER, District Judge. *

  *   The Honorable Solomon Oliver, Jr., Chief Judge of the United States District Court for the Northern District of Ohio, sitting by designation.

**OPINION BY:** SOLOMON OLIVER, JR.

**OPINION**

   [*521] **SOLOMON OLIVER, JR., Chief District Judge.** Plaintiffs-Appellants, Bryan Frodge ("Frodge") and Taryn Pence ("Pence") (collectively, "Plaintiffs"), brought the instant case against Defendants-Appellees, the City of Newport (the "City"), the City of Newport Police Department, Robbie K. Hall ("Hall"), individually and in his official capacity as the Chief of Newport Police, Paul Morgan ("Morgan"), individually and in his official capacity as a Lieutenant for the City, Corporal Kunkel ("Kunkel"), individually and in his official capacity as Police [**2] Corporal for the City, and Corporal Greg Simmons ("Simmons"), individually and in his official capacity as Police Officer for the City (collectively, the "Defendants"). Plaintiffs appeal the order of the district court granting summary judgment on Plaintiffs' federal claims against Simmons for false arrest and excessive use of force under *42 U.S.C. § 1983* and Plaintiffs' federal claims against the City, the City Police

2:13-cv-03446-RMG    Date Filed 05/05/14    Entry Number 54-17    Page 3 of 13

Page 2

501 Fed. Appx. 519, *521; 2012 U.S. App. LEXIS 20942, **2;
2012 FED App. 1056N (6th Cir.)

Department, Hall, Morgan, and Kunkel for supervisory and municipal liability under *§ 1983*, and dismissing Plaintiffs' state law claims for battery, negligence, and malicious prosecution against Simmons. For the following reasons, we **AFFIRM** the decision of the district court.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. Factual Background

On Saturday, May 31, 2009, Plaintiffs spent the evening with friends, celebrating Pence's birthday. After dinner, the group went to the Riverside Marina, where Frodge had three beers. Thereafter, Plaintiffs began their drive home. Pence was driving her new Mustang, with her windows rolled down.

During this drive, Plaintiffs heard a siren and Pence pulled her vehicle to the right, allowing an ambulance to pass. When Pence was about to pull back [**3] into her original lane of travel, a white vehicle drove past at a high rate of speed, narrowly missing Pence's vehicle. Pence honked her horn at the vehicle and continued driving. Eventually, the vehicle that sped past Plaintiffs slowed down, and Pence got into the left lane to pass it. Once the vehicles were next to each other, the other vehicle stayed even with Pence's vehicle long enough for its rear passenger, later identified as Robert Burbrink ("Burbrink"), to scream and curse at Plaintiffs. Burbrink also stuck both of his middle fingers up at Plaintiffs, "flipping [them] off." Plaintiffs responded by flipping off Burbrink. Once Pence was ahead of the white vehicle, she switched back into the right lane so that the white vehicle was behind her. She continued driving a short distance until she reached a stoplight at Third and Saratoga Streets, in front of Newport on the Levee. Because it was a Saturday night in the summer by Newport on the Levee, where there are a number of restaurants, bars, and other entertainment venues, there were a number of people and vehicles in the area.

While Plaintiffs and Burbrink were stopped at the stoplight, Burbrink got out of the white vehicle and [**4] approached the passenger side of Pence's Mustang, Frodge's side. Burbrink was "cussing [and] yelling a bunch of profanities" at Frodge, ordering him to get out of the car. Frodge told Burbrink that he was a police officer, that Burbrink was supposed to yield to an ambulance, and that he needed to get back into the white vehicle. Burbrink continued to try to get Frodge out of the vehicle, threatening to "slice [Frodge] from ear to ear" and grabbing Frodge's arm through the open window of Pence's [*522] car. However, Frodge remained in the vehicle. Burbrink then kicked the side of Pence's vehicle, stating, "this will get you out of the [vehicle]."

The next events occurred over approximately thirty seconds and primarily occurred in the street. After Burbrink kicked Pence's car, Frodge got out of the car, fearing that Burbrink may have a knife. Burbrink proceeded to immediately run at Frodge and kick him in the groin. When Frodge leaned down, Burbrink tried to kick him in the head, but the blow landed on Frodge's right shoulder instead. After witnessing this, Pence got out of the car. Burbrink came at Frodge again, but Frodge hit him first. When Burbrink fell back, he landed on Pence's shin/ankle. [**5] Pence told him to get off of her and kicked him off of her shin/ankle.

The fight caught the attention of two Newport police officers, Patrolman Bruce Markus ("Markus") and Simmons, who were working an extra-duty security detail, in full police uniform, at the Hofbrahaus Restaurant across the street. They were working in the restaurant's outdoor beer garden when they noticed several bar patrons looking at something across the street. The officers observed Frodge and Burbrink fighting on East Third Street. Simmons testified that the first thing he saw was two men "grabbing, grappling and swinging at each other." Markus testified that the first thing he saw was "fists flying, pushing and shoving and fist throwing." Upon observing this, Simmons and Markus raced across the street. Simmons pulled out his ASP baton, extended it as he approached, and yelled at Burbrink and Frodge to "knock it off." Neither Simmons nor Markus identified themselves as police officers, but they were in full uniform. Simmons observed Burbrink and Frodge continue to struggle and fall to the ground before the officers reached them. Simmons also saw Pence kicking one of the men. By this time, the white vehicle in [**6] which Burbrink was traveling had left the area.

Simmons testified that when he and Markus reached the men, both men were standing, although Frodge testified that Burbrink was on the ground when the officers arrived. According to both Simmons and Markus, the men continued to struggle, and the officers had to physically separate them to stop the fight. Because Frodge and Burbrink were "still locked onto each other," Simmons struck Frodge in the thigh with his ASP baton

2:13-cv-03446-RMG    Date Filed 05/05/14    Entry Number 54-17    Page 4 of 13

Page 3
501 Fed. Appx. 519, *522; 2012 U.S. App. LEXIS 20942, **6;
2012 FED App. 1056N (6th Cir.)

and took him to the ground. Simmons maintains that when he attempted to place Frodge under arrest, he and Frodge fell off the side of the curb, and Frodge landed abruptly on the ground.

Frodge's account of how he was hit with the baton differs from that of Simmons. He asserts:

> [a few seconds after hitting Burbrink the] next thing I know, I'm getting hit-hit with something, lifted up off the ground and thrown down on my face, and then I'm getting handcuffed from the back, and I'm hearing the F word yelled over and over . . . . [T]hen I'm hearing, you know, police radios and stuff. And at this point now, I realize its the cops.

Frodge testified that Pence kicked Burbrink off of her leg at the same time that Frodge was struck **[\*\*7]** with the baton. Pence maintains that she did not see Simmons grab Frodge before hitting him with the baton, and that she saw Simmons strike Frodge three times. Frodge testified that he was unsure if he was struck with the baton after he went to the ground. He testified that he has three scars on his leg from the incident but does not remember being struck more than once with the baton. He is unsure when the other two **[\*523]** blows may have occurred. After being hit, he recalled his arms being pulled behind him and an officer handcuffing him pretty quickly.

After the fight had ended and Frodge was on the ground, the officers placed both men under arrest, with Markus handcuffing Frodge and Simmons handcuffing Burbrink. Frodge testified that, while he was on the ground, someone double-clinched his handcuffs. Markus admitted that he double-clinched the handcuffs, but testified that he did so in order to prevent the handcuffs from tightening during transport.

While Frodge was handcuffed, he told Markus that he was a Covington police officer and that Markus should get Frodge's wallet out so that he could see his police ID. Frodge explained to Markus that he was not resisting, that he was a police **[\*\*8]** officer and that Burbrink had attacked him. Frodge also testified that he told Markus that Burbrink kicked his vehicle and asked Markus to look at his vehicle to observe the damage. Markus examined the vehicle and noticed there was some damage, but testified that he did not know how it got there. At some point, Frodge overheard Markus telling Simmons that Frodge was a Covington police officer, to which Simmons responded, "[f]uck him, if we were over in Covington, we'd be going." Simmons contends that he reacted in this manner because he did not want to show any favoritism to a police officer out in the street, "in the middle of this mess with all these people."

During the time that Markus was handcuffing Frodge, Pence was yelling at the officers, telling them that they had the wrong guy, and attempting to explain her and Frodge's side of the story. Pence testified that Simmons told her to "shut the F up" and later told her "[y]ou need to shut the F up, or I'm going to pile more charges on you." Frodge testified that he tried to calm Pence down, and eventually she sat down on the curb. However, once backup officers arrived, they arrested Pence.

Simmons testified that he did not immediately **[\*\*9]** arrest Pence because he did not have another set of handcuffs to use on her. He testified that he was just trying to keep her under control until backup arrived. Simmons further testified that he told Pence that she needed to be quiet, and that would be charged if she did not stop yelling. Simmons testified that Pence sat on the curb during some of Frodge's arrest and that she was quiet at times, but overall, she was animated. Markus corroborated Simmons's observations, testifying that Pence was yelling and screaming.

Plaintiffs assert that Markus was the only officer to speak with them and that no other officer asked them any questions or investigated the events leading up to the altercation, even though Plaintiffs tried to explain that they were only defending themselves and their property. However, Kunkel, the supervisor on duty and the supervisor of Simmons and Markus, testified that he arrived on the scene in response to Simmons's call for backup. Kunkel asserted that he attempted to speak with Plaintiffs regarding the force Simmons used, but Plaintiffs refused to talk to him. Kunkel testified that when he asked Frodge whether he had anything to say, Frodge just "looked at [Kunkel]. **[\*\*10]** Then he belched and looked away." Kunkel also testified that Frodge's eyes were bloodshot and that he could smell alcohol on him. Kunkel stated that when he opened the door of the police car and tried to speak with Pence, she began screaming profanities at him and kicking her legs. In

501 Fed. Appx. 519, *523; 2012 U.S. App. LEXIS 20942, **10;
2012 FED App. 1056N (6th Cir.)

addition, Kunkel spoke with Simmons and Markus at the scene, and later received written statements from [*524] both of them about the incident. Following his investigation, Kunkel drafted a use of force report and concluded that Simmons did not use excessive force.

Ultimately, Burbrink, Frodge, and Pence were transported to the Campbell County Detention Center. They were all charged with disorderly conduct. Within hours of their arrest, Plaintiffs posted bond and were released. Plaintiffs went to trial in March of 2009 and were acquitted.

**B. Procedural History**

On May 4, 2009, Plaintiffs filed suit in the United States District Court for the Eastern District of Kentucky against Defendants. [1] Plaintiffs alleged the following claims against Simmons: state claims for battery, negligence, and malicious prosecution, and federal claims for excessive use of force, false arrest, and *Fourteenth Amendment* Due Process violations [**11] under *§ 1983*. Plaintiffs alleged the following federal claims against the City, the City Police Department, Hall, Morgan, and Kunkel: supervisory and municipal liability and *Fourteenth Amendment* Due Process violations under *§1983*. The district court referred the case to a magistrate judge for preparation of a report and recommendation. On December 29, 2010, the magistrate judge issued a Report and Recommendation, recommending that the district court deny all of Plaintiffs' federal claims against Defendants and dismiss Plaintiffs' state law claims. On March 15, 2011, the United States District Court for the Eastern District of Kentucky adopted the magistrate judge's findings as its own and entered judgment in favor of Defendants.

> 1  Markus was initially named as a defendant, but was dismissed in both his individual and official capacity, on February 25, 2010, through an agreement with the parties.

The magistrate judge recommended granting Simmons's Motion for Summary Judgment because she found no constitutional violations had occurred. The magistrate judge found that Simmons had not violated Plaintiffs' rights under the *Fourth Amendment* because he had probable cause to arrest Plaintiffs. [**12] The magistrate judge found that Simmons had no objective evidence to support Plaintiffs' claim of self-defense, and since Simmons could not conclusively know that an affirmative defense applied, he had probable cause to arrest Plaintiffs. The magistrate judge applied the "objectively reasonable" standard to the excessive force claim stemming from the use of the ASP baton, and found that Simmons's use of force "was reasonable to end the altercation, subdue the parties, and take control of the situation." The magistrate judge found that the excessive force claim based on Frodge being too tightly handcuffed failed because he did not maintain that he complained to either Markus or Simmons, nor that he requested that the handcuffs be loosened, as required by the Sixth Circuit for such claims. [2] Because no constitutional violation occurred, the magistrate judge found it unnecessary to analyze Simmons's alternative argument that he had a qualified immunity defense.

> 2  The district court also noted that Markus was indisputably the officer who "over-tightened" Frodge's handcuffs. However, as stated above, he was dismissed from this action.

The magistrate judge noted that Plaintiffs asserted a violation [**13] of their *Fourteenth Amendment* due process rights in their Complaint, but did not allege specific conduct or violation other than those which served as the basis of their *Fourth Amendment* claims. Because the Supreme Court recognizes the *Fourth Amendment* as the appropriate vehicle for excessive force claims, the magistrate judge found that she had already addressed those claims [*525] and that no further discussion was warranted. Therefore, the magistrate judge concluded that Defendants were entitled to summary judgment on this claim.

The magistrate judge found that Hall, Morgan, and Kunkel were entitled to summary judgment on Plaintiffs' claims of supervisory liability under *§ 1983*. She concluded that Plaintiffs' claims for supervisory liability failed as a matter of law because Simmons did not violate Plaintiffs' constitutional rights. To the extent Plaintiffs' argument was based on a failure to train, ratification, or a failure to investigate, summary judgment was also appropriate because Plaintiffs did not present evidence sufficient to give rise to supervisor liability. The magistrate judge considered Plaintiffs' claim for failure to enforce policies to be waived because they did not argue [**14] it in their response to Defendants' Motion. Therefore, she concluded, Plaintiffs' supervisory liability claims failed in all respects, and Defendants were entitled to summary judgment.

2:13-cv-03446-RMG   Date Filed 05/05/14   Entry Number 54-17   Page 6 of 13

Page 5
501 Fed. Appx. 519, *525; 2012 U.S. App. LEXIS 20942, **14;
2012 FED App. 1056N (6th Cir.)

The magistrate judge found that Plaintiffs' *§ 1983* claim for municipal liability against the City and Simmons in his official capacity also failed. [3] The magistrate judge found that there was no underlying constitutional violation to support Plaintiff's claim for failure to establish or enforce adequate policies, "but even if there were, Plaintiffs fail to identify both the policymaker with final authority and the manner in which he violated their constitutional rights." Further, the magistrate judge concluded that Plaintiffs failed to demonstrate that the City's Use of Force policy was not enforced. The magistrate judge found that Plaintiffs' argument that the City ratified Simmons's unconstitutional behavior by failing to investigate failed because Plaintiffs did not identify the relevant policymaking individual, "did not demonstrate that any municipal official expressly approved of Simmons's conduct," and did not "cite to any other occurrence in which unconstitutional actions were allegedly ratified." **[**15]** In addition, the magistrate judge found that Plaintiffs failed to establish a causal link between the alleged ratification and a constitutional violation. Lastly, the magistrate judge found that Plaintiffs' argument that Simmons was inadequately trained also failed because Plaintiffs did "not explain in what manner the City's training program, or Simmons's training specifically, was inadequate, nor provide evidence of recurring complaints or *any* other complaint of constitutional violation." Because the magistrate judge dismissed Plaintiffs' federal claims, she recommended that the district court decline jurisdiction over Plaintiffs' state law claims and dismiss them without prejudice.

> 3   The district court noted that although Plaintiffs included the Newport Police Department as a defendant to this lawsuit, a police department is not an entity which may be sued; rather the municipality is the proper party. Therefore, Plaintiffs' *§ 1983* municipal liability claim could only be asserted against the City.

On April 13, 2011, Plaintiffs timely appealed the district court's order. They argue that the district court erred in its ruling regarding whether probable cause existed, whether Simmons used **[**16]** excessive force, whether Plaintiffs maintained a claim against Hall, Morgan, and Kunkel under the theory of supervisory liability, whether Plaintiffs maintained a claim for municipal liability against the City, and whether the state law claims should be dismissed.

## II. STANDARD OF REVIEW

A court of appeals reviews a district court's grant of summary judgment *de novo. Mazur v. Young, 507 F.3d 1013, 1016* **[*526]** *(6th Cir. 2007)*. Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. As the moving parties, Defendants bear the burden of showing the absence of a genuine issue of material fact as to at least one essential element on each of Plaintiffs' claims. *See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. Plaintiffs, as the non-moving parties, must then present sufficient evidence from which a jury could reasonably find for them. *See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. The court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter **[**17]** of law." *Id. at 251-52*. In making this determination, the court must draw all reasonable inferences in favor of the non-moving party. *See Nat'l Enters., Inc. v. Smith, 114 F.3d 561, 563 (6th Cir. 1997)*.

## III. LAW AND ANALYSIS

### A. Plaintiffs' *§ 1983* Claims Against Simmons (in his Individual Capacity)

Plaintiffs assert claims against Simmons under *42 U.S.C. § 1983*. A claim under *§ 1983* requires a plaintiff to provide facts that, when construed in his favor, establish "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009)*. Plaintiffs allege that their constitutional rights were violated because they were falsely arrested and Frodge was subjected to excessive use of force.

*1. False Arrest Claims*

In order for a plaintiff to prevail on a theory of wrongful arrest under *§ 1983*, he must prove that the police lacked probable cause. *Painter v. Robertson, 185 F.3d 557, 569 (6th Cir. 1999)*. The *Fourth Amendment* provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and **[**18]** seizures, shall not be violated, and no Warrants shall issue, but upon probable

2:13-cv-03446-RMG     Date Filed 05/05/14     Entry Number 54-17     Page 7 of 13

Page 6

501 Fed. Appx. 519, *526; 2012 U.S. App. LEXIS 20942, **18;
2012 FED App. 1056N (6th Cir.)

cause . . . ." *U.S. CONST. amend. IV*. A plaintiff's *Fourth Amendment* rights are not violated if an officer does not have an arrest warrant so long as "probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law." *Criss v. City of Kent, 867 F.2d 259, 262 (6th Cir. 1988)*. Probable cause is determined by the totality of the circumstances and from a reasonable law enforcement officer's on-scene perspective. *United States v. Craig, 198 F. App'x 459, 462 (6th Cir. 2006)*; *Klein v. Long, 275 F.3d 544, 550 (6th Cir. 2001)*. Probable cause "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Estate of Dietrich v. Burrows, 167 F.3d 1007, 1010-11 (6th Cir. 1999)*. Under this "flexible, common-sense standard," *Texas v. Brown, 460 U.S. 730, 742, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983)*, the establishment of probable cause requires only "a 'fair probability' that the individual to be arrested has either [**19] committed or intends to commit a crime." *Fridley v. Horrighs, 291 F.3d 867, 872 (6th Cir. 2002)* (internal citation omitted). Mere speculation that a crime occurred is insufficient to establish probable cause. *See McCurdy v. Montgomery* [*527] *Cnty., Ohio, 240 F.3d 512, 519 (6th Cir. 2001)*.

However, this court has stated that "[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers v. Schebil, 188 F.3d 365, 371 (6th Cir. 1999)*. Nevertheless, "an officer cannot look only at the evidence of guilt while ignoring all exculpatory evidence. Rather, the officer must consider the totality of the circumstances, recognizing both the inculpatory *and* exculpatory evidence, before determining if he has probable cause to make an arrest." *Gardenhire v. Schubert, 205 F.3d 303, 318 (6th Cir. 2000)*. However, when a suspect asserts an affirmative defense, this does not automatically vitiate probable cause. The officer is not required to accept the explanation without question, but a police officer "may not [**20] ignore information known to him which proves that the suspect is protected by an affirmative legal justification." *Fridley, 291 F.3d at 873* (internal quotation marks omitted). On the other hand, "[e]ven if the circumstances suggest that a suspect may have an affirmative defense, if a reasonable officer would not 'conclusively know' that the suspect is protected by the defense, then [the officer] is free to arrest the suspect provided there is probable cause to do so." *Id.*

Markus and Simmons arrested Plaintiffs for disorderly conduct because of their fight with Burbrink. Under the Kentucky Revised Statutes, a person is guilty of this offense

> when in a public place and with intent to cause public inconvenience, annoyance, or alarm, or wantonly creating a risk thereof, he:
>
> (a) Engages in fighting or in violent, tumultuous, or threatening behavior;

lnvxe:text>*Ky. Rev. Stat. § 525.060(1)*. Plaintiffs do not dispute the fact that they were in a public place or that they were fighting. They argue that probable cause was lacking because of their affirmative defense of self-defense. Plaintiffs assert that Simmons should have known that they were only defending their property and that because damage [**21] to the car corroborated their story, there was no probable cause to arrest them. Plaintiffs maintain that the interviews of Simmons and Markus, conducted by the Professional Compliance Board of the Covington Police Department, demonstrate that the officers agreed that they would have done the same thing if they were in Plaintiffs' situation, and further support their argument that probable cause did not exist.

We hold that Simmons had probable cause to arrest Plaintiffs. In order for Simmons to have probable cause, he only needed a "fair probability" that Plaintiffs were engaged in disorderly conduct, and he could not "conclusively know" that Plaintiffs had validly asserted an affirmative defense. It is undisputed that when Simmons first observed the incident with Plaintiffs and ran across the street, Burbrink and Frodge were fighting in the street, a fight that commenced while the cars in which they were riding were stopped at a traffic light. Frodge admits to hitting Burbrink and Pence admits to kicking Burbrink. Further, it is undisputed that the fight occurred on a Saturday night in a well-populated area. For the reasons which follow, the court concludes that there was probable [**22] cause to arrest Plaintiffs for disorderly conduct. First, the fight occurred in a public place. Second, the conduct involved demonstrated that the parties intended to cause public inconvenience, annoyance, or alarm, or that they wantonly created a risk

2:13-cv-03446-RMG     Date Filed 05/05/14     Entry Number 54-17     Page 8 of 13

Page 7
501 Fed. Appx. 519, *527; 2012 U.S. App. LEXIS 20942, **22;
2012 FED App. 1056N (6th Cir.)

thereof. Finally, Plaintiffs were involved in fighting. The parties dispute the point at **[*528]** which the fight ended, but do not dispute that a fight occurred, which Simmons observed. Plaintiffs and Simmons's accounts establish that probable cause existed for Plaintiffs' arrests.

However, Plaintiffs counter that their assertion of the affirmative defense of self-defense should have precluded Simmons from arresting them. Plaintiffs argue that Simmons did not credit their assertion that they only fought Burbrink because he had damaged the Mustang and they were defending their property. Plaintiffs contend that Simmons did not ask them their side of the story and did not consider the damage to their car. This court has held that "[w]here the police have sufficient inculpatory evidence to give rise to a determination of probable cause and they do not know of any exculpatory evidence, . . . 'the failure to make a further investigation does not negate **[**23]** probable cause.'" *Klein, 275 F.3d at 552* (quoting *Coogan v. City of Wixom, 820 F.2d 170, 173 (6th Cir. 1987))*. As discussed above, Simmons had probable cause to arrest Frodge. Simmons was not aware of any affirmative defense of self-defense until after Frodge had been arrested. Thus, this defense did not negate the finding of probable cause as to Frodge. Pence, on the other hand, was arrested after Simmons was aware that she was asserting an affirmative defense. However, there is no evidence that would have enabled Simmons to "conclusively know" that Plaintiffs were protected by their claim of self-defense. Simmons only observed the fight *after* Burbrink had kicked the car. Though Markus looked at the Mustang for damage and could see some damage to the car, he had no way of knowing whether this was caused by Burbrink as Frodge had alleged. Thus, even though Simmons was aware that Plaintiffs were asserting this defense at the time of Pence's arrest, because he could not "conclusively know" it was validly asserted, Simmons had probable cause to arrest Pence.

Plaintiffs assert that *Dietrich* and *Gardenhire* are analogous to their case and require Simmons to accept their affirmative defense. **[**24]** However, these cases are readily distinguishable since, in those cases the police officers were able to verify information, *prior to arrest*, that vitiated the officers' finding of probable cause, but proceeded to arrest the plaintiffs nonetheless. *See Dietrich, 167 F.3d at 1011*; *Gardenhire, 205 F.3d at 316*. Here, Simmons was unable to verify Plaintiffs' claims of self-defense prior to arrest. There was no evidence available to Simmons to demonstrate that they had justifiably acted in self-defense.

Plaintiffs also argue that the magistrate judge erred in analyzing probable cause because she failed to "view all facts and draw all reasonable inferences in [the] light most favorable to non-moving party as required under *Fed. R. Civ. P. 56(a)*." While the district court must determine a motion for summary judgment viewing the facts and drawing all reasonable inferences in the light most favorable to the non-moving party, the district court must do so based on the record before it, and not based on the parties' arguments that are contrary to the relevant portions of the record. Plaintiffs attempted to oppose Simmons's Motion for Summary Judgment with materials from the investigation conducted **[**25]** by the Covington Police Department's Professional Compliance Review Board. They seek to use those same materials to support their instant appeal. The conclusion reached by the Covington Police Department-that Frodge had engaged in self-defense-does not negate the probable cause finding made *at the scene* by the officers. In addition, statements **[*529]** made by Simmons and Markus to the Covington Police Department Professional Compliance Review Board in interviews, that they would have done the same thing had they been in the Plaintiffs' position, also do not negate the probable cause finding made *at the scene* by the officers. Probable cause is determined by the totality of the circumstances and from a reasonable law enforcement officer's on-scene perspective. *Craig, 198 F. App'x at 462*. Any conclusions reached by the Covington Police Department after the incident, have no bearing on whether or not Simmons lacked probable cause at the time of Plaintiffs' arrests. There was no evidence that would have allowed Simmons to conclusively know Plaintiffs had validly asserted the affirmative defense of self-defense. In light of the testimony of Simmons, Markus, and Plaintiffs, we hold that Simmons had **[**26]** probable cause to arrest Plaintiffs for disorderly conduct. The facts were "sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown" that Plaintiffs had engaged in disorderly conduct. *Dietrich, 167 F.3d at 1010-11*. Therefore, no constitutional violation occurred, and this court affirms the district court's judgment in favor of Simmons.

*2. Excessive Force Claims*

Frodge asserts that Simmons used excessive force by hitting him with the ASP baton and over-tightening his

Page 8

501 Fed. Appx. 519, *529; 2012 U.S. App. LEXIS 20942, **26;
2012 FED App. 1056N (6th Cir.)

handcuffs. The court will address each instance of alleged excessive use of force separately.

a. ASP Baton

The appropriate standard to use in analyzing an excessive force claim brought under *§1983* "is determined by identifying the specific constitutional right infringed by the challenged application of force." *Lustig v. Mondeau, 211 F. App'x 364, 369 (6th Cir. 2006)* (citing *Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989))*. All claims that police officers used excessive force in the course of an arrest should be analyzed under the *Fourth Amendment* and its "objective reasonableness" standard. *Graham, 490 U.S. at 395*. Under this standard, the court must take into consideration [**27] the totality of the circumstances. *Id. at 397*. In applying the objective reasonableness test, the court is required to pay "careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id. at 396*. Furthermore, the test of the "reasonableness" of a particular use of force by law enforcement is objective, and "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* This court has stated that it should not substitute its own ideas in regard to what is "proper police procedure for the instantaneous decision of the officer at the scene." *Boyd v. Baeppler, 215 F.3d 594, 602 (6th Cir. 2000)*. In addition, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Graham, 490 U.S. at 396*-97. [**28] The Supreme Court has stated that a mistaken belief may still be a reasonable belief, and the fact that it turned out to be mistaken does not undermine its reasonableness as considered at the time of the acts. *See Saucier v. Katz, 533 U.S. 194, 205, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)*, *overruled on* [*530] *other grounds* by *Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)*.

Plaintiffs, therefore, needed to show that Simmons's use of force was objectively unreasonable. The magistrate judge found that Simmons's use of force was objectively reasonable. Based on the testimony of Plaintiffs, Markus, and Simmons, the totality of the circumstances demonstrate that Simmons's use of the baton was objectively reasonable. While two of the *Graham* factors may not support the use of force, the remaining factor weighs heavily in favor of Simmons's use of force being reasonable.

The first factor is the severity of the crime. *Graham, 490 U.S. at 396*. The crime at issue was disorderly conduct, which is not a particularly severe crime. Therefore, this factor does not weigh in favor of Simmons's use of force being reasonable.

The second factor is "whether the suspect poses an immediate threat to the safety of the officers or others." *Id.* Plaintiffs were [**29] fighting with Burbrink and, therefore, they posed a threat to at least one another. It is indisputable that at least right before the officers arrived, Frodge was fighting Burbrink. Frodge argues, in his brief, that the fight had ended when he was struck with Simmons's baton and, thus, the force Simmons used was unreasonable. However, Frodge's testimony does not support this assertion. Specifically, Frodge argues in his brief that "[w]ith Burbrink on the ground and the fight over, [Frodge] was then grabbed and struck multiple times from behind." Frodge supports this assertion with a citation to his interview with the Covington Police Department Professional Compliance Board. [4] In his deposition, Frodge testified that he punched Burbrink, and that as he started to spin to the ground, the next thing he knew he was being hit with something. Frodge testified that he felt a strike to his leg within seconds of throwing the punch. He also observed that while Burbrink was falling to the ground, Pence kicked him. Therefore, based on Frodge's deposition testimony, the fight had not completely ended at the time the officers reached the fight and when the baton was used. Furthermore, as Plaintiffs' [**30] deposition testimony indicates, it was a Saturday night, lots of people were in the area, and the fight occurred in or near the street, while the vehicles were stopped at the light. Simmons testified that he first called out to the parties to "knock it off," but that his warning was not heeded. Thus, it would have been especially necessary for Simmons and Markus to respond quickly to break up the fight. Simmons testified that after he used his baton, the fight ended, demonstrating that the force served its proper purpose. Because the parties were fighting one another, there was a threat to each other and, given the highly populated

2:13-cv-03446-RMG    Date Filed 05/05/14    Entry Number 54-17    Page 10 of 13

Page 9

501 Fed. Appx. 519, *530; 2012 U.S. App. LEXIS 20942, **30;
2012 FED App. 1056N (6th Cir.)

area, possibly to others as well. Therefore, it was essential that the fight be brought to an end as quickly as possible. Consequently, this factor weighs in favor of Simmons's use of force being reasonable.

> 4   While Frodge points to his June 5, 2008, interview with the Covington Police Department Professional Compliance Board, wherein he indicates that the fight was not ongoing at the time Simmons hit him with the baton, that statement is not admissible under *Fed. R. Evid. 801(d)(1)(B)* as Plaintiffs argue. Although Plaintiffs contend that the district court [**31] did not address this issue, the district court's ruling can be read as implicitly ruling on this issue, since the magistrate judge found the fight to still be ongoing at this point based on Frodge's January 21, 2010, deposition testimony.

[*531] The third factor is whether the suspect "is actively resisting arrest or attempting to evade arrest by flight." *Graham, 490 U.S. at 396*. While it is clear that Frodge and Burbrink did not stop fighting despite unrefuted testimony that Simmons, in full police uniform, told them to "knock it off," there is no evidence that they were resisting arrest or attempting to evade by flight at that time. Although Plaintiffs argue there are several analogous cases that demonstrate the use of force was unreasonable when arresting plaintiffs for fairly minor crimes, these cases are easily distinguishable, as none of them involve incidents where the plaintiff was engaged in a fight, essentially in the street, in a highly populated area. In addition, the force used in those cases was much greater than that used in the instant case. *See Grawey v. Drury, 567 F.3d 302 (6th Cir. 2009)* (finding that a police officer's pepper spraying of the plaintiff when he was walking [**32] away from the officer, but was not under arrest, amounted to excessive force); *Solomon v. Auburn Hills Police Dept., 389 F.3d 167 (6th Cir. 2004)* (finding arresting officer's actions could have amounted to excessive force because he twisted and grabbed the plaintiff's arm with enough force to fracture it in several places even though she was not a flight risk and had followed officer's orders); *Landis v. Baker, 297 F. App'x 453 (6th Cir. 2008)* (finding police officers used excessive force in detaining arrestee where officers used at least ten strikes of a baton when arrestee was not actively resisting arrest, then tasered arrestee four times over just a few seconds and held arrestee's face submerged in water for at least ten to fifteen seconds, and arrestee ultimately died). Thus, these cases are inapposite.

A review of the totality of the circumstances demonstrates that Simmons's use of force was reasonable. Given that Simmons and Markus observed Plaintiffs actively fighting with Burbrink and needed to quickly break up the fight, the use of the baton was reasonable. There is no evidence that the baton was used with such force as to cause serious injury to Frodge. Frodge also asserts [**33] that taking him to the ground and twisting his arm behind his back also amounted to excessive force. However, Simmons testified that he took Frodge to the ground in the process of breaking up the fight and falling off the curb. Under the circumstances, it was reasonable for Simmons to twist Frodge's arm behind his back and take him to the ground in Simmons's efforts to end the fight and place Frodge under arrest. As the *Graham* court indicated, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *490 U.S. at 396-97*. Further, the reasonableness of Simmons's actions "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id. at 396*. Taking into account the parties' failure to respond to his command to "knock it off," and given the location of the fight, it was reasonable for Simmons to employ some force in order to bring the fight to an end. Therefore, no constitutional violation occurred, and this court [**34] affirms the district court's judgment in favor of Simmons.

b. Tight Handcuffs

This court has stated that in order to reach a jury on a claim of tight handcuffing, "a plaintiff must offer sufficient evidence . . . that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the [*532] plaintiff experienced 'some physical injury' resulting from the handcuffing." *Morrison v. Bd. of Trs. of Green Twp., 583 F.3d 394, 401 (6th Cir. 2009)*. The magistrate judge found that Frodge did not maintain that he complained that his handcuffs were too tight or that he suffered some physical injury from the handcuffing. Plaintiffs have not refuted this finding. Therefore, because Plaintiffs have failed to demonstrate these elements, this court affirms the district court's judgment in favor of Simmons.

**B. Plaintiffs' *§ 1983* Supervisory Liability Claims**

2:13-cv-03446-RMG     Date Filed 05/05/14     Entry Number 54-17     Page 11 of 13

Page 10

501 Fed. Appx. 519, *532; 2012 U.S. App. LEXIS 20942, **34;
2012 FED App. 1056N (6th Cir.)

**Against Hall, Morgan, and Kunkel**

Plaintiffs argue that Hall, Morgan, and Kunkel are liable for constitutional violations, allegedly committed by Simmons, based on a theory of supervisory liability. The magistrate judge found Defendants were entitled to summary judgment on these claims because under any of the theories [**35] asserted by Plaintiffs, their claims failed.

This court held in *McQueen v. Beecher Cmty. Schools, 433 F.3d 460, 470 (6th Cir. 2006)*, that "a prerequisite of supervisory liability under *§ 1983* is unconstitutional conduct by a subordinate of the supervisor." In order to show supervisory liability, a plaintiff must "show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999)* (quoting *Hays v. Jefferson Cnty, Ky., 668 F.2d 869, 874 (6th Cir. 1982))*. The court also stated that, "a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Id. at 300* (quoting *Hays, 668 F.2d at 874*); *see also Cardinal v. Metrish, 564 F.3d 794, 802-03 (6th Cir. 2009)* ("We have held that, even if a plaintiff can prove a violation of his constitutional rights, his *§ 1983* claim must fail against a supervisory official unless 'the supervisor encouraged the specific incident of misconduct or in some [**36] other way directly participated in it.'") (quoting *Combs v. Wilkinson, 315 F.3d 548, 558 (6th Cir. 2002))*.

The magistrate judge found that Plaintiffs' claims of supervisory liability failed as a matter of law because she determined that Simmons did not violate Plaintiffs' constitutional rights. Because this court also finds there were no constitutional violations, Plaintiffs' claims fail as a matter of law.

Nevertheless, even if Simmons had violated Plaintiffs' constitutional rights, their supervisory liability claims would still fail. Plaintiffs argue that Hall, Morgan, and Kunkel ratified Simmons's conduct by failing to investigate the incident and failing to discipline Simmons for making an invalid arrest and using excessive force. This is insufficient to make supervisors liable for their subordinates' conduct. Plaintiffs must present evidence that Hall, Morgan, and Kunkel "did more than play a passive role in the alleged violation . . . . Supervisory liability under *§ 1983* cannot attach where the allegation of liability is based upon a mere failure to act." *Bass v. Robinson, 167 F.3d 1041, 1048 (6th Cir. 1999)*.

Here, the claims asserted, failure to discipline and failure to act, do [**37] not constitute "active constitutional behavior" as required and thus, are not actionable. *Id.* Further, Kunkel did conduct an investigation. However, even an inadequate investigation is still insufficient to trigger liability because a supervisory liability claim "cannot be based on simple negligence." *Leach v.* [*533] *Shelby Cnty. Sheriff, 891 F.2d 1241, 1246 (6th Cir. 1989)*. In addition, there is no claim by Plaintiffs that the failure to investigate was part of an ongoing pattern by Kunkel. In any event, Kunkel's investigation had no bearing on the alleged violation of Plaintiffs' rights, as Plaintiffs have asserted claims for false arrest and excessive use of force, that occurred *prior* to the investigation.

Thus, Hall, Morgan, and Kunkel did not engage in any conduct that violated Plaintiffs' rights, and Plaintiffs failed to state a claim for supervisor liability based on ratification. Consequently, this court affirms the district court's judgment in favor of Hall, Morgan, and Kunkel.

**C. Plaintiffs'** *§ 1983* **Municipal Liability Claims Against the City of Newport and Simmons (in his Official Capacity)**

Plaintiffs assert the following three bases for their municipal liability claims: (1) the City [**38] failed to establish or enforce policies; (2) the City ratified Simmons's unconstitutional behavior; and (3) the City inadequately trained Simmons. The magistrate judge found that Plaintiffs' claims failed under all three theories. However, on appeal, Plaintiffs only argue that it was an error to determine that they could not maintain a claim for municipal liability based upon a failure to adequately train. Specifically, Plaintiffs argue that the City is liable under *§ 1983* municipal liability because the City failed to adequately train its officers as demonstrated by Simmons's testimony that he does not always announce that he is a police officer and Kunkel's failure to investigate.

To prevail on a claim against a municipality under *§ 1983*, a plaintiff must establish both: (1) the deprivation of a constitutional right; and (2) the city's responsibility for that violation. *See Howard v. City of Girard, 346 F.*

2:13-cv-03446-RMG   Date Filed 05/05/14   Entry Number 54-17   Page 12 of 13

Page 11

501 Fed. Appx. 519, *533; 2012 U.S. App. LEXIS 20942, **38;
2012 FED App. 1056N (6th Cir.)

App'x 49, 51 (6th Cir. 2009) (citing *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)). A plaintiff suing a municipality must identify an unconstitutional policy or custom in order to prevail on a *§ 1983* claim. *See id.* A policy that fails **[**39]** to adequately train an employee, such as a police officer, may "serve as the basis for *§ 1983* liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).* To establish liability under *City of Canton*, "the plaintiff must prove, that the training program at issue is inadequate to the tasks that officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Russo v. City of Cincinnati, 953 F.2d 1036, 1046 (6th Cir. 1992)* (citing *Hill v. McIntyre, 884 F.2d 271, 275 (6th Cir. 1989)).*

Plaintiffs assert that they have demonstrated a failure to train by the City based upon the fact that Simmons did not announce his status as a police officer to Frodge and Burbrink when he told them to "knock it off," and the fact that he admitted that he generally finds it unnecessary to do so when he is in full police uniform. Plaintiffs argue that their failure to adequately train theory is also based upon Kunkel's failure to perform any investigation **[**40]** into the use of force. The magistrate judge found that this claim failed because Plaintiffs "do not explain in what manner the City's training program, or Simmons's training specifically, was inadequate, nor [do they] provide evidence of recurring complaints or *any* other complaint of a constitutional violation . . . ." Plaintiffs do not identify any alleged deficiencies **[*534]** in the training provided to Simmons or Kunkel. The Supreme Court has stated that the fact "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton, 489 U.S. at 390-91.* Further, "[i]t may be, for example, that an otherwise sound program has occasionally been negligently administered" or that an injury could have been avoided if an officer had better or more training. *Id. at 391.* However, neither of these circumstances will be sufficient to hold the City liable. *Id.* Plaintiffs merely allege that Simmons and Kunkel, and possibly Markus, may have been inadequately trained, but Plaintiffs fail to demonstrate or explain how the City's training program **[**41]** is insufficient or how the allegedly wrongful actions of the officers were caused by a defect in the City's training program. Because Plaintiffs have failed to meet the requisite standard, their *§ 1983* municipal liability claims must fail. Therefore, this court affirms the district court's judgment in favor of the City and Simmons.

**D. Plaintiffs' State Law Claims**

Plaintiffs object to the dismissal of the state law claims because they assert that constitutional violations have occurred, and therefore supplemental jurisdiction is properly exercised over these claims. This court reviews a district court's decision to decline supplemental jurisdiction for abuse of discretion. *See Robert N. Clemens Trust v. Morgan Stanley DW, Inc., 485 F.3d 840, 853 (6th Cir. 2007).* Pursuant to *28 U.S.C. § 1367(c)(3)*, the district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it had original jurisdiction. The district court's decision to exercise supplemental jurisdiction "depends on judicial economy, convenience, fairness, and comity." *Musson Theatrical, Inc. v. Fed. Express Corp., 89 F.3d 1244, 1254 (6th Cir. 1996)* (internal citation **[**42]** and quotation marks omitted).

The district court had original jurisdiction over Plaintiffs' *§ 1983* claims for false arrest, excessive force, and supervisory and municipal liability and could have exercised supplemental jurisdiction over Plaintiffs' state law claims. However, this court has stated that "'in the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Robert N. Clemens Trust, 485 F.3d at 853* (quoting *Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988)).* The district court granted summary judgment in favor of Defendants on all of Plaintiffs' federal claims. Similarly, we have held that there were no constitutional violations and that Defendants were entitled to summary judgment. Thus, Plaintiffs' argument that the district court should have exercised supplemental jurisdiction over the state law claims because constitutional violations have occurred is not well-taken. Plaintiffs point to no other factors that would support the exercise of supplemental jurisdiction under *§ 1367* over their state law claims in light **[**43]** of the federal claims

2:13-cv-03446-RMG     Date Filed 05/05/14     Entry Number 54-17     Page 13 of 13

Page 12

501 Fed. Appx. 519, *534; 2012 U.S. App. LEXIS 20942, **43;
2012 FED App. 1056N (6th Cir.)

being dismissed. Consequently, this court finds the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over Plaintiffs' state law claims.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's order granting summary judgment on all of Plaintiffs' federal **[*535]** claims and dismissing Plaintiffs' state law claims.