# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| JAMES DOE, | C.A. NO. 2:13-CV-3446-RMG |
| PLAINTIFF, | |
| vs. | |
| | **REPLY MEMORANDUM IN SUPPORT** |
| MICHAEL ARPAIO, THE CITADEL, | **OF DEFENDANT ROBERT J. LYON'S** |
| COLONEL JOHN G. LACKEY, III, | **MOTION TO DISMISS** |
| MAJOR WILLIAM BATES, III, | |
| JENNIFER GARROTT, AND ROBERT | |
| J. LYON, | |
| DEFENDANTS. | |

Defendant Robert J. Lyon (hereafter "Lyon" or "Defendant Lyon") submits this Reply Memorandum in Support of his Motion to Dismiss Plaintiff's claim against him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## ARGUMENT AND CITATION OF AUTHORITY

**I.    Plaintiff's §1983 substantive due process claim is time-barred by the governing statute of limitations.**

In *Owens v. Okure,* United States Supreme Court instructed that federal courts must avoid a case-by-case evaluation of the applicable statute of limitations periods in §1983 actions.[1] The Court noted that "the practice of seeking state-law analogies for particular §1983 claims bred confusion and inconsistency in the lower courts and generated time-consuming litigation."[2] The Supreme Court sought to end artful pleading and gamesmanship as a part of the statute of limitations analysis.[3]  To further the interests of uniformity, certainty and the minimization of

---

[1] *Owens v. Okure* 488 U.S. 235 (1989).
[2] *Owens v. Okure,* 488 U.S. 235, 240 (1989).
[3] *Id.* at 240.

unnecessary litigation the Supreme Court endorsed the simplest approach. The Supreme Court held that in all §1983 actions courts should apply the general statute of limitations for personal injury actions in the forum state.[4] Significantly, Plaintiff concedes that under this bright line rule, the three year statute of limitations for general personal injury actions in S.C. Code §15-3-530 applies to this action.[5]

However, after acknowledging the rule in *Owens*, Plaintiff attempts to undermine it. Plaintiff seeks to avoid the intended simple application of this rule because it ends his claim. In an attempt to save his time-barred claim, Plaintiff points to the specific limitations period in §15-3-555 and characterizes it as a "tolling" statute.[6] Plaintiff is wrong. Section 15-3-555 is a statute of limitations – not a tolling statute – and therefore does not apply in this case.

Plaintiff asks the Court to do exactly what the Supreme Court in *Owens* instructed federal courts to avoid. The *Owens* Court held that applying state statute of limitations for intentional torts – such as §15-3-555 – would be manifestly inappropriate because almost every state has multiple intentional tort limitations provisions.[7] In fact, the *Owens* Court listed several state child sex abuse statutes of limitations – such as §15-3-555 – among the "multiple statutes of limitations governing intentional torts" that courts should disregard.[8] Allowing Plaintiff to avoid

---

[4] *Id*. ("Given that so many claims brought under §1983 have no precise state-law analog, applying the statute of limitations for the limited category of intentional torts would be inconsistent with §1983's broad scope. We accordingly hold that where state law provides multiple statutes of limitations for personal injury actions, courts considering §1983 claims should borrow the general or residual statute for personal injury actions.").

[5] Plaintiff's Memo. in Opposition, p. 3.

[6] Plaintiff's Memo. in Opp., p. 4.

[7] *Owens v. Okure,* 488 U.S. 235 (1989).

[8] *Id.* at 244, n. 8. Plaintiff fails to distinguish the specific statutes the Supreme Court lists in *Owens* from § 3-15-555. Each sex abuse statute of limitations listed in *Owens* contains language similar to that in § 15-3-555 stating that such claims "must" or "shall" "be commenced" within a certain time period. See, *Id.* at 244, n. 8 citing, Cal. Code Civ. Proc. Ann. § 340.1; Me. Rev. Stat. Ann. Tit. 14, § 752-C; Wash. Rev. Code §4.16.340; Wis. Stat. §893.587. As discussed in detail below, such language is the hallmark of a statute of limitations.

the Supreme Court's rule by simply characterizing their preferred specific limitations period as a "tolling" statute would destroy the purpose of the bright line rule.

The title and language of § 15-3-555 reveal the fallacy in Plaintiff's "tolling" argument. The legislature titled §15-3-555 as a "*statute of limitations*."[9] The legislature also stated the purpose of enacting the statute was "*so as to provide a statute of limitations* for actions arising out of sex abuse or incest."[10]

The language of §15-3-555 also shows that it is a statute of limitations. The statute provides the time period when a claim arising out of sexual abuse or incest "*must be commenced*".[11] The establishment of a time period by which an action must be commenced is

---

[9] "*Court[s] may, of course, consider the title or caption of an act in determining the intent of the Legislature*." *Beaufort Cnty. v. S. Carolina State Election Comm'n*, 395 S.C. 366, 718 S.E.2d 432 (2011) (emphasis added). *See also*, *Duvall v. South Carolina Budget and Control Bd.*, 377 S.C. 36, 659 S.E.2d 125 (2008) (looking to the title of Act to determine the legislature's intent); *McInnis v. McInnis*, 348 S.C. 585, 592, 560 S.E.2d 632, 636 (Ct. App. 2002) ("Although the title and headings of a statute may not be construed to limit the plain language of a statute, they may be used to shed light on an ambiguous word or phrase."); *Kennedy v. SCRS*, 349 S.C. 339 (2001)(looking to the title to determine legislative intent); *Lindsay v. Southern Farm Bureau Cas. Ins. Co.*, 258 S.C. 272, 277, 188 S.E.2d 374 (1972) ("It is 'proper to consider the title or caption of an act in aid of construction to show the intent of the legislature'").

[10] 2001 South Carolina Laws Act 102 (H.B. 3131) ("TO AMEND CHAPTER 3, TITLE 15 **BY ADDING SECTION 15–3–555 SO AS TO PROVIDE A STATUTE OF LIMITATIONS FOR ACTIONS BASED ON SEXUAL ABUSE OR INCEST** OF SIX YEARS FROM THE TIME A PERSON BECOMES TWENTY–ONE OR WITHIN THREE YEARS OF DISCOVERING THE INJURY AND THE CAUSAL RELATIONSHIP BETWEEN THE INJURY AND THE ABUSE OR INCEST AND TO PROVIDE THAT PARENTAL IMMUNITY IS NOT A DEFENSE TO THIS ACTION; AND TO PROVIDE THAT A LAWSUIT BASED ON ABUSE OR INCEST PREVIOUSLY BROUGHT AND BARRED BY THE STATUTE OF LIMITATIONS MAY BE BROUGHT WITHIN THREE YEARS OF THIS ACT'S EFFECTIVE DATE.")

[11] S.C. Code §15-3-555 ("§15-3-555 *Statute of limitations* for action based on sexual abuse or incest. (A) In action to recover damages for injury to a person arising out of an act of sexual abuse or incest *must be commenced within six years* after the person becomes twenty-one years of age or within three years from the time of discovery by the person of the injury and the causal relationship between the injury and the sexual abuse or incest, whichever occurs later. (B) Parental immunity is not a defense against claims based on sexual abuse or incest that occurred before, on, or after this section's effective date").

the hallmark of a statute of limitations under South Carolina law.[12]  For example, S.C. Code §15-3-540 provides the limitations period for medical malpractice actions, and provides that such actions "*must be commenced*" within a certain time period.  Likewise, S.C. Code §15-3-570 provides the limitations period for penalty actions, and provides that such actions "*must be commenced*" within one year.  S.C. Code §15-3-580 provides the limitations period for charges of motor carriers, and provides "All actions at law by motor carriers . . . for the recovery of their charges or any part thereof *shall be commenced* within two years from the time the cause of action accrues . . ."  Similarly, S.C Code § 15-3-600 provides the limitations period for action for other relief and states "An action for relief not provided for in this chapter *must be commenced* within ten years after the cause of action shall have accrued."[13]

Moreover, the legislature placed the statute in Article 5 of Chapter 3 rather than in the "General Provisions" of Article 1, which generally contains statutory tolling provisions.[14]  In contrast, Article 5 houses statutes that provide the limitation period for all "Actions Other than for Recovery of Real Property."[15]  Thus, placement of the statute in Article 5 corroborates the legislature expressed its intention that § 15-3-555 operate as a statute of limitation.

Significantly, the South Carolina Supreme Court has recognized § 15-3-555 as a statute of limitations.  In *Doe v. Crooks,* the Supreme Court described the §15-3-555 as the "current

---

[12] "A statute of limitations is a procedural device that operates as a defense *to limit the remedy available from an existing cause of action*."  *Capco of Summerville, Inc. v. J.H. Gayle Const. Co., Inc*., 368 S.C. 137, 142 (2006). Section 15-3-555 limits the remedy available from actions arising out of sex abuse or incest by instructing such actions "must be commenced" within a certain time period or they are barred.
[13] Indeed, each of the statutes of limitation set out in Article 5 of Chapter 3 contain the "must be commenced" or "within [X] years" language.
[14] See, e.g. S.C. Code § 15-3-30 (tolling when defendant is out of state); § 15-3-40 (minority and disability tolling); § 15-3-80 (tolling for enemy alien suits); § 15-3-100 (tolling due to injunction or statutory prohibition).
[15] The only reference to "tolling" in Article 5 is in § 15-3-540(D), which limits the minority tolling statute found in Article 1 for medical malpractice actions.

4

statute of limitations for sexual-abuse actions."[16]  Nowhere in the *Crooks* opinion does the Supreme Court describe §15-3-555 as a tolling provision.[17]

Plaintiff cites no South Carolina authority supporting his contention that §15-3-555 is a "tolling" statute because he cannot do so.  Tolling provisions are not the time period when a certain action must be commenced.  Rather, tolling provisions identify time periods that are not counted towards the applicable statute of limitations.  For instance, S.C. Code Ann. § 15-3-40 provides "the time of the disability is ***not part of the time limited for the commencement of the action*** . . . ."  Similarly, S.C. Code Ann. § 15-3-30 provides "if, after such cause of action shall have accrued, such [defendant] person shall depart from and reside out of this State or remain continuously absent therefrom for the space of one year or more, ***the time of his absence shall not be deemed or taken as any part of the time limited for commencement of such action.***"  S.C. Code § 15-3-80 provides "When a person shall be an alien subject or citizen of a country at war with the United States ***the time of the continuance of the war shall not be a part of the period limited for the commencement of the action.***"

In contrast to the foregoing tolling statutes, Section 15-3-555 does not suspend, stop, or delay the start of a limitations period established in another provision.  Section 15-3-555 is independent of any other section and provides the time period when sex abuse or incest actions

---

[16] *Doe v. Crooks* 364 S.C. 349, 613 S.E.2d 536 (2005).  The Supreme Court expressly stated that it agreed with the circuit court's characterization of the statute as a statute of limitations: "Ordinarily, a ***new statute of limitations*** applies retroactively.  . . . the circuit court held that when ***section 15-3-555 became the statute of limitations*** governing sexual-abuse cases, Doe's cause of action had already lapsed under sections 15-3-530(5) and 15-3-535.  ***We agree***."  *Id*. (emphasis added).  *See also Doe 3 v. DuCharme*, 2006 WL 7285820 (Ct. App. 2006) (unpublished per curiam opinion) (affirming, based on the Supreme Court's analysis in *Doe v. Crooks*, the circuit court's grant of summary judgment finding the more liberal statute of limitations under S.C. Code §15-3-555 did not become effective until August 31, 2001, and plaintiff's claim had expired prior to the effective date thereby barring his civil action based on sexual abuse).

[17] *Id*.

5

must be commenced. It is therefore a specific statute of limitations.[18] Indeed, § 15-3-555 is a perfect example of the "narrowly drawn statute [of limitations] which is applicable only to certain intentional torts", that the Supreme Court has ruled cannot be applied to a §1983 claim.[19]

In sum, Plaintiff's argument that §15-3-555 is a "tolling" statute is contradicted by the statute's title, the statute's wording, its location in the South Carolina Code and the South Carolina Supreme Court's unequivocal description of the statute's purpose. Furthermore, Plaintiff's tolling argument is wholly unsupported by any South Carolina authority. Plaintiff's

---

[18] Of course, whether S.C. Code §15-3-555 constitutes a statute of limitations or a tolling statute is a matter of South Carolina state law. Nevertheless, Plaintiff dedicates a large portion of his argument analyzing numerous child infancy tolling statutes from other states. (Plaintiff's Memo. in Opp., p. 9-11). Plaintiff argues that the §15-3-555 is "materially indistinguishable" from these statutes. Plaintiff is wrong. The infancy tolling statutes Plaintiff cites are strikingly similar to South Carolina's infancy tolling statute, §15-3-40. *Compare* 42 Pa.C.S.A. § 5533(b) (Supp. 1987) (providing "If an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, *the period of minority shall not be deemed a portion of the time period within which the action must be commenced*.) (emphasis added), Tenn. Code Ann. § 28-1-106 (West) ("If the person entitled to commence an action is, at the time the cause of action accrued, either under eighteen (18) years of age, or adjudicated incompetent, such person, or such person's representatives and privies, as the case may be, may commence the action, *after legal rights are restored*, within the time of limitation for the particular cause of action, *unless it exceeds three (3) years, and in that case within three (3) years from restoration of legal rights*."), Tex. Civ. Prac. & Rem. Code Ann. § 16.001 (West) (current version of Tex. Rev. Civ. Stat. Ann., Art. 5535 (Vernon 1982), which was repealed in 1985) ("(a) For the purposes of this subchapter, a person is under a legal disability if the person is: (1) younger than 18 years of age, regardless of whether the person is married; or (2) of unsound mind. (b) If a person entitled to bring a personal action is under a legal disability when the cause of action accrues*, the time of the disability is not included in a limitations period.*"), *with* S.C. Code Ann. § 15-3-40 (providing where a person entitled to bring a civil action is at the time the cause of action accrued under eighteen years of age, "the time of the *disability is not a part of the time limited for the commencement of the action*, except that the period within which the action must be brought cannot be extended: (a) more than five years by any such disability, except infancy; nor (b) in any case longer than one year after the disability ceases."). The infancy tolling statutes Plaintiff cites are almost identical to South Carolina's infancy statute, § 15-3-40, which is the tolling statute applicable to this case. Section 15-3-555 contains no language similar to these statutes cited above. Moreover, the three cases Plaintiff relies on concern the constitutionality of the forum states' statute of limitations for paternity suits and, thus, are irrelevant to the present case regarding § 1983.

[19] *Owens v. Okure* 488 U.S. 235 (1989).

claim against Lyon is time barred and therefore must be dismissed. [20]

## II. Plaintiff's theory of "fraudulent concealment" fails as a matter of law.

Recognizing the weakness of his position that §15-3-555 is a tolling provision, Plaintiff contends that even if his claim is time barred, the claim should survive under another tolling theory of "fraudulent concealment." Plaintiff's theory fails in the first analysis because under the South Carolina Supreme Court's holding in *Strong v. Univ. of South Carolina Sch. Of Medicine*, tolling under a fraudulent concealment theory is only available if the plaintiff maintains a relationship with the defendant.[21] The *Strong* court held when the relationship between a plaintiff and defendant ends, the basis for tolling for fraudulent concealment also ends.[22] Plaintiff's fraudulent concealment theory fails because any relationship Lyon had with Plaintiff ended after the 2000 summer camp.[23]

Moreover, Plaintiff's allegations are insufficient to plead fraudulent concealment as to Lyon as a matter of law. Plaintiff must plead facts sufficient to plausibly show that "(1) the party pleading the statute [of limitations] fraudulently concealed facts which are the basis of a claim,

---

[20] Moreover, even if §15-3-555 was a tolling provision rather than a statute of limitations, which it is not, the statute would not apply to Plaintiffs' §1983 claims against Lyon. Section 15-3-555 applies only to actions "arising out of an act of sexual abuse or incest." The statute provides a longer limitations period for claims against the perpetrator of the alleged abuse. Plaintiff's claim against Lyon does not arise out of an act of sexual abuse. Rather the claim arises out of Lyon's alleged act of deliberate indifference in supervising Arpaio. *See, Doe v. Bishop of Charleston*, 407 S.C. 128 (2014) (recognizing that claims against an employer for negligent supervision are separate and not derivative to the claims against the perpetrator for the alleged abuse itself.).

[21] *Strong v. Univ. of South Carolina Sch. Of Medicine*, 316 S.C. 189, 191-92 (1994).

[22] *Id*.

[23] Amended Complaint, ¶¶ 180-83. The Supreme Court's recent holding in *Doe v. Bishop of Charleston*, 407 S.C. 128 (2014) did not overrule the Court's holding in *Strong*. Indeed, the *Doe* Court cited *Strong* in support of its holding. The "relationship" requirement in *Strong* was not raised in *Doe* by either party perhaps because the plaintiff maintained a relationship with the defendant as a member of the church. Importantly, nothing in the facts in the *Doe* opinion indicate that the plaintiff did not maintain a continuous relationship with the church defendant. Accordingly, *Doe* cannot be held to have overruled the relationship requirement in *Strong*.

and that (2) the claimant failed to discover those facts within the statutory period, despite (3) the exercise of due diligence."[24]  "*Concealment by silence is not enough.  There must be some trick or contrivance intended to exclude suspicion and prevent inquiry.*"[25]  "In addition, under the heightened pleading requirements of Rule 9 of the Federal Rules of Civil Procedure, *a plaintiff must state all averments of fraud, including those pertaining to fraudulent concealment, with particularity*."[26]

In *Boland v. Consolidated Multiple Listing Service, Inc.*, the plaintiff attempted to avoid the bar of the statute of limitations by asserting the theory of fraudulent concealment.[27]  In support of the fraudulent concealment theory the plaintiff pled that the defendants met secretly, provided pretextual reasons to the plaintiffs for their actions and agreed among each other not to discuss their alleged illegal scheme publicly.[28]  The *Boland* Court noted all allegations of fraud in federal court, including allegations of fraudulent concealment, must satisfy the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure.[29]  Applying this standard, the *Boland* Court held the plaintiffs' allegations were insufficient and granted the defendants' motion to dismiss:

> After consideration, the Court agrees with the Defendants that the Plaintiffs' allegations lack the particularity required by Rule 9 and, therefore, are legally insufficient to state a claim of fraudulent concealment. The cases are clear that *a plaintiff must allege affirmative acts of concealment or affirmative steps to mislead*; here, the Court believes that the *Plaintiffs' allegations amount to no more than a failure to admit to wrongdoing, which does not*

---

[24] *Boland v. Consolidated Multiple Listing Service, Inc.,* 868 F.Supp. 2d 506, 518 (D.S.C. 2011), affirmed, *Robertson v. Sea Pines Real Estate Co. Inc.*, 679 F.3d 278, 291 n.2 (4th Cir. 2012).
[25] *Boland,* 868 F.Supp. 2d at 518, quoting, *Wood v. Carpenter*, 101 U.S. 135, 143 (1879) (emphasis added).
[26] *Boland,* 868 F.Supp. 2d at 518 (emphasis added).
[27] *Id*. at 517-18.
[28] *Id*.
[29] *Id*. at 518.

8

> *suffice*. Accordingly, the Court finds that dismissal of these allegations is appropriate and the Court grants the Defendants' motions on this issue.[30]

There is no reason for a different result here. The Amended Complaint fails to allege facts showing that Lyon took affirmative acts to conceal or affirmative steps to mislead Plaintiff. The Amended Complaint does not allege that Lyon deliberately withheld information concerning constitutional violations from Plaintiff in an effort to prevent him from filing suit.[31] Moreover, Plaintiff does not allege how Lyon had the ability to deliberately conceal Plaintiff's claims during the expiration of the limitations period. The Amended Complaint contains no allegation that The Citadel employed Lyon after Plaintiff's last attendance at the camp in 2000. If Lyon was no longer employed at The Citadel, it defies logic that he was somehow involved in an alleged plot to fraudulently conceal information from Plaintiff. Plaintiff submits only his general allegations that Lyon had actual or constructive knowledge of Arpaio's misconduct and failed to report it.[32] As Judge Blatt noted in *Boland*, "the Plaintiffs' allegations amount to no more than a failure to admit to wrongdoing, which does not suffice."[33] Plaintiff alleges no more here. Plaintiff's attempt to save his time barred claim with "fraudulent concealment" argument therefore fails as a matter of law.

## III. The Amended Complaint fails to allege facts to plausibly support a substantive due process claim against Defendant Lyon under §1983.

Plaintiff's Complaint fails to state an actionable supervisory liability claim against Lyon

---

[30] *Id*., affirmed, *Robertson v. Sea Pines Real Estate Co. Inc*., 679 F.3d 278, 291 n.2 (4th Cir. 2012) (**The Fourth Circuit affirmed** holding "The district court properly concluded that plaintiffs failed to 'allege affirmative acts of concealment or affirmative steps to mislead" and that "plaintiffs' allegations amount to no more than a failure to admit to wrongdoing, which does not suffice.'").
[31] Plaintiff's Amended Complaint ¶¶ 176-220.
[32] Plaintiff's Memo. in Opp., p. 52.
[33] *Boland,* 868 F.Supp. 2d at 518.

and should be dismissed. The claim fails in the first analysis because Plaintiff attempts to allege a pre-*Iqbal* claim of supervisory liability.[34] Under *Iqbal,* a government official cannot be held liable because of a supervisory title over an alleged subordinate perpetrator. "Each Government official, his or her ***title notwithstanding***, is only liable for his or her ***own misconduct***."[35] Therefore, after *Iqbal,* a claim based on a theory of "supervisory liability" is no longer actionable under §1983.[36]

Even if supervisory liability survives after *Iqbal*, Plaintiff fails to allege facts to plausibly

---

[34] *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948 (2009). ("[T]he term 'supervisory liability' is a misnomer.") To sufficiently state a claim under §1983 "a plaintiff must plead that each Government-official defendant, through the ***official's own actions***, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948 (2009). The Supreme Court in *Ashcroft v. Iqbal* "clearly held that a supervisor's mere ***knowledge and acquiescence in his or her subordinate's unconstitutional conduct is insufficient to plead a constitutional claim***." *Randall v. Pettiford*, 2010 WL 1072164 (D.S.C. Feb. 22, 2010) (emphasis added) *report and recommendation adopted,* 2010 WL 1007473 (D.S.C. Mar. 18, 2010).

[35] *Iqbal*, 556 U.S. at 677 (emphasis added).

[36] Plaintiff cites to the Fourth Circuit holding in *Gandy v. Robey*, 520 Fed. Appx. 134 (4th Cir. 2013) to support his argument that supervisory liability survives the *Iqbal* holding. (Plaintiff's Memo. in Opp., p. 33) Plaintiff argues the Fourth Circuit does not interpret *Iqbal* as eliminating supervisory liability because the court analyzed a supervisory liability claim without addressing *Iqbal*'s effect on supervisory liability. Plaintiff is wrong. There is no reference in the court's opinion that the defendant raised *Iqbal* as a defense. Furthermore, the court had no need to address *Iqbal*'s application to supervisory liability in *Gandy*, because the Plaintiff in *Gandy* had "no evidence" to support a claim of supervisory liability even if the claim still existed. Therefore, the *Gandy* court simply ruled on the simplest basis available and had no need to address *Iqbal*. Accordingly, *Gandy* does not save Plaintiff's failed supervisory liability claim against Lyon in the present case. The same analysis applies to the remaining Fourth Circuit cases plaintiff cites that address supervisory liability claims after the *Iqbal* holding. (Plaintiff's Memo. in Opp. P. 33, n. 17). Importantly, none of the supervisory liability claims in the Fourth Circuit cases Plaintiff cites survived the dispositive motion at issue in the cited opinions. See also, *Al-Amin v. South Carolina Dep't of Corrections,* 2013 WL 5408655, at *4 (D.S.C. Sept. 25, 2013) ("[T]he dissent in *Iqbal* opined that, '[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; ***it is eliminating []supervisory liability entirely***.'") (emphasis added); *Sifford v. Drew*, 2013 WL 4021492, at *8 n.3 (D.S.C. Aug. 6, 2013) (Gergel, J.) *("[T]he Supreme Court may have entirely abrogated supervisory liability* in *Bivens* [and Section 1983] actions.") (emphasis added).

support that Lyon was Arpaio's "supervisor" for purposes of a §1983 claim.[37] The Amended Complaint does not allege that Lyon had authority to terminate or otherwise discipline Arpaio. In fact, the Amended Complaint states that Arpaio "often made a mockery of Lyon's authority" as Safety and Education Officer.[38] Thus, based on the allegations of the Amended Complaint Lyon had no actual supervisory authority over Arpaio.[39] If Lyon had no authority to terminate or discipline Arpaio, Lyon cannot be held liable for supervisory liability.

The Amended Complaint's conclusory allegation that Lyon was a "supervisor" is not sufficient to survive Lyon's Motion to Dismiss. The Court must "segregate allegations that are factually supported from those which are mere legal conclusions or naked assertions and not entitled to the presumption of truth."[40] The Amended Complaint contains no facts supporting the conclusion that Lyon was a supervisor of Arpaio for purposes of §1983. Accordingly, Plaintiff's §1983 claim fails on this independent basis.

Plaintiff's claim further fails for the independent reason that the facts alleged against Lyon fail to meet the required "shock the conscience" standard. The Fourth Circuit recently held in *Slaughter v. Mayor and City Council of Baltimore*, that the official's culpability must rise to the level of "intent to harm the plaintiff" to meet the "shock the conscience" standard.[41] The

---

[37] *Miller v. Univ. of S. Ala.,* 2010 WL 1994910 (S.D.Ala. 2010) (defendants with no authority to prevent reappointment of plaintiff or to otherwise alter conditions of work are not liable for alleged hostile environment under § 1983); *Eberle v. City of Newton*, 289 F. Supp. 2d 1269, 1281 (D. Kan. 2003) (dismissing an individual defendant because he was not the plaintiff's direct supervisor and holding that a non-supervisor cannot be held liable on a theory of failure to supervise).
[38] Plaintiff's Amended Complaint ¶ 185.
[39] Plaintiff's Amended Complaint ¶ 185.
[40] *In re Section 1031 Exch. Litig.*, 716 F. Supp. 2d 415, 421 (D.S.C. 2010), citing *Iqbal*, 129 S.Ct. at 1950.
[41] *Slaughter v. Mayor and City Council of Baltimore*, 682 F.3d 317 (4th Cir. 2012) (holding "the [defendant's] constitutional liability in this case turns on whether it intended to harm new recruits. . . Because the plaintiffs concede that no facts in the complaint support such a conclusion, the district court properly dismissed Count I of the complaint, purporting to allege a federal constitutional claim."), citing *Lewis,* 523 U.S. 836 ("[I]n such circumstances only a purpose to cause harm unrelated to [a] legitimate object . . . will satisfy the element of arbitrary conduct shocking the conscience").

Amended Complaint fails to allege, even in a conclusory fashion, that Lyon intended to harm Plaintiff.

Plaintiff attempts to avoid the *Slaughter* holding and argues he was in a special "custodial" relationship with the state while attending the Citadel's camp.[42] Plaintiff is wrong. Custodial relationship for purposes of the "shock the conscience" standard under §1983 is limited to circumstances where a plaintiff is in the ***involuntary*** custody of the state, "such as pretrial detainees, persons in mental institutions, convicted felons, and persons under arrest."[43] Plaintiff cites to no authority where attendance at a voluntary summer camp or school gave rise to a special "custodial" relationship under §1983. Indeed, Courts have held that voluntary attendance at schools and camps does not give rise to a custodial relationship.[44] Accordingly, Plaintiff's §1983 claim fails and should be dismissed.

### IV.  Plaintiff's §1983 claim further fails as a matter of law because Lyon is entitled to qualified immunity.

Lyon is entitled to qualified immunity because his alleged actions did not violate clearly established law at the time in question.[45] The law regarding Plaintiff's supervisory liability claim

---

[42] Plaintiff's Memo. in Opp., p. 40-42.

[43] *Slaughter*, 682 F.3d at 321-23.

[44] See, *Walton v. Alexander*, 44 F.3d 1297, 1299-1304 (5th Cir. 1995)(holding no special custodial relationship existed with a minor disabled child who voluntarily attended a residential school for the deaf and holding "the state creates a "special relationship" with a person only when the person is involuntarily taken into state custody and held against his will through the affirmative power of the state"); *Davis v. Carter*, 555 F.3d 979, 982 n.2 (11th Cir. 2009) ("Voluntary attendance at a school event does not create a custodial relationship with the school sufficient to give rise to a constitutional duty of protection . . . Even compulsory school attendance laws do not constitute a restraint on personal liberty sufficient to give rise to such an affirmative duty.")

[45] The first inquiry is "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer,* 536 U.S. 730, 736, 153 L. Ed. 2d 666, 122 S. Ct. 2508 (2002); *Saucier v. Katz,* 533 U.S. 194, 201, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001) ("The law might be deprived of this explanation were a court simply to skip ahead to the question whether the law [was] clearly established . . . in the circumstances of the case."); *Wilson v. Layne,* 526 U.S. 603, 609, 143 L. Ed. 2d 818, 119 S. Ct. 1692 (1999) ("Deciding the constitutional question before addressing the qualified immunity question . . . promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public").

cannot have been "clearly established" in 2000. The U.S. Supreme Court did not clarify the contours of when a government official violates constitutional rights through a failure to supervise a subordinate until 2009 – when the Court eliminated "supervisory liability" as a "misnomer."[46] As the law was clarified significantly in 2009, the law cannot have been "clearly established" in 2000.

Plaintiff attempts to avoid qualified immunity by asking the Court to define the right at issue broadly without application to the specific the conduct at issue.[47] "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, ***but at the level of its application to the specific conduct being challenged***."[48] In *Doe ex rel. Johnson v. SCDSS,* the Fourth Circuit held the defendant was entitled to qualified immunity even though her conduct constituted a constitutional violation.[49] The Court defined the right in question narrowly with application to the specific conduct at issue.[50] The Court analyzed the defendant's conduct based on her narrow specific position and duties holding, "because it would not have been apparent to ***a reasonable***

---

[46] *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948 (2009) (rejecting the argument that a supervisor's mere knowledge of his subordinate's unconstitutional conduct amounts to the supervisor's violating the Constitution).

[47] See Plaintiffs Memo. in Opp., p. 44-48 (arguing that the right of a child to be free from sexual abuse was clearly established).

[48] *Wiley v. Doory*, 14 F.3d 993 (4th Cir. 1994)(emphasis added). When determining if a right is clearly established at the time of the alleged violation, the court must first define the claimed right, doing so "in light of the specific context of the case, **not as a broad general proposition**." *McKinney v. Richland Cnty. Sheriff's Dep't*, 431 F.3d 415, 417 (4th Cir. 2005) (emphasis added). "To determine whether a federal right was clearly established at the time of the defendants' alleged conduct, [the court] focus[es] not upon the right at its most general or abstract level, but **at the level of its application to the specific conduct being challenged**." *Jackson v. Long*, 102 F.3d 722, 728 (4th Cir. 1996) (emphasis added)). *See also, Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011) ("We have repeatedly told courts—and the Ninth Circuit in particular, — **not to define clearly established law at a high level of generality** . . . The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.")

[49] *Doe ex rel. Johnson v. SCDSS* 597 F.3d 163 (4th Cir.), *cert denied*, 131 S. Ct. 392 (2010)

[50] *Id*. at 177.

*social worker in Thompson's position* that her actions violated the Fourteenth Amendment, she is entitled to qualified immunity"[51]

There is no reason for a different result here. Plaintiff cites no authority where a state employee without the authority to terminate or discipline the alleged perpetrator was held liable for the perpetrator's actions under a theory of "supervisory liability." The Amended Complaint contains no allegation that Lyon had authority to terminate or otherwise discipline Arpaio. In fact, the Amended Complaint states that Arpaio "often made a mockery of Lyon's authority" as Safety and Education Officer.[52] "Officials are not liable for bad guesses in grey areas; they are liable for transgressing bright lines."[53] Because a "legitimate question" existed in 2000 as to whether Lyon's alleged conduct constituted a constitutional violation of Plaintiff's rights, he is entitled to qualified immunity.[54]

## **CONCLUSION**

Based on the foregoing reasoning and citation of authority, and the arguments presented in his Memorandum in Support, Defendant Lyon respectfully requests that this Court grant his Motion to Dismiss with prejudice.

---

[51] *Id*. at 177.
[52] Plaintiff's Amended Complaint ¶ 185.
[53] *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir.1992).
[54] *Wiley v. Doory*, 14 F.3d 993 (4th Cir. 1994)("if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity").

                    YOUNG CLEMENT RIVERS, LLP

                    By:  s/Carol B. Ervin
                    Carol B. Ervin, Esquire, Federal ID No. 734
                    E-mail:  cervin@ycrlaw.com
                    Brian L. Quisenberry, Esquire, Federal ID No. 9684
                    E-mail:  bquisenberry@ycrlaw.com
                    Stephanie N. Ramia, Esquire, Federal ID No. 11783
                    E-mail:  sramia@ycrlaw.com
                    P.O. Box 993, Charleston, SC  29402-0993
                    25 Calhoun Street, Suite 400, Charleston, SC 29401
                    Telephone:  (843) 724-6659
                    Fax:  (843) 579-1325

                    *Attorneys for Defendant Robert J. Lyon*

Charleston, South Carolina

Dated: May 29, 2014